M. Jonathan Hayes (Bar No. 90388)
Matthew D. Resnik (Bar No. 182562)
Roksana D. Moradi-Brovia (Bar No. 266572)
**RESNIK HAYES MORADI LLP**
15233 Ventura Blvd., Suite 250
Sherman Oaks, CA 91403
**Telephone:** (818) 783-6251
**Facsimile:** (818) 827-4919
jhayes@SRHLawFirm.com
matthew@SRHLawFirm.com
roksana@SRHLawFirm.com

*Proposed Attorneys for Debtor*
DDC Group, Inc.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:18-bk-17029-BB |
| | Chapter 11 |
| DDC GROUP, INC., | **NOTICE OF MOTION AND MOTION FOR AUTHORITY TO USE CASH COLLATERAL OF ALLEGED SECURED CREDITORS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SLAVA BORISOV IN SUPPORT THEREOF** |
| Debtor. | |
| | *[Hearing to be set by Court, Application for Hearing on Shortened Notice filed concurrently herewith]* |

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE; SECURED CREDITORS RDY HOLDINGS LLC, YES LENDER LLC, YELLOWSTONE CAPITAL WEST LLC, GTR SOURCE, RICHMOND CAPITAL GROUP, AND COUNSEL OF RECORD; AND ALL CREDITORS AND PARTIES IN INTEREST:**

**RESNIK
HAYES
MORADI LLP**

By this Motion, DDC Group, Inc., the Debtor and Debtor-in-Possession ("Debtor" or "DIP") respectfully requests an order of the above-entitled court authorizing Debtor to use cash collateral on an emergency basis as set forth herein.

This Motion is based upon the Notice of Motion; 11 U.S.C. §363 and 105; Federal Rules of Bankruptcy Procedure 2002 and 6004; the attached Memorandum of Points and Authorities; the Declaration submitted herewith; and such additional evidence and argument as may be presented at or before the hearing on this Motion.

The Debtor has filed (or will file) an Application for Order Shortening Time which requests that the Court set a hearing date as early as possible to have this Motion heard. Once the Court has ruled on that application, the Debtor will give notice as is ordered by the Court.

WHEREFORE, the Debtor respectfully requests that the Court enter its Order authorizing it to use cash collateral on the terms and conditions described in the Motion and the exhibits thereto, and granting such other and further relief as is just and proper under the circumstances.

Dated:  June 22, 2018                    **RESNIK HAYES MORADI LLP**

                                   By:  _____/s/ M. Jonathan Hayes_____
                                            **M. Jonathan Hayes**
                                            **Matthew D. Resnik**
                                            **Roksana D. Moradi-Brovia**
                                            *Proposed Attorneys for Debtor*
                                            DDC Group, Inc.

**CASH
COLLATERAL
MOTION**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Contents

I.    INTRODUCTION ...........................................................................................4

II.   STATEMENT OF FACTS ...........................................................................4

    A.  Overview of the Debtor and the Obligations.................................4

    B.  Events Precipitating the Chapter 11 Bankruptcy Filing. .............5

    C.  The Secured Creditors and the Obligations...................................7

    D.  Proposed Use of Cash Collateral. ...................................................9

III.  ADEQUATE PROTECTION ...................................................................10

IV.   DISCUSSION.............................................................................................11

    A.   The Court Should Authorize The Debtor's Use of the Cash Collateral..................11

    B.  The Alleged Secured Creditor's Interests are Adequately Protected by the Continued Operations of the Business and Receiving a Secured Interest in the Litigation to Recover Accounts Receivable. ...........................................................12

    C.  In Determining Adequate Protection, The Court Should Promote Reorganization.. 13

V.   CONCLUSION............................................................................................14

RESNIK
HAYES
MORADI LLP

**3**

**CASH
COLLATERAL
MOTION**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

On June 18, 2018 (the "Petition Date"), DDC Group, Inc., the Debtor and Debtor-in-Possession herein (hereinafter "Debtor" or "DIP"), filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

The Debtor continues to operate and manage its affairs as a Debtor-in-Possession pursuant to §1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in this Chapter 11 case.

This Motion seeks emergency use of cash collateral to pay the expenses for the next 15 days set forth in the budget attached hereto as **Exhibit "E."**  The Debtor is informed that its alleged secured creditors, are RDY Holdings LLC, YES LENDER LLC, Yellowstone Capital West LLC, GTR Source, Richmond Capital Group (the "Alleged Secured Creditors").  It intends to attempt to reach a stipulation prior to the hearing on this Motion.

## II.     STATEMENT OF FACTS

### A.  Overview of the Debtor and the Obligations.

The Debtor is a California corporation which owns and operates a construction business which focuses on remodeling of retail spaces and restaurants. The Debtor has a general contractor license in California, Oregon and Washington State.  A copy of a Profit and Loss Statement for the calendar year 2017 is attached hereto as **Exhibit "H."**

DDC Group Inc. began in 2014 as Your Construction Experts.  The current owners of DDC Group, Inc. purchased Your Construction Experts in 2015 and the name changed to Drop Development Construction, Inc.  The name was shortened to DDC Group, Inc. in 2016.  The company grew from two employees (the owners) and the Responsible Managing Officer, to one with about 25 employees in early 2018.  The rapid growth proved to be both a blessing and a curse.  Currently, the Debtor has roughly 15 employees.

RESNIK
HAYES
MORADI LLP

4

CASH
COLLATERAL
MOTION

The corporation is owned 70% by Vycheslav "Slava" Borisov, the Chief Executive Officer, and 30% by Daniil Borisov, the Chief Operations Officer. The Responsible Managing Officer ("RMO") is Martin Duffield. The Debtor had a Chief Financial Officer, Brian Rhoden, until recently when he left the company. The Debtor has a Chief Legal Officer, hired in June 2017, who handles litigation in-house, and manages corporate legal issues and drafts contracts used in the construction projects. Bringing legal in house has helped the Debtor to reduce legal costs, and allowed it to access legal advice more readily and on more issues than it could when legal assistance was via outside firms.

The Debtor's specialty is remodeling retail and restaurant locations for franchisees. Locations include stores in malls, free-standing stores and stores in hotels. For example, the Debtor has built-out or refurbished stores for Jamba Juice, Jack in the Box, Burger King, Menchies, Travel Traders, and Popeyes. Most projects involve 2,000 to 3,000 square feet and are in the $150,000 to $350,000 range. Subcontractors and suppliers are used extensively to do the actual work and are overseen by one of the Debtor's project managers.    In early 2018, DDC Group, Inc. had projects in Washington, Oregon and California, and ran multiple sites for multiple clients.

In July, the Debtor is scheduled to commence three projects. It is negotiating contract terms on other projects, and has bids submitted on several more projects. DDC Group, Inc is required by California law to use sums received from an owner on a project to cover the costs of that construction project. If the secured creditors, who have disputed claims, can block DDC Group, Inc. from using the sums received from clients to cover the costs of construction, DDC Group's overhead, and its operating costs, everyone will lose because DDC Group would not be able to remain in business and thus, there would not be income available to pay debts.

**B. Events Precipitating the Chapter 11 Bankruptcy Filing.**

While in many businesses, repeat business or multiple jobs from the same client would be ideal, in short term construction projects, such is not always the case. Because

CASH
COLLATERAL
MOTION

the jobs are completed in such a short time, when disputes arise between the franchisee and the Debtor, the franchisee often gets behind on the progress payments and then refuses to pay the balance owing forcing litigation. If that same client has multiple projects at the same time, the client often refuses to pay for work on several projects because it is upset as to the progress of one project despite each being subject to their own contract, and often are held in the name of individual LLC's.

When there is a payment issue on one project, the Debtor cannot simply stop work on all projects for the same parent company as the rules regarding contractors does not permit such to occur. Further, by the time the parties realize the dispute cannot be easily resolved, the work is largely completed, in fact, often fully completed. The franchisee refuses to pay requiring the Debtor to file mechanic's liens and begin a foreclosure proceeding in superior court. In those cases, the Debtor receives only the 20-30% deposit and must litigate to get the rest. In one recent instance where this situation occurred, the owner of the restaurant paid the down payment, has been open for business in the remodeled store since October 2017, and has refused to pay beyond the down payment on the project. The lawsuit pending in San Diego County Superior Court seeks over $250,000. This is but one example, but there are multiple projects where such has occurred, or where the owner, at the end of the project, chose to take discounts and exhibited a "sue me for the rest" attitude.

The default rate was such that the Debtor began borrowing money from short-term "hard money" lenders, at least on five separate occasions in the past six to eight months. The lenders are all New York entities. The loan documentation purports to provide that the lender is "buying" some percentage of existing but unidentified accounts receivable at a huge and also unidentified interest rate. The documentation also provides for a blanket lien on all assets of the Debtor. Upon the most basic default of the loan terms, the lender in at least four cases immediately filed suit in New York and used a Confession of Judgment to obtain a New York judgment literally overnight, without review of the

CASH
COLLATERAL
MOTION

documents by a judge or notice to the Debtor that a judgment was being sought. The Debtor learned of the judgments when the bank accounts were frozen.

When copies of the paperwork used to obtain the judgments were obtained and reviewed, it was learned that the affidavits submitted in New York to obtain the judgments include false statements, and the judgments include huge attorney fee claims even though the forms were submitted to the clerk, no court appearances had been required, and the loans had funded only weeks prior to the judgments being obtained.  The difference between the judgment and the amount actually lent is substantial, often double, or nearly double, the initial loan amount.  Based on the judgment, at least three of the lenders began levying the Debtor's bank accounts by serving the levy on a local branch in New York. Those banks froze all accounts of the Debtor because each account did not have twice the amount of the judgment, but the combined amount of the accounts far exceeded the amounts of the judgment.  After only two or three of these levies, the Debtor got behind on payment of suppliers and sub-contractors which caused its customers to withhold payments even more.

The Debtor responded by suing customers who refused to pay.  Customers responded by suing the Debtor. Some subcontractors sued for payment. On the petition date, the Debtor was engaged in at least 12 superior court actions.  The Debtor finally decided it needed the breathing space provided by the Bankruptcy Code and filed the within chapter 11.

**C. The Secured Creditors and the Obligations.**

A review of a UCC Search Report has identified the following secured creditors.

| Creditor | Date of UCC-1 | Alleged debt | comments |
|---|---|---|---|
| RDY Holdings LLC<br><br>See **Exhibit "D."** | 1/11/2017 | $35,000 | Amount of money lent 10/19/2016: $42,000<br>Amount of payments made: $8,400.00<br>Date of Judgment: unknown<br>Amount of Judgment: unknown |

RESNIK
HAYES
MORADI LLP

7

CASH
COLLATERAL
MOTION

| | | | |
|---|---|---|---|
| YES LENDER LLC | 2/22/2018 | $64,000 | Amount of money lent 2/2/2018: $38,800<br>Amount of payments made: $2416.64<br>Date of Judgment: 4/2/2018<br>Amount of Judgment: $63,483.35 |
| Yellowstone Capital West LLC<br><br>See **Exhibit "C."**<br>Note:  Security Agreement unsigned by Yellowstone | 3/1/2018 | $112,000 | amount of money actually lent on 2/21/2018: $54,000<br>Amount of payments made: $1196<br>Date of Judgment: 2/29/2018<br>Judgment Amount : $112,664.56<br>UCC-1 recorded concurrent with judgment |
| GTR Source, LLC<br><br>See **Exhibit "B."** | 4/20/2018 | $40,000 | amount of money actually lent on 2/20/2018: $20,002<br>Amount of payments made: $1198<br>Date of Judgement: 2/27/2018<br>Judgment Amount  : $39,989.38<br>UCC recorded post-judgment |
| Richmond Capital Group<br><br>See **Exhibit "A."** | unknown | $40,000 | amount of money actually lent on 2/20/2018: $20,002<br>Amount of payments made: $1797<br>Date of Judgement: 2/27/2018<br>Judgment Amount: $39,989.38<br>NOTE:  This is not a duplicate of the GTR Source loan |
| | | $291,000 | |

The Debtor does not concede that the above creditors are secured.

Notes:

**CASH COLLATERAL MOTION**

GTR Source, LLC.  There is apparently no security agreement describing the collateral as to GTR Source, LLC.  In any event, the UCC-1 was recorded post judgment.  No notice was filed with the California Secretary of State and therefore it appears this debt is not secured.

Richmond Capital Group, LLC.  This is a separate loan but the lender is apparently the same operation as GTR Source, LLC.  There is apparently no security agreement describing the collateral as to Richmond.  In any event, the UCC-1 was recorded post judgment.  No notice was filed with the California Secretary of State and therefore it appears this debt is not secured.

### D. Proposed Use of Cash Collateral.

The Debtor believes that the above creditors will take the position that the cash it has on hand and the accounts receivable (hereinafter the "Property") constitute cash collateral within the meaning of §363(a) of the Bankruptcy Code.  *Debtor is not aware of any other entity asserting an interest in the Property.*

Continuation of the business of the Debtor depends upon the use of cash collateral as proposed herein. The Debtor will need to pay subcontractors who work on the projects, will need to purchase materials and machinery, and will need to cover the overhead of the Debtor.

Debtor proposes that it use the cash collateral owned on the Petition Date to pay the allowed expenses pursuant to the budget attached hereto.  The Debtor believes that the expenses described in **Exhibit "E"** (the "Budget") represent those expenses that it must pay for the next 15 days in order to maintain its business operations.   Also attached as **Exhibit "F,"** is a budget of expected income and expenses for the next 90 days.

Although the Budget represents the Debtor's best estimate of the necessary expenses associated with the business, the needs of the business may fluctuate.  Therefore, the Debtor requests court authority to deviate from the total expenses contained in the budget

**RESNIK
HAYES
MORADI LLP**

**CASH
COLLATERAL
MOTION**

by no more than 10% and to deviate by category (provided the Debtor does not pay any expenses outside any of the approved categories) without the need for further Court order.

In order to continue the operation of the business, the Debtor must be authorized to use cash collateral to pay the ordinary and necessary operating expenses.  If the Debtor's ability to use cash collateral is interrupted, the Debtor will be unable to pay its employees, finish the projects it has, take on new projects and will have to shut down soon.  The Debtor's business, and the Debtor's prospects for a successful reorganization, will end.

## III.    ADEQUATE PROTECTION

The Debtor believes that the alleged secured creditors are adequately protected by the Debtor's assets.  The assets can be described as follows:

| Cash on Hand | $100,000 | |
|---|---|---|
| Accounts Receivable – current | $1,073,378 | See **Exhibit "G."** |
| | $1,173,378 | |

**Exhibit "G"** is a list of the Debtor's present accounts receivable.  The total owed to the Debtor is $3,441,128.  Of that amount, $1,073,378 is current.  Much of the rest is disputed.  The Debtor has mechanic's lien on four projects which have been completed but the customer has refused to pay the balance owed.  Three of these projects are in litigation in California Superior Court.  One client has multiple projects and the Debtor is still trying to work through the issues, but may file litigation prior to the 90 day period required for foreclosure of mechanic's liens cases.

The Debtor will give to the alleged secured creditors a replacement lien on the accounts receivable generated post-petition to the extent that the creditors' cash collateral is actually used.  The Debtor would prefer that the lien of the secured creditors be placed on the cases in litigation as those cases have sufficient claims to cover the secured creditors. The Debtor will sequester the sums received on those cases, whether via settlement or judgment, as it is received and will attempt to negotiate a settlement with

RESNIK
HAYES
MORADI LLP

10

CASH
COLLATERAL
MOTION

each of the alleged secured creditors.   This would allow for a potential fund for payment of these alleged secured creditors, and allow the Debtor to continue to do business, using receivables for payment of subcontractors on continuing and new contracts, and to cover operating costs of the Debtor.

## IV.   DISCUSSION

### A.    The Court Should Authorize The Debtor's Use of the Cash Collateral.

As a general matter, a debtor-in-possession is permitted to use property of the estate in the ordinary course of business without the need for notice or a hearing. 11 U.S.C. Section 363(c)(1).  However, a debtor's use of cash collateral is an exception to this general rule. Section 363(c)(2) provides in pertinent part:

> "The [debtor in possession] may not use, sell, or lease cash
>
> collateral ... unless
>
> -
>
> (A)    each entity that has an interest in
>
> such   cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use,
>
> sale or lease in accordance with the provisions of this section."

11 U.S.C. Section 363(c)(2).

Courts have consistently held that it is appropriate for a Chapter 11 debtor to use a secured creditor's cash collateral for a reasonable period of time for the purpose of maintaining and operating its property. See *MBank Dallas, N.A. v. O'Connor) (In re O'Connor)*, 808 F.2d 1393, 1397 (10th Cir. 1987).  In addition, where, as here, the debtor is operating a business, it is extremely important that use of cash collateral be allowed in order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business." *In re Dynaco Corporation*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993).

RESNIK
HAYES
MORADI LLP

**11**

CASH
COLLATERAL
MOTION

1
2
3
4
5
6
7

As set forth above, if the Debtor's access to the cash collateral is interrupted for even a brief period of time, the consequences would be disastrous for the unsecured creditors of the estate.  The Debtor would be unable to operate and preserve the business. The employees would leave and the business would shut down making its value as a going concern zero.  As such, the Debtor has determined that it would be in the overwhelming best interests of the estate and its creditors to use the cash collateral to continue to operate and maintain its business.

8
9

**B.  The Alleged Secured Creditor's Interests are Adequately Protected by the Continued Operations of the Business and Receiving a Secured Interest in the Litigation to Recover Accounts Receivable.**

10
11
12
13
14
15

Pursuant to Section 363(c)(2), the Court may authorize the debtor to use a secured creditor's cash collateral if the Court determines that the secured creditor is adequately protected. *Pistole v. Mellor (In re Mellor),* 734 F.2d 1396, 1400 (9th Cir. 1984).   See also *O'Connor*, supra, 808 F.2d at 1398; *McCombs Properties VI, Ltd. v. First Texas Savings Association (In re McCombs Properties VI, Ltd.)*, 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988).

16
17
18
19
20
21

In ordinary circumstances, a secured creditor is to be protected against a decrease in value which directly affects the secured creditor's interest in its collateral. See *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 630, (1988); Section 506(a) of the Bankruptcy Code "limit[s] the secured status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." *McCombs*, supra, 88 B.R. at 266.

22
23
24
25
26
27

As a general rule, a debtor may use cash collateral where such use would enhance or preserve the value of the collateral.  The Debtor intends to use the cash collateral to operate and preserve the business as is set forth in **Exhibit "A."**  The use of cash collateral is essential to continue the ordinary maintenance and operations of the business. Without the use of the cash collateral, the Debtor will be unable to pay the payroll, rent, insurance,

28

RESNIK
HAYES
MORADI LLP

**12**

**CASH
COLLATERAL
MOTION**

taxes and other necessary expenses.  As such, unless the Debtor is permitted to use the cash collateral, the value of the business will rapidly diminish.

### C.  In Determining Adequate Protection, The Court Should Promote Reorganization.

In determining adequate protection, Courts have stressed the importance of promoting a debtor's reorganization. In *In re O'Connor*, <u>supra</u>, the Tenth Circuit stated:

> "In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration."

808 F.2d at 1937.

In order to promote Debtor's reorganization, the Court should grant the relief requested herein.  The Debtor has demonstrated herein that the use of the cash collateral as proposed by the Debtor will preserve the business for the benefit of this estate and the creditors, specifically including the alleged secured creditors.  Indeed, a successful reorganization depends upon the use of cash collateral as proposed herein.

RESNIK
HAYES
MORADI LLP

13

CASH
COLLATERAL
MOTION

If at any time the Debtor violates any provision of the order approving this Motion, the alleged secured creditors may give written notice of such the default to Debtor's counsel.  If the Debtor fails to cure the default with fourteen (14) days of said notice, the alleged secured creditors shall be entitled to a hearing requesting relief from the automatic stay pursuant to 11 U.S.C. §362 on an expedited basis.

## V.    CONCLUSION

WHEREFORE, Debtor respectfully requests that the Court enter its Order authorizing it to use cash collateral on the terms and conditions described herein and the exhibits thereto, and granting such other and further relief as is just and proper under the circumstances.

Dated:  June 22, 2018                                    **SIMON RESNIK HAYES LLP**

                                    By: _____/s/ M. Jonathan Hayes_____
                                         **M. Jonathan Hayes**
                                         **Matthew D. Resnik**
                                         **Roksana D. Moradi-Brovia**
                                         *Proposed Attorneys for Debtor*
                                         DDC Group, Inc.

## DECLARATION OF SLAVA BORISOV

I, Slava Borisov, declare as follows:

1.    I am the Chief Executive Officer and custodian of records of DDC Group, Inc., the Debtor (the "Debtor") in this Chapter 11 case.  I am authorized to make decisions for the Debtor.  I am over the age of eighteen (18). I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto. Where facts are alleged upon information and belief, I believe them to be true.

2.    On June 18, 2018, DDC Group, Inc., the Debtor and Debtor-in-Possession herein (hereinafter "Debtor" or "DIP"), filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3.    This Motion seeks emergency use of cash collateral to pay the expenses set forth in the budget that I prepared attached hereto as **Exhibit "E."**  The Debtor advised its alleged secured creditors, RDY Holdings LLC, YES LENDER LLC, Yellowstone Capital West LLC, GTR Source, Richmond Capital Group (the "Alleged Secured Creditors"), of the Chapter 11 petition but has not yet begun to negotiate the terms of a cash collateral stipulation.  It intends to attempt to reach a stipulation prior to the hearing on this Motion.

4.    The Debtor is a California corporation which owns and operates a construction business which focuses on remodeling of retail spaces and restaurants. The Debtor has a general contractor license in California, Oregon and Washington State.  A true and correct copy of our Profit and Loss Statement for the calendar year 2017 is attached hereto as **Exhibit "H."**

5.    DDC Group Inc. began in 2014 as Your Construction Experts.  The current owners of DDC Group, Inc. purchased Your Construction Experts in 2015 and the name changed to Drop Development Construction, Inc.  The name was shortened to DDC Group, Inc. in 2016.  The company grew from two employees, my brother and I, and the Responsible Managing Officer, to one with about 25 employees in early 2018.  The rapid

RESNIK
HAYES
MORADI LLP

CASH
COLLATERAL
MOTION

growth proved to be both a blessing and a curse.  Currently, we have roughly 15 employees.

6.      The corporation is owned 70% by me, Chief Executive Officer, and 30% by Daniil Borisov, my brother, the Chief Operations Officer.  The Responsible Managing Officer ("RMO") is Martin Duffield.  We had a Chief Financial Officer, Brian Rhoden, until recently when he left the company.  We have a Chief Legal Officer, hired in June 2017, who handles litigation in-house, and manages corporate legal issues and drafts contracts used in the construction projects.  Bringing legal in house has helped us to reduce legal costs, and allowed us to access legal advice more readily and on more issues than it could when legal assistance was via outside firms.

7.      The Debtor's specialty is remodeling retail and restaurant locations for franchisees. Locations include stores in malls, free-standing stores and stores in hotels. For example, the Debtor has built-out or refurbished stores for Jamba Juice, Jack in the Box, Burger King, Menchies, Travel Traders, and Popeyes.  Most projects involve 2,000 to 3,000 square feet and are in the $150,000 to $350,000 range.  Subcontractors and suppliers are used extensively to do the actual work and are overseen by one of the Debtor's project managers.   In early 2018, DDC Group, Inc. had projects in Washington, Oregon and California, and ran multiple sites for multiple clients.

8.      In July, the Debtor is scheduled to commence three projects.  It is negotiating contract terms on other projects, and has bids submitted on several more projects.  DDC Group, Inc is required by California law to use sums received from an owner on a project to cover the costs of that construction project.  If the secured creditors, who have disputed claims, can block DDC Group, Inc. from using the sums received from clients to cover the costs of construction, DDC Group's overhead, and its operating costs, everyone will lose because DDC Group would not be able to remain in business and thus, there would not be income available to pay debts.

9.      While in many businesses, repeat business or multiple jobs from the same client would be ideal, in short term construction projects, such is not always the case.

CASH
COLLATERAL
MOTION

Because the jobs are completed in such a short time, when disputes arise between the franchisee and the Debtor, the franchisee often gets behind on the progress payments and then refuses to pay the balance owing forcing litigation. If that same client has multiple projects at the same time, the client often refuses to pay for work on several projects because it is upset as to the progress of one project despite each being subject to their own contract, and often are held in the name of individual LLC's.

10.    When there is a payment issue on one project, the Debtor cannot simply stop work on all projects for the same parent company as the rules regarding contractors does not permit such to occur. Further, by the time the parties realize the dispute cannot be easily resolved, the work is largely completed, in fact, often fully completed. The franchisee refuses to pay requiring the Debtor to file mechanic's liens and begin a foreclosure proceeding in superior court. In those cases, the Debtor receives only the 20-30% deposit and must litigate to get the rest. In one recent instance where this situation occurred, the owner of the restaurant paid the down payment, has been open for business in the remodeled store since October 2017, and has refused to pay beyond the down payment on the project. The lawsuit pending in San Diego County Superior Court seeks over $250,000. This is but one example, but there are multiple projects where such has occurred, or where the owner, at the end of the project, chose to take discounts and exhibited a "sue me for the rest" attitude.

11.    The default rate was such that we began borrowing money from short-term "hard money" lenders, at least on five separate occasions in the past six to eight months. The lenders are all New York entities. The loan documentation purports to provide that the lender is "buying" some percentage of existing but unidentified accounts receivable at a huge and also unidentified interest rate. The documentation sometimes provides for a blanket lien on all assets of the Debtor. Upon the most basic default of the loan terms, the lender in at least four cases immediately filed suit in New York and used a Confession of Judgment to obtain a New York judgment literally overnight, without review of the documents by a judge or notice to the Debtor that a judgment was being sought. I learned

RESNIK
HAYES
MORADI LLP

17

CASH
COLLATERAL
MOTION

of the judgments when the bank accounts were frozen.

12.    When copies of the paperwork used to obtain the judgments were obtained and reviewed, it was learned that the affidavits submitted in New York to obtain the judgments include false statements, and the judgments include huge attorney fee claims even though the forms were submitted to the clerk, no court appearances had been required, and the loans had funded only weeks prior to the judgments being obtained.  The difference between the judgment and the amount actually lent is substantial, often double, or nearly double, the initial loan amount.  Based on the judgment, at least three of the lenders began levying the Debtor's bank accounts by serving the levy on a local branch in New York. Those banks froze all accounts of the Debtor, but the combined amount of the accounts far exceeded the amounts of the judgment.  After only two or three of these levies, the Debtor got behind on payment of suppliers and sub-contractors which caused its customers to withhold payments even more.

13.    The Debtor responded by suing customers who refused to pay.  Customers responded by suing the Debtor. Some subcontractors sued for payment. On the petition date, the Debtor was engaged in at least 12 superior court actions.  The Debtor finally decided it needed the breathing space provided by the Bankruptcy Code and filed the within chapter 11.

14.    I do not concede that the above creditors are secured.

15.    A true and correct copy of the paperwork I have received relating to RDY Holdings LLC is attached hereto **Exhibit "D."**

16.    A true and correct copy of the paperwork I have received relating to Yellowstone Capital West LLC attached hereto as **Exhibit "C."**

17.    A true and correct copy of the paperwork I have received relating to GTR Source, LLC is attached hereto as **Exhibit "B."**

18.    A true and correct copy of the paperwork I have received relating to Richmond Capital Group is attached hereto as **Exhibit "A."**

19.    Continuation of the business of the Debtor depends upon the use of cash

RESNIK
HAYES
MORADI LLP

18

CASH
COLLATERAL
MOTION

collateral as proposed herein.  The Debtor will need to pay subcontractors who work on the projects, will need to purchase materials and machinery, and will need to cover the overhead of the Debtor.

20.    I believe that the expenses described in **Exhibit "E"** (the "Budget") represent those expenses that we must pay for the next 15 days in order to maintain its business operations.   Also attached as **Exhibit "F,"** is a budget I prepared of expected income and expenses for the next 90 days.

21.    The Debtor's primary assets can be described as follows:

| | | |
|---|---|---|
| Cash on Hand | $100,000 | |
| Accounts Receivable - undisputed | $1,073,378 | See **Exhibit "G."** |
| | $1,173,378 | |

22.    **Exhibit "G"** is a list of the Debtor's present accounts receivable.  The total owed to the Debtor is $3,441,128.  Of that amount, $1,073,378 is current.  Much of the rest is disputed.  We have a mechanic's lien on four projects which have been completed but the customer has refused to pay the balance owed.  Three of these projects are in litigation in California Superior Court.  One client has multiple projects and we are still trying to work through the issues, but we may file litigation prior to the 90 day period required for foreclosure of mechanic's liens cases.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed June 21, 2018, at Los Angeles, California.

By:   **SEE NEXT PAGE**
                    **Slava Borisov**
                    *Declarant*

**CASH
COLLATERAL
MOTION**

collateral as proposed herein. The Debtor will need to pay subcontractors who work on the projects, will need to purchase materials and machinery, and will need to cover the overhead of the Debtor.

20.    I believe that the expenses described in **Exhibit "E"** (the "Budget") represent those expenses that we must pay for the next 15 days in order to maintain its business operations. Also attached as **Exhibit "F,"** is a budget I prepared of expected income and expenses for the next 90 days.

21.    The Debtor's primary assets can be described as follows:

| | | |
|---|---|---|
| Cash on Hand | $100,000 | |
| Accounts Receivable - undisputed | $1,073,378 | See **Exhibit "G."** |
| | $1,173,378 | |

22.    **Exhibit "G"** is a list of the Debtor's present accounts receivable. The total owed to the Debtor is $3,441,128. Of that amount, $1,073,378 is current. Much of the rest is disputed. We have a mechanic's lien on four projects which have been completed but the customer has refused to pay the balance owed. Three of these projects are in litigation in California Superior Court. One client has multiple projects and we are still trying to work through the issues, but we may file litigation prior to the 90 day period required for foreclosure of mechanic's liens cases.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed June 21, 2018, at Los Angeles, California.

By: _____
          **Slava Borisov**
          *Declarant*

**CASH
COLLATERAL
MOTION**

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND

*RICHMOND CAPITAL GROUP LLC*

                                    **Plaintiffs,**

          -against-

DDC GROUP, INC. And VYACHESLAV V.
*BORISOV,*

                                 **Defendants.**

Index No.:

**AFFIDAVIT OF NON-PAYMENT**
Plaintiff's Address:
*111 John Street, Suite 1210*
New York, NY 10038

STATE OF NEW YORK  )
                    )  ss.:
COUNTY OF NEW YORK)

Michelle D Gregg, being duly sworn, deposes and says:

1.    I am a natural person over the age of 18 and reside in the State of New York. I am an authorized representative of Plaintiff Richmond Capital Group LLC ("RCG"), and participated in the transactions detailed below. As such, I am personally familiar with the facts and circumstances set forth herein.

2.    I make this affidavit in support of RCG's entry of a Judgment by Confession against Defendants DDC GROUP, INC. ("DDC") and VYACHESLAV V. BORISOV, ("BORISOV") (collectively, "Defendants"), jointly and severally.

3.    On February 15, 2018 Defendant DDC entered into a secured merchant agreement (the "Agreement") whereby RCG agreed to purchase all of DDC's rights over future accounts-receivable, having a face value of $37,475.00. The purchase price for these receivables was $25,000.00. The Defendant BORISOV signed the Agreement as "Owner."

4.    Pursuant to the Agreement, DDC authorized RCG to debit from its bank account, by means of an online ACH debit, ten percent (10 %) of DDC's accounts-

receivable collections (the "Specified Percentage"), until the purchased amount of receivables – $37,475.00—was paid in full.

5. DDC agreed to exclusively use one bank account approved by RCG (the "Account"), into which DDC agreed to deposit all of its receipts, and from which RCG was to conduct its ACH debits of the Specified Percentage of said receipts. This Account was identified as an account maintained by DDC, and the account number is further identified in the Agreement and related documents.

6. The Agreement provided that in the event DDC used a bank account other than the Account, or DDC prevented RCG from debiting the Account, either by instruction the bank to block RCG's debits or via other means, DDC was in default of the Agreement. See Agreement at p.1, and p. 2 ¶ 3.1.

7. In addition, as part of the Agreement, Defendant BORISOV personally guaranteed DDC's performance under the Agreement (the "Personal Guaranty of Performance"). Id. at pp. 3-4.

8. The Personal Guaranty of Performance provides that in the event of DDC's default under any of the terms of the Agreement, including blocking ACH debits or depositing their accounts-receivable into a bank account other than the Account, RCG may proceed to enforce its rights against Defendant BORISOV without first seeking recourse from DDC.

9. Additionally, Defendant BORISOV also executed and delivered into RCG's possession, a notarized Affidavit of Confession of Judgment, authorizing RCG to enter judgment against Defendants DDC and BORISOV, jointly and severally, in the event of DDC's default under the Agreement. See COJ, electronically filed along with this Affidavit.

10.     This Affidavit of Confession of Judgment further provided for jurisdiction over its enforcement in Richmond County.

11.     DDC initially made Specified Percentage Payments of $00.00 through automatic debits; however, as of February 27, 2018, DDC has continuously failed to remit collections on receivables purchased by RCG. This constitutes a default under the Agreement.

12.     There remains a balance due and owing of $37,475.00 (the "Default Amount") exclusive of attorneys' fees and interest, as well as blocking and default charges.

13.     Pursuant to Section 1.11 of the Agreement, RCG is not required to provide defendants with notice prior to enforcing its contractual rights.

14.     Based on the foregoing, RCG requests entry of judgment in its favor for the default amount ($37,475.00), plus $225.00 in statutory costs, for a total judgment amount of $37,700.00.

15.     Accordingly, RCG requests that the Court enter judgment in such amounts in favor of RCG and against DDC and BORISOV, jointly and severally.

16.     No prior request for the within-relief has been made in this or any Court.

Sworn to before me this

27 day of _February_ 2018

Notary Public

Michelle D Gregg

MARCELLA G. RABINOVICH
NOTARY PUBLIC-STATE OF NEW YORK
No. 02RA6342503
Qualified In Kings County
My Commission Expires 05-23-2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF _Richmond_
RICHMOND CAPITAL GROUP, LLC.

                                         Plaintiff,

            -against-

DDC GROUP, INC.
and VYACHESLAV V. BORISOV.

                                         Defendants.

Index No.

**AFFIDAVIT OF**
**CONFESSION OF JUDGMENT**

STATE OF _California_ )
                                    ) ss.:
COUNTY OF _Los Angeles_ )

VYACHESLAV V. BORISOV, being duly sworn, deposes and says:

1.    I am a principal, owner, and an officer of DDC GROUP, INC. ("Merchant Defendant"), a Corporation located at 350 S. GRAND AVE STE 1670, LOS ANGELES, CA 90071, in the County of LOS ANGELES, and as such, I have the authority to act on behalf of Merchant Defendant.

2.    I reside at 705 W 9TH ST, STE 2004, LOS ANGELES, CA 90015, in the County of LOS ANGELES.

3.    I, individually, and on behalf of Merchant Defendant consent to the jurisdiction of this Court.

4.    Merchant Defendant hereby confesses judgment and authorizes entry of judgment in favor of Plaintiff and against Defendants in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of New York, County of Orange, Supreme Court of the State of New York, County of Westchester, Supreme Court of the State of New York, County of Kings, Supreme Court of the State of New York, County of Erie, Supreme Court of the State of New York, County of Ontario, and/or Supreme Court of the State of New York, County of Richmond, in the sum of $37,475.00 less any payments timely made pursuant to the secured Merchant Agreement dated 02 15 2018, plus legal fees to Plaintiff

Scanned by CamScanner

calculated at twenty five percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from 02 15 2018, or the highest amount allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment.

5.    In addition, I hereby confess judgment, individually and personally, jointly and severally, and authorize entry of judgment in favor of Plaintiff and against myself in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of New York, County of Orange, Supreme Court of the State of New York, County of Westchester, Supreme Court of the State of New York, County of Kings, Supreme Court of the State of New York, County of Erie, Supreme Court of the State of New York, County of Ontario, and/or Supreme Court of the State of New York, County of Richmond, against me personally in the sum of $37,475.00 less any payments timely made pursuant to the Merchant Agreement dated 02/15/2018, plus legal fees to Plaintiff calculated at twenty five percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from 02/15/2018, or the highest rate allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Confession of Judgment.

6.    This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant Defendant's accounts-receivable, which were purchased by Plaintiff pursuant to the secured Merchant Agreement dated 02/15/2018, and for Defendants' breach of the secured Merchant Agreement, plus agreed-upon interest, reasonable attorneys' fees, costs and disbursements, as agreed-upon by Merchant Defendant and myself, under the secured Merchant Agreement, dated 02/15/2018, of which supporting documents include a Personal Guarantee and a UCC-1 financing statement(s).

2

Scanned by CamScanner

7.     Merchant Defendant and I hereby agree that the execution and delivery of this Affidavit of Confession of Judgment and any entry of judgment thereon shall be without prejudice to any and all rights of Plaintiff, who reserves all of its rights and remedies against Defendants.

8.     If for any reason entry of judgment in the above specified amount or execution on the same is outside the jurisdiction of this Court, Merchant Defendant and I hereby consent to the personal jurisdiction, entry of judgment, and execution thereon in any State or Federal Court of the United States of America.

9.     I have been authorized by Merchant Defendant to sign this Affidavit of Confession of Judgment on this _15th_ day of _February_, 2018.

By _____
VYACHESLAV V. BORISOV, individually,
and on behalf of DDC GROUP, INC.

Sworn to before me this
____ Day of _____, 2018.

_____
        Notary Public

PLEASE SEE ATTACHED,
NOTARY PUBLIC

Scanned by CamScanner

# CALIFORNIA JURAT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed *the document, to which this certificate is attached,* and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    }

COUNTY OF __Los Angeles__    }

Subscribed and sworn to (or affirmed) before me on this __15__ day of __February__ , __2018__
                                              *Date*                    *Month*            *Year*

by _____ Vyacheslav V. Borisov _____

*Name of Signers*

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature: _____

*Signature of Notary Public*



LOURDES IRENE CASTRO
Notary Public - California
Los Angeles County
Commission # 2159871
My Comm. Expires Jul 15, 2020

*Seal*
*Place Notary Seal Above*

-------------------------------------------------- **OPTIONAL** --------------------------------------------------
*Though this section is optional, completing this information can deter alteration of the document or fraudulent attachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: __Affidavit of confession of judgment.__

Document Date: __02/15/2018__

Number of Pages: __3__

Signer(s) Other Than Named Above: _____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND

RICHMOND CAPITAL GROUP LLC

                                    Plaintiffs,

        -against-

DDC GROUP, INC. And VYACHESLAV V.
BORISOV,

                                    Defendants.

Index No.: 18 150470

**JUDGMENT BY CONFESSION**

| | |
|---|---|
| Amount Confessed: | $37,475.00 |
| Amount Paid: | $00.00 |
| Amount Owed: | $37,475.00 |
| Interest (from 2/15/2018) at 9% | $ 120.12 |
| Costs by Statute (CPLR 3218(b)) | $15.00 |
| Filing Fee (CPLR 8018(a)) | $210.00 |
| Total Costs and Disbursements | $225.00 |
| Total: | $ 37,820.12 |

```
    1-493831
   FILED AND
   DOCKETED
  Feb 28 2018
 AT    01:51 P    M
RICHMOND COUNTY CLERK
```

## ATTORNEY'S AFFIRMATION

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK  )

    The undersigned, an attorney at law of the State of New York, affirms that she is the attorney of record for Plaintiff **Richmond Capital Group LLC** herein, and states that the disbursements above specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: New York, New York
        February 27, 2018

                                    _____/s/_____
                                    Marcella G. Rabinovich, Esq.
                                    111 John Street, Suite 1210
                                    New York, NY 10038

FILED: RICHMOND COUNTY CLERK 02/28/2018 01:58 PM

NYSCEF DOC. NO. Case 2:18-bk-17029-BB    Doc 11    Filed 06/22/18    Entered 06/22/18 20:03:56    Desc 02/28/2018
                  Main Document      Page 30 of 107

INDEX NO. 150470/2018

ON FILING the foregoing Affidavit of Confession of Judgment made by Defendants

Borisov sworn to on February 15, 2018; and upon the Affidavit of Non-Payment in Support of

Entry of Judgment, Sworn to February 27, 2018.

NOW, ON MOTION OF Marcella G. Rabinovich, Esq., attorney for Plaintiff Richmond

Capital Group LLC, it is

ADJUDGED that Plaintiff, **Richmond Capital Group LLC** , located at 111 John Street,

Suite 1210, New York, NY 10038 , has judgment and does recover of the Defendants, **DDC**

**GROUP, INC.,** located at 350 s. Grand Ave. Ste. 1670, Los Angeles, CA 90071, and

**VYACHESLAV V. BORISOV**, residing at 705 W 9th St., Ste 2004, Los Angeles, CA 90015 the

sum of $37,475.00 plus interest at nine percent (9%) per annum from February 15, 2018, as

calculated by the Clerk in the amount of $ **120.12** , together with $225.00 costs and

disbursements as taxed by the clerk amounting in all to the sum of $ **37,820.12** ; and that the

Plaintiff  RICHMOND CAPITAL GROUP LLC have execution therefore.

Clerk

Judgment entered th. **28 th** day of **Feb. 2018**, 2018.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND

RICHMOND CAPITAL GROUP LLC

                                              Plaintiffs,

        -against-

DDC GROUP, INC. And VYACHESLAV V.
BORISOV,

                                              Defendants.

Index No.:

**JUDGMENT BY CONFESSION**

| | |
|---|---|
| Amount Confessed: | $37,475.00 |
| Amount Paid: | $00.00 |
| Amount Owed: | $37,475.00 |
| Interest (from 2/15/2018) at 9% | $_____ |
| Costs by Statute (CPLR 3218(b)) | $15.00 |
| Filing Fee (CPLR 8018(a)) | $210.00 |
| Total Costs and Disbursements | $225.00 |
| Total: | $_____ |

## ATTORNEY'S AFFIRMATION

STATE OF NEW YORK        )
                                    ) ss.:
COUNTY OF NEW YORK  )

   The undersigned, an attorney at law of the State of New York, affirms that she is the attorney of record for Plaintiff **Richmond Capital Group LLC** herein, and states that the disbursements above specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: New York, New York
        February 27, 2018

                                              _____/s/_____
                                              Marcella G. Rabinovich, Esq.
                                              111 John Street, Suite 1210
                                              New York, NY 10038

ON FILING the foregoing Affidavit of Confession of Judgment made by Defendants Borisov sworn to on February 15, 2018; and upon the Affidavit of Non-Payment in Support of Entry of Judgment, Sworn to February 27, 2018.

NOW, ON MOTION OF Marcella G. Rabinovich, Esq., attorney for Plaintiff Richmond Capital Group LLC, it is

ADJUDGED that Plaintiff, **Richmond Capital Group LLC** , located at 111 John Street, Suite 1210, New York, NY 10038 , has judgment and does recover of the Defendants, **DDC GROUP, INC.**, located at 350 s. Grand Ave. Ste. 1670, Los Angeles, CA 90071, and **VYACHESLAV V. BORISOV**, residing at 705 W 9th St., Ste 2004, Los Angeles, CA 90015 the sum of $37,475.00 plus interest at nine percent (9%) per annum from February 15, 2018, as calculated by the Clerk in the amount of $_____, together with $225.00 costs and disbursements as taxed by the clerk amounting in all to the sum of $_____; and that the Plaintiff  RICHMOND CAPITAL GROUP LLC have execution therefore.


_____

Clerk

Judgment entered the ____ day of _____, 2018.

04/12/2018  15:02   12123582000        NYCM

**35731018**

**LEGL**



# NEW YORK CITY MARSHAL
## Stephen W. Biegel

109 West 38th Street, Suite 200 • New York, NY 10018

Phone: (212) MARSHAL (627-7425) • Fax: (212) 398-2000

NYC@MarshalBiegel.com • www.NewYorkCityMarshal.com

# LEVY AND DEMAND ON

April 12, 2018

WELLS FARGO BANK
(FORMERLY WACHOVIA BANK)
180 MADISON AVENUE
NEW YORK NY 10016

**JUDGMENT CREDITOR**
RICHMOND CAPITAL GROUP LLC

vs

DDC GROUP INC. &
VYACHESLAV V. BORISOV
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
EIN# 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
EIN# 90-1076645

**JUDGMENT DEBTOR**

### MARSHAL'S DOCKET # E-27987

Attached is a Property Execution with Notice to Garnishee. As directed under CPLR §5232(a), you are required to immediately turn over to me all property of the judgment debtor currently in your possession or custody, not to exceed the following amount:

| | |
|---|---|
| Judgment . . . . . . . . . . | $37,820.12 |
| Interest . . . . . . . . . . | $392.28 |
| Statutory Fees . . . . . . . | $612.37 |
| Expense . . . . . . . . . . | $0.90 |
| Poundage . . . . . . . . . . | $1,940.79 |
| **TOTAL** | $40,766.46 |

## *DIRECT ALL PAYMENTS TO NYC MARSHAL BIEGEL AT ADDRESS ABOVE*

**FOR BANK USE ONLY. Please checkmark account status:** ☑

☐ Check is enclosed and accounts released          ☐ Account(s) closed on: _____

☐ No account or assets maintained at this office    ☐ Joint account / Turnover needed

☐ Account open but contains no funds.               ☐ The account of the judgment debtor is overdrawn

Name: _____          Position: _____

### I AGREE THAT THE FOLLOWING FORMS ARE ATTACHED TO THIS LEVY:

☐ Execution                    ☐ Information subpoena          ☐ Copy of check

☐ Exemption notice and claim forms    ☐ Restraining notice        ☐ Other _____

SIGNATURE OF OFFICIAL ACCEPTING LEVY: _____

PRINTED NAME: _____     DATE: _____     (BANKATT)

Wells Fargo Bank
A search of our records indicate the following
_____ No Funds
_____ No Accounts
_____ Account Closed
_____ Under Threshold
_____ No Customer Found
_____ Funds Held

_____ / _____
Authorized Signature        Date

04/12/2018  5:04PM (GMT-05:00)

Index No.18 150470

RICHMOND CAPITAL GROUP LLC     Plaintiff(s)     EXECUTION
WITH NOTICE TO
GARNISHEE

Against

DDC GROUP, INC. and VYACHESLAV V. BORISOV     Defendant(s)

THE PEOPLE OF THE STATE OF NEW YORK TO THE SHERIFF OF ANY COUNTY, GREETING:

WHEREAS, in an action in the Supreme Court of State of New York County of Richmond

Between    Richmond Capital Group LLC      as plaintiff(s) and     As defendant(s)
DDC GROUP, INC. and VYACHESLAV V. BORISOV,
who are all the parties named in said action, a judgment was entered on ___February 28, 2018, 2018___    Judgment creditor(s)
in favor of ___Richmond Capital Group LLC___    Judgment debtor(s)
and against ___DDC GROUP, INC. and VYACHESLAV V. BORISOV___ 330 s. Grand Ave. Ste. 1670, Los Angeles, CA 90071 and 705 W 9th St., Ste 2004, Los Angeles, CA 90015
whose last known address is ___330 s. Grand Ave. Ste. 1670, Los Angeles, CA___
in the amount of $ $ ___37,473.00___ including costs, of which $ ___37,473.00___

Together with
interest thereon from ___February 28, 2018___ remains due and unpaid;     with
WHEREAS, a transcript of the judgment was filed on ___February 28, 2018___; and
The Clerk of the County of ___Richmond___, in which county the judgment was entered; and
WHEREAS, a transcript of the judgment was docketed in the office of the Clerk of your county on

NOW, THEREFORE, WE COMMAND YOU to satisfy the said judgment out of the real and personal property of the above named judgment debtor and the debts due to him; and that only the property in which said judgment debtor who is not deceased has an interest or the debts owed to him shall be levied upon or sold hereunder; AND TO RETURN this execution to the clerk of the above captioned court within 60 days after issuance unless service of this execution is made within that time execution of that time made in writing by the attorney(s) for the judgment creditor.

Pursuant to CPLR § 5205(f), 5205(l) of the amount containing direct deposit or electronic payments reasonably identifiable as statutory exempt payments, as defined in CPLR § (l), an execution shall not apply to an amount equal to or less than 90% of the greater of 240 times the federal minimum hourly wage prescribed in the Fair Labor Standards Act 1938 or 240 times the state minimum hourly wage prescribed in Labor Law § 652 as in effect at the time the earnings are payable, except such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his or her dependents.

NOTICE TO GARNISHEE     TO:
ADDRESS:
WHEREAS, it appears that you are indebted to the judgment debtor, above named, or in possession or custody of property not capable of delivery in which the judgment debtor has an interest, including, without limitation, the following specified debt and property.
NOW, THEREFORE, YOU ARE REQUIRED by section 5232(a) of the Civil Practice Law and Rules forth-with to transfer to the Sheriff all personal property not capable of delivery in which the judgment debtor is known or believed to have an interest now in or hereafter coming into your possession or custody including any debts specified in this notice, and to execute any documents necessary to effect such transfer or payment.
AND TAKE NOTICE that until such transfer or payment is made or until the expiration of 90 days after the service of this execution upon you, such further time as is provided by any order of the court served upon you whichever event first occurs, you are forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff, except upon direction of the sheriff or pursuant to an order of the court.
AND TAKE FURTHER NOTICE THAT at the expiration of 90 days after a levy is made by service of this execution, or of such further time as the court upon motion of the judgment creditor has provided, this levy shall be void except as to a property
Or debts which have been transferred or paid to the sheriff or as to which a proceeding under sections 5225 or 5227 of the Civil Practice Law and Rules has been brought.

Signature ___

Date: 2/23/2018

Print name signed...Marcella G. Rubinovich...

Office and Post Office Address

The Law Offices of Marcella G. Rubinovich, Esq., PLLC
111 John Street, Suite 1210
New York, New York 10038

## EXEMPTION NOTICE
as required by New York Law

## YOUR BANK ACCOUNT IS RESTRAINED OR "FROZEN"

The attached Restraining Notice or notice of Levy by Execution has been issued against your bank account. You are receiving this notice because a creditor has obtained a money judgment against you, and one or more of your bank accounts has been restrained to pay the judgment. A money judgment is a court's decision that you owe money to a creditor. You should be aware that FUTURE DEPOSITS into your account(s) might also be restrained if you do not respond to this notice.

You may be able to "vacate" (remove) the judgment. If the judgment is vacated, your bank will be released. Consult an attorney (including free legal services) or visit the court clerk for more information about how to do this.

Under state and federal law, certain types of funds cannot be taken from your bank account to pay a judgment. Such money is said to be "exempt".

## DOES YOUR BANK ACCOUNT CONTAIN ANY OF THE FOLLOWING TYPES OF FUNDS?

1.  Social Security;
2.  Social Security disability (SSD);
3.  Supplemental security income (SSI);
4.  Public assistance (welfare);
5.  Income earned while receiving SSI or public assistance;
6.  Veterans benefits;
7.  Unemployment insurance;
8.  Payments from pensions and retirement accounts;
9.  Disability benefits;
10. Income  earned in the last 60 days (90% of which is exempt);
11. Workers' compensation benefits;
12. Child support;
13. Spousal support or maintenance (alimony);
14. Railroad retirement; and/or
15. Black lung benefits;

If YES, you can claim that your money is exempt and cannot be taken.

To make a claim, you must
a)  complete the EXEMPTION CLAIM FORM attached;
b)  deliver or mail the form to the bank with the restrained  or "frozen" account; and
c)  deliver or mail the form to the creditor or its attorney at the address listed on the form.

You must send the forms within 20 days of the postmarked date on the envelope holding this notice. You may be able to get your account released faster if you send to the creditor or its attorney written proof that your money is exempt.  Proof can include an award letter from the government, an annual statement from your pension, pay stubs, copies of checks, bank records showing the last two months of account activity, or other papers showing that the money in your bank account is exempt. If you send the creditors attorney proof that the money in your account is exempt, the attorney must release that money within seven days. You do not need an attorney to make an exemption claim using the form.

## MARSHAL'S DOCKET # E-27987

(EXMPTNTC)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND INDEX# 18150470

Docket #E-27987

Judgment Creditor

**RICHMOND CAPITAL GROUP LLC**

**EXEMPTION CLAIM FORM**

vs

Judgment Debtor

**VYACHESLAV V. BORISOV**

**350 S. GRAND AVE. STE. 1670
LOS ANGELES, CA 90071**

NAME AND ADDRESS OF JUDGMENT
CREDITOR OR ATTORNEY
ADDRESS A
   RICHMOND CAPITAL GROUP LLC

111 JOHN STREET
NEW YORK, NY 10038

NAME AND ADDRESS OF
FINANCIAL INSTITUTION
ADDRESS B
   WELLS FARGO BANK
   (FORMERLY WACHOVIA BANK)
   180 MADISON AVENUE
   NEW YORK, NY 10016

Directions: To claim that some or all of the funds in your account are exempt, complete both copies of this form, and make one copy for yourself. Mail or deliver one form to ADDRESS A and one form to ADDRESS B within twenty days of the date on the envelope holding this notice. *****If you have any documents such as an award letter, an annual statement from your pension, paystubs, copies of checks or bank records showing the last two months of account activity, include copies of the documents with this form. Your account may be released more quickly.

   I state that my account contains the following type(s) of funds (check all that apply):

_____ Social Security
_____ Social Security disability (SSD)
_____ Supplemental security income (SSI)
_____ Public assistance
_____ Wages while receiving SSI or public assistance
_____ Veterans benefits
_____ Unemployment Insurance
_____ Payments from pensions and retirement accounts
_____ Income earned in last 60 days (90% of which is exempt)
_____ Child support
_____ Spousal support or maintenance (alimony)
_____ Workers' compensation benefits
_____ Railroad retirement or Black lung benefits
_____ Other (describe exemption)_____
I request that any correspondence to me my claim be sent to
The following address:_____

_____
**(FILL IN YOUR COMPLETE ADDRESS)**

   I certify under penalty of perjury that the statement above is true to the best of my knowledge and belief.

_____        _____
DATE                             SIGNATURE OF JUDGMENT DEBTOR        (EXMPTDTC)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND INDEX# 18150470

Docket #2-27987

                    Judgment Creditor
RICHMOND CAPITAL GROUP LLC

## EXEMPTION CLAIM FORM

            vs

        Judgment Debtor

VYACHESLAV V. BORISOV

350 S. GRAND AVE. STE. 1670
LOS ANGELES, CA 90071

NAME AND ADDRESS OF JUDGMENT          NAME AND ADDRESS OF
CREDITOR OR ATTORNEY                  FINANCIAL INSTITUTION
ADDRESS A                             ADDRESS B
  RICHMOND CAPITAL GROUP LLC            WELLS FARGO BANK
                                        (FORMERLY WACHOVIA BANK)
  111 JOHN STREET                       180 MADISON AVENUE
  NEW YORK, NY 10038                    NEW YORK, NY 10016

Directions: To claim that some or all of the funds in your account are exempt, complete both copies of this form,
and make one copy for yourself. Mail or deliver one form to ADDRESS A and one form to ADDRESS B within
twenty days of the date on the envelope holding this notice. ****If you have any documents such as an award
letter, an annual statement from your pension, paystubs, copies of checks or bank records showing the last two
months of account activity, include copies of the documents with this form. Your account may be released more
quickly.
        I state that my account contains the following type(s) of funds (check all that apply):

        _____ Social Security
        _____ Social Security disability (SSD)
        _____ Supplemental security income (SSI)
        _____ Public assistance
        _____ Wages while receiving SSI or public assistance
        _____ Veterans benefits
        _____ Unemployment Insurance
        _____ Payments from pensions and retirement accounts
        _____ Income earned in last 60 days (90% of which is exempt)
        _____ Child support
        _____ Spousal support or maintenance (alimony)
        _____ Workers' compensation benefits
        _____ Railroad retirement or Black lung benefits
        _____ Other (describe exemption)_____
        I request that any correspondence to me my claim be sent to
        The following address:_____

        _____
                    (FILL IN YOUR COMPLETE ADDRESS)

        I certify under penalty of perjury that the statement above is true to the
best of my knowledge and belief.

_____        _____
DATE                            SIGNATURE OF JUDGMENT DEBTOR        (EXMPTNYC)



# NYC MARSHAL'S OFFICE
# MARSHAL STEPHEN W. BIEGEL
# 109 WEST 38TH STREET, SUITE 200
# NEW YORK, NY 10018

## FACSIMILE TRANSMITTAL SHEET

| TO: Court Orders and Levies | FROM: Nathan |
|---|---|
| COMPANY: Wells Fargo Bank | DATE: 4/12/18 |
| FAX NUMBER SENT TO: 866.670.1561 | TOTAL NO. OF PAGES INCLUDING COVER: 6 |
| RE: Marshal's Levy E-27987 | SENDER'S PHONE NUMBER: (212) 627-7425 |

## NOTES/COMMENTS:

**E- 27987
DDC GROUP INC. &
VYACHESLAV V. BORISOV
SS#: 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
EIN#: 82-312-1154, 90-107-6645**

See attached Levy and Demand, Execution, and Exemption Claim Forms.  Kindly place all accounts
on hold and remit funds accordingly.

If you have any questions do not hesitate to contact our office.

Thank you,
Nathan

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND

*GTR SOURCE LLC*

Plaintiffs,

-against-

DDC GROUP, INC. And VYACHESLAV V.
BORISOV,

Defendants.

Index No.:

**AFFIDAVIT OF NON-PAYMENT**

Plaintiff's Address:
*111 John Street, Suite 1210*
New York, NY 10038

STATE OF NEW YORK    )
                     )  ss.:
COUNTY OF NEW YORK)

Tzvi Reich, being duly sworn, deposes and says:

1.    I am a natural person over the age of 18 and reside in the State of New York. I am an authorized representative of Plaintiff GTR SOURCE LLC ("GTR"), and participated in the transactions detailed below. As such, I am personally familiar with the facts and circumstances set forth herein.

2.    I make this affidavit in support of GTR's entry of a Judgment by Confession against Defendants DDC GROUP, INC. ("DDC") and VYACHESLAV V. BORISOV, ("BORISOV") (collectively, "Defendants"), jointly and severally.

3.    On February 15, 2018 Defendant DDC entered into a secured merchant agreement (the "Agreement") whereby GTR agreed to purchase all of DDC's rights over future accounts-receivable, having a face value of $37,475.00. The purchase price for these receivables was $25,000.00. The Defendant BORISOV signed the Agreement as "Owner."

4.    Pursuant to the Agreement, DDC authorized GTR to debit from its bank account, by means of an online ACH debit, ten percent (10 %) of DDC's accounts-

receivable collections (the "Specified Percentage"), until the purchased amount of receivables – $37,475.00—was paid in full.

5.      DDC agreed to exclusively use one bank account approved by GTR (the "Account"), into which DDC agreed to deposit all of its receipts, and from which GTR was to conduct its ACH debits of the Specified Percentage of said receipts. This Account was identified as an account maintained by DDC, and the account number is further identified in the Agreement and related documents.

6.      The Agreement provided that in the event DDC used a bank account other than the Account, or DDC prevented GTR from debiting the Account, either by instruction the bank to block GTR's debits or via other means, DDC was in default of the Agreement. See Agreement at p.1, and p. 2 ¶ 3.1.

7.      In addition, as part of the Agreement, Defendant BORISOV personally guaranteed DDC's performance under the Agreement (the "Personal Guaranty of Performance"). Id. at pp. 3-4.

8.      The Personal Guaranty of Performance provides that in the event of DDC's default under any of the terms of the Agreement, including blocking ACH debits or depositing their accounts-receivable into a bank account other than the Account, GTR may proceed to enforce its rights against Defendant BORISOV without first seeking recourse from DDC.

9.      Additionally, Defendant BORISOV also executed and delivered into GTR's possession, a notarized Affidavit of Confession of Judgment, authorizing GTR to enter judgment against Defendants DDC and BORISOV, jointly and severally, in the event of DDC's default under the Agreement. See COJ, electronically filed along with this Affidavit.

10.  This Affidavit of Confession of Judgment further provided for jurisdiction over its enforcement in Richmond County.

11.  DDC initially made Specified Percentage Payments of $00.00 through automatic debits; however, as of February 27, 2018, DDC has continuously failed to remit collections on receivables purchased by GTR. This constitutes a default under the Agreement.

12.  There remains a balance due and owing of $37,475.00 (the "Default Amount") exclusive of attorneys' fees and interest, as well as blocking and default charges.

13.  Pursuant to Section 1.11 of the Agreement, GTR is not required to provide defendants with notice prior to enforcing its contractual rights.

14.  Based on the foregoing, GTR requests entry of judgment in its favor for the default amount ($37,475.00), plus $225.00 in statutory costs, for a total judgment amount of $37,700.00.

15.  Accordingly, GTR requests that the Court enter judgment in such amounts in favor of GTR and against DDC and BORISOV, jointly and severally.

16.  No prior request for the within-relief has been made in this or any Court.

Tzvi Reich

Sworn to before me this

27 day of February 2018

Notary Public

MARCELLA G. RABINOVICH
NOTARY PUBLIC-STATE OF NEW YORK
No. 02RA6342503
Qualified In Kings County
My Commission Expires 05-23-2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF

GTR SOURCE, LLC.

                                        Plaintiff,          Index No.

                                                           **AFFIDAVIT OF**
            -against-                                      **CONFESSION OF JUDGMENT**

DDC GROUP, INC.
and VYACHESLAV V. BORISOV,

                                        Defendants.

STATE OF California )
COUNTY OF Los Angeles ) ss.:

VYACHESLAV V. BORISOV, being duly sworn, deposes and says:

1.    I am a principal, owner, and an officer of DDC GROUP, INC. ("Merchant

Defendant"), a Corporation located at 350 S. GRAND AVE. STE 1670, LOS ANGELES, CA 90071, in

the County of LOS ANGELES, and as such, I have the authority to act on behalf of Merchant Defendant.

2.    I reside at 705 W 9TH ST. STE 2004, LOS ANGELES, CA 90015, in the County

of LOS ANGELES.

3.    I, individually, and on behalf of Merchant Defendant consent to the jurisdiction of this

Court.

4.    Merchant Defendant hereby confesses judgment and authorizes entry of judgment in

favor of Plaintiff and against Defendants in the Federal District Court for the Southern District of New

York, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of

New York, County of Orange, Supreme Court of the State of New York, County of Westchester,

Supreme Court of the State of New York, County of Kings, Supreme Court of the State of New York,

County of Erie, Supreme Court of the State of New York, County of Ontario, and/or Supreme Court

of the State of New York, County of Richmond, in the sum of $37,475.00 less any payments timely

made pursuant to the secured Merchant Agreement dated 02/15/2018, plus legal fees to Plaintiff

**Scanned by CamScanner**

FILED: RICHMOND COUNTY CLERK 02/27/2018 05:19 PM    INDEX NO. 150471/2018

NYSCEF DOC. Case 2:18-bk-17029-BB    Doc 11    Filed 06/22/18    Entered 06/22/18 20:03:56 NYSCEF: 02/27/2018
Main Document    Page 44 of 107

calculated at twenty five percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from 02/15/2018, or the highest amount allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the *time of entry of* this Affidavit of Confession of Judgment.

5.    In addition, I hereby confess judgment, individually and personally, jointly and severally, and authorize entry of judgment in favor of Plaintiff and against myself in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of New York, County of Orange, Supreme Court of the State of New York, County of Westchester, Supreme Court of the State of New York, County of Kings, Supreme Court of the State of New York, County of Erie, Supreme Court of the State of New York, County of Ontario, and/or Supreme Court of the State of New York, County of Richmond, against me personally in the sum of $37,475.00 less any payments timely made pursuant to the Merchant Agreement dated 02/15/2018, plus legal fees to Plaintiff calculated at twenty five percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from 02/15/2018, or the highest rate allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Confession of Judgment.

6.    This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant Defendant's accounts-receivable, which were purchased by Plaintiff pursuant to the secured Merchant Agreement dated 02/15/2018, and for Defendants' breach of the secured Merchant Agreement, plus agreed-upon interest, reasonable attorneys' fees, costs and disbursements, as agreed-upon by Merchant Defendant and myself, under the secured Merchant Agreement, dated 02/15/2018, of which supporting documents include a Personal Guarantee and a UCC-1 financing statement(s).

Scanned by CamScanner

7.    Merchant Defendant and I hereby agree that the execution and delivery of this Affidavit

of Confession of Judgment and any entry of judgment thereon shall be without prejudice to any and all

rights of Plaintiff, who reserves all of its rights and remedies against Defendants.

8.    If for any reason entry of judgment in the above specified amount or execution on the

same is outside the jurisdiction of this Court, Merchant Defendant and I hereby consent to the personal

jurisdiction, entry of judgment, and execution thereon in any State or Federal Court of the United States

of America.

9.    I have been authorized by Merchant Defendant to sign this Affidavit of Confession of

Judgment on this ___ day of ___February___, 2018.

By: _____

VYACHESLAV V. BORISOV, individually,

and on behalf of DDC GROUP, INC.

Sworn to before me this

____ Day of _____, 2018.

_____
    Notary Public

PLEASE SEE ATTACHED,
NOTARY PUBLIC

Scanned by CamScanner

3 of 4

# CALIFORNIA JURAT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    }

COUNTY OF ___Los Angeles___           }

Subscribed and sworn to (or affirmed) before me on this ___15___ day of ___February___ , ___2018___
                                                          *Date*         *Month*            *Year*

by _____Vyacheslav   V. Borisov_____

_____

*Name of Signers*

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature: _____

*Signature of Notary Public*

LOURDES IRENE CASTRO
Notary Public - California
Los Angeles County
Commission # 2159871
My Comm. Expires Jul 15, 2020

*Seal*
*Place Notary Seal Above*

----------------------------------------------- **OPTIONAL** -----------------------------------------------

*Though this section is optional, completing this information can deter alteration of the document or fraudulent attachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: __Affidavit of confession of judgment._____

Document Date: __02/15/2018_____

Number of Pages: _____

Signer(s) Other Than Named Above: _____

4 of 4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND

GTR SOURCE LLC

                              Plaintiffs,

      -against-

DDC GROUP, INC. And VYACHESLAV V.
BORISOV,

                              Defendants.

Index No.: 18 150471

**JUDGMENT BY CONFESSION**

| | |
|---|---|
| Amount Confessed: | $37,475.00 |
| Amount Paid: | $00.00 |
| Amount Owed: | $37,475.00 |
| Interest (from 2/15/2018) at 9% | $ **120.12** |
| Costs by Statute (CPLR 3218(b)) | $15.00 |
| Filing Fee (CPLR 8018(a)) | $210.00 |
| Total Costs and Disbursements | $225.00 |
| Total: | $ **37,820.12** |

1-493833
**FILED AND DOCKETED**
**Feb 28 2018**
AT    02:00 P    M
**RICHMOND COUNTY CLERK**

**ATTORNEY'S AFFIRMATION**

STATE OF NEW YORK      )
                                        ) ss.:
COUNTY OF NEW YORK  )

    The undersigned, an attorney at law of the State of New York, affirms that she is the attorney of record for Plaintiff **GTR SOURCE LLC** herein, and states that the disbursements above specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: New York, New York
          February 27, 2018

                                    _____/s/_____
                                    Marcella G. Rabinovich, Esq.
                                    111 John Street, Suite 1210
                                    New York, NY 10038

ON FILING the foregoing Affidavit of Confession of Judgment made by Defendants Borisov sworn to on February 15, 2018; and upon the Affidavit of Non-Payment in Support of Entry of Judgment, Sworn to February 27, 2018.

NOW, ON MOTION OF Marcella G. Rabinovich, Esq., attorney for Plaintiff GTR SOURCE LLC, it is

ADJUDGED that Plaintiff, **GTR SOURCE LLC** , located at 111 John Street, Suite 1210, New York, NY 10038 , has judgment and does recover of the Defendants, **DDC GROUP, INC.,** located at 350 s. Grand Ave. Ste. 1670, Los Angeles, CA 90071, and **VYACHESLAV V. BORISOV**, residing at 705 W 9th St., Ste 2004, Los Angeles, CA 90015 the sum of $37,475.00 plus interest at nine percent (9%) per annum from February 15, 2018, as calculated by the Clerk in the amount of $ __120.12__ , together with $225.00 costs and disbursements as taxed by the clerk amounting in all to the sum of $__37,820.12__ ; and that the Plaintiff  GTR SOURCE LLC have execution therefore.

_____
                                                Clerk

Judgment entered th2 __28 th__ day of __Feb. 2018__, 2018.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND

GTR SOURCE LLC

                             Plaintiffs,

    -against-

DDC GROUP, INC. And VYACHESLAV V.
BORISOV,

                           Defendants.

Index No.:

**JUDGMENT BY CONFESSION**

| | |
|---|---|
| Amount Confessed: | $37,475.00 |
| Amount Paid: | $00.00 |
| Amount Owed: | $37,475.00 |
| Interest (from 2/15/2018) at 9% | $_____ |
| Costs by Statute (CPLR 3218(b)) | $15.00 |
| Filing Fee (CPLR 8018(a)) | $210.00 |
| Total Costs and Disbursements | $225.00 |
|         Total: | $_____ |

## ATTORNEY'S AFFIRMATION

STATE OF NEW YORK    )
                         ) ss.:
COUNTY OF NEW YORK  )

    The undersigned, an attorney at law of the State of New York, affirms that she is the attorney of record for Plaintiff **GTR SOURCE LLC** herein, and states that the disbursements above specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: New York, New York
      February 27, 2018

                                   _____/s/_____
                                   Marcella G. Rabinovich, Esq.
                                   111 John Street, Suite 1210
                                   New York, NY 10038

ON FILING the foregoing Affidavit of Confession of Judgment made by Defendants Borisov sworn to on February 15, 2018; and upon the Affidavit of Non-Payment in Support of Entry of Judgment, Sworn to February 27, 2018.

NOW, ON MOTION OF Marcella G. Rabinovich, Esq., attorney for Plaintiff GTR SOURCE LLC, it is

ADJUDGED that Plaintiff, **GTR SOURCE LLC** , located at 111 John Street, Suite 1210, New York, NY 10038 , has judgment and does recover of the Defendants, **DDC GROUP, INC.,** located at 350 s. Grand Ave. Ste. 1670, Los Angeles, CA 90071, and **VYACHESLAV V. BORISOV**, residing at 705 W 9th St., Ste 2004, Los Angeles, CA 90015 the sum of $37,475.00 plus interest at nine percent (9%) per annum from February 15, 2018, as calculated by the Clerk in the amount of $_____, together with $225.00 costs and disbursements as taxed by the clerk amounting in all to the sum of $_____; and that the Plaintiff  GTR SOURCE LLC have execution therefore.


_____

                                                                                                Clerk

Judgment entered the _____ day of _____, 2018.



# NEW YORK CITY MARSHAL
## Stephen W. Biegel

109 West 38th Street, Suite 200 • New York, NY 10018

Phone: (212) MARSHAL (627-7425) • Fax: (212) 398-2000

NYC@MarshalBiegel.com • www.NewYorkCityMarshal.com

# LEVY AND DEMAND ON                    April 13, 2018

Wells Fargo Bank
(Formerly Wachovia Bank)
180 Madison Avenue (at 34th)
New York, NY 10016

**JUDGMENT CREDITOR**
GTR SOURCE LLC

VS

DDC GROUP INC.
VYACHESLAV V. BORISOV
EIN# 82-3121154
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
EIN# 90-1076645
**JUDGMENT DEBTOR**

**MARSHAL'S DOCKET # E-27988**

Attached you will find a Property Execution with Notice to Garnishee. As directed under CPLR *5232(a)*, you are required to immediately turn over **to me** all property of the judgment Debtor currently in your possession or custody, not to exceed the following amount:

| | |
|---|---|
| Judgment........... | $37,820.12 |
| Interest........... | $401.62 |
| Statutory Fees........ | $520.00 |
| Expense........... | $2.70 |
| Poundage........... | $1,937.24 |
| **TOTAL** | **$40,681.68** |

# *DIRECT ALL PAYMENTS TO NYC MARSHAL BIEGEL AT ADDRESS ABOVE*

**FOR BANK USE ONLY. Please checkmark account status:** ✔

☐ Check is enclosed and accounts released   ☐ Account(s) closed on: _____

☐ No account or assets maintained at this office   ☐ Joint account / Turnover needed

☐ Account open but contains no funds.   ☐ The account of the judgment debtor is overdrawn

Name: _____   Position: _____

**I AGREE THAT THE FOLLOWING FORMS ARE ATTACHED TO THIS LEVY:**

✔ Execution   ☐ Information subpoena   ☐ Copy of check

✔ Exemption notice and claim forms   ☐ Restraining notice   ☐ Other _____

**SIGNATURE OF OFFICIAL ACCEPTING LEVY:** _____

**PRINTED NAME:** _____   **DATE:** _____   (PBANKATF)

* Amended Levy.

Wells Fargo Bank
A search of our records indicate the following
_____ No Funds
_____ No Accounts
_____ Account Closed
_____ Under Threshold
_____ No Customer Found
_____ Funds Held   4/13/2018

Authorized Signature   /   Date

Index No.18 150471

GTR SOURCE LLC

                                    Plaintiff(s)

                                                                EXECUTION
                                                                WITH NOTICE TO
                                                                GARNISHEE

                    Against

DDC GROUP, INC. and VYACHESLAV V. BORISOV
                                    Defendant(s)

THE PEOPLE OF THE STATE OF NEW YORK TO THE SHERIFF OF ANY COUNTY, GREETING:

   WHEREAS, in an action in the Supreme Court of State of New York County of Richmond
                                                                        as Plaintiff(s) and
Between          GTR SOURCE LLC                          As defendant(s)
DDC GROUP, INC. and VYACHESLAV V. BORISOV
who are all the parties named in said action, a judgment was entered on __February 28, 2018, 2018   Judgment creditor(s)
In favor of  GTR SOURCE LLC .                                            Judgment debtor(s)
and against _ DDC GROUP, INC. and VYACHESLAV V. BORISOV
whose last known address is ___350 s. Grand Ave. Ste. 1670, Los Angeles, CA 90071 and 705 W 9th St., Ste 2004, Los Angeles, CA 90015
        In the amount of $ $ __37,473.00___ __ including costs, of which $ __37,473.00__ __ __ __
Together with
interest thereon from ___February 28, 2018 __, remains due and unpaid;                          with
   WHEREAS, a transcript of the judgment was filed on __February 28, 2018___
The Clerk of the County of ___Richmond___, in which county the judgment was entered, and
   WHEREAS, a transcript of the judgment was docketed in the office of the Clerk of your county on

   NOW, THEREFORE, WE COMMAND YOU to satisfy the said judgment out of the real and personal property of the above named judgment debtor
and the debts due to him; and that only the property in which said judgment debtor who is not deceased has an interest or the debts owed to him shall be levied upon
or sold hereunder; AND TO RETURN this execution to the clerk of the above captioned court within 60 days after issuance unless service of this execution is made
within that time executions of that time made in writing by the attorney(s) for the judgment creditor.

   Pursuant to CPLR § 5205(1), $2,500 of an account containing direct deposit or electronic payments reasonably identifiable as statutory exempt payments,
as defined in CPLR § (1), an execution shall not apply to an amount equal to or less that 90% of the greater of 240 times the federal minimum hourly wage prescribed in
the Fair Labor Standards Act 1938 or 240 times the state minimum hourly wage prescribed in Labor Law § 652 in effect at the time the earning are payable, except
such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his or her dependents.

   NOTICE TO GARNISHEE   TO:
                         ADDRESS:
   WHEREAS, it appears that you are indebted to the judgment debtor, above named, or in possession of custody of property not capable of delivery in
which the judgment debtor has an interest, including, without limitation, the following specified debt and property.
   NOW, THEREFORE, YOU ARE REQUIRED by section 5232(a) of the Civil Practice Law and Rules forth-with to transfer to the Sheriff all personal
property not capable of delivery in which the judgment debtor is known or believed to have an interest now in or hereafter coming into your possession or custody
including any property specified in this notice; and to pay to the sheriff, upon maturity, all debts now due or hereafter coming due from you o the judgment debtor,
including any debts specified in this notice; and to execute any documents necessary to effect such transfer or payment:
   AND TAKE NOTICE that until such transfer or payment is made or until the expiration of 90 days after the service of this execution upon you such
further time as is provided by any order of the court served upon you whichever event first occurs, you are forbidden to make or suffer any sale, assignment or
transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other that the sheriff, except upon direction
of the sheriff or pursuant to an order of the court;
   AND TAKE FURTHER NOTICE THAT at the expiration of 90 days after a levy is made by service of this execution, or of such further time as the
court upon motion of the judgment creditor has provided, this levy shall be void except as to a property
   Or debts which have been transferred or paid to the sheriff or as to which a proceeding under sections §225 or §227 of the Civil Practice Law and Rules
has been brought.

Date: 2/28/2018                                          Signature./...........

                              Print name signed... Marcella G. Rabinovich...............

Office and Post Office Address

                    The Law Offices of Marcella G. Rabinovich, Esq., PLLC
                              111 John Street, Suite 1210
                              New York, New York 10038

**EXEMPTION NOTICE**
as required by New York Law

## YOUR BANK ACCOUNT IS RESTRAINED OR "FROZEN"

The attached Restraining Notice or notice of Levy by Execution has been issued against your bank account. You are receiving this notice because a creditor has obtained a money judgment against you, and one or more of your bank accounts has been restrained to pay the judgment. A money judgment is a court's decision that you owe money to a creditor. You should be aware that FUTURE DEPOSITS into your account(s) might also be restrained if you do not respond to this notice.

You may be able to "vacate" (remove) the judgment. If the judgment is vacated, your bank will be released. Consult an attorney (including free legal services) or visit the court clerk for more information about how to do this.

Under state and federal law, certain types of funds cannot be taken from your bank account to pay a judgment. Such money is said to be "exempt".

## DOES YOUR BANK ACCOUNT CONTAIN ANY OF THE FOLLOWING TYPES OF FUNDS?

1. Social Security;
2. Social Security disability (SSD);
3. Supplemental security income (SSI);
4. Public assistance (welfare);
5. Income earned while receiving SSI or public assistance;
6. Veterans benefits;
7. Unemployment insurance;
8. Payments from pensions and retirement accounts;
9. Disability benefits;
10. Income earned in the last 60 days (90% of which is exempt);
11. Workers' compensation benefits;
12. Child support;
13. Spousal support or maintenance (alimony);
14. Railroad retirement; and/or
15. Black lung benefits;

If YES, you can claim that your money is exempt and cannot be taken.

To make a claim, you must
a) complete the EXEMPTION CLAIM FORM attached;
b) deliver or mail the form to the bank with the restrained or "frozen" account; and
c) deliver or mail the form to the creditor or its attorney at the address listed on the form.

You must send the forms within 20 days of the postmarked date on the envelope holding this notice. You may be able to get your account released faster if you send to the creditor or its attorney written proof that your money is exempt. Proof can include an award letter from the government, an annual statement from your pension, pay stubs, copies of checks, bank records showing the last two months of account activity, or other papers showing that the money in your bank account is exempt. If you send the creditors attorney proof that the money in your account is exempt, the attorney must release that money within seven days. You do not need an attorney to make an exemption claim using the form.

## MARSHAL'S DOCKET # E-27988

(EXHPTNTC)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND INDEX# 18150471

Docket #E-27988

Judgment Creditor

GTR SOURCE LLC

## EXEMPTION CLAIM FORM

vs

Judgment Debtor

VYACHESLAV V. BORISOV

350 S. GRAND AVE. STE. 1670
LOS ANGELES, CA 90071

NAME AND ADDRESS OF JUDGMENT
CREDITOR OR ATTORNEY
ADDRESS A
  THE LAW OFFICES OF MARCELLA
  G. RABINOVICH ESQ.,PLLC
  111 JOHN STREET
  NEW YORK, NY 10038

NAME AND ADDRESS OF
FINANCIAL INSTITUTION
ADDRESS B
  WELLS FARGO BANK
  (FORMERLY WACHOVIA)
  180 MADISON AVENUE (MADISON & 34TH)
  NEW YORK, NY 10016

Directions: To claim that some or all of the funds in your account are exempt, complete both copies of this form,
and make one copy for yourself. Mail or deliver one form to ADDRESS A and one form to ADDRESS B within
twenty days of the date on the envelope holding this notice.  *****If you have any documents such as an award
letter, an annual statement from your pension, paystubs, copies of checks or bank records showing the last two
months of account activity, include copies of the documents with this form. Your account may be released more
quickly.

I state that my account contains the following type(s) of funds (check all that apply):

_____ Social Security
_____ Social Security disability (SSD)
_____ Supplemental security income (SSI)
_____ Public assistance
_____ Wages while receiving SSI or public assistance
_____ Veterans benefits
_____ Unemployment insurance
_____ Payments from pensions and retirement accounts
_____ Income earned in last 60 days (90% of which is exempt)
_____ Child support
_____ Spousal support or maintenance (alimony)
_____ Workers' compensation benefits
_____ Railroad retirement or Black lung benefits
_____ Other (describe exemption)_____
I request that any correspondence to me my claim be sent to
The following address:_____

## (FILL IN YOUR COMPLETE ADDRESS)

        I certify under penalty of perjury that the statement above is true to the
best of my knowledge and belief.

DATE                    SIGNATURE OF JUDGMENT DEBTOR

(EXMPTNTC)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND INDEX# 18150471

**Docket # E-27988**

Judgment Creditor

**GTR SOURCE LLC**

## EXEMPTION CLAIM FORM

vs

Judgment Debtor

**VYACHESLAV V. BORISOV**

**350 S. GRAND AVE. STE. 1670**
**LOS ANGELES, CA 90071**

NAME AND ADDRESS OF JUDGMENT
CREDITOR OR ATTORNEY
ADDRESS A
    THE LAW OFFICES OF MARCELLA
    G. RABINOVICH ESQ.,PLLC
    111 JOHN STREET
    NEW YORK, NY 10038

NAME AND ADDRESS OF
FINANCIAL INSTITUTION
ADDRESS B
    WELLS FARGO BANK
    (FORMERLY WACHOVIA)
    180 MADISON AVENUE (MADISON & 34TH)
    NEW YORK, NY 10016

Directions: To claim that some or all of the funds in your account are exempt, complete both copies of this form, and make one copy for yourself. Mail or deliver one form to ADDRESS A and one form to ADDRESS B within twenty days of the date on the envelope holding this notice. *****If you have any documents such as an award letter, an annual statement from your pension, paystubs, copies of checks or bank records showing the last two months of account activity, include copies of the documents with this form. Your account may be released more quickly.

I state that my account contains the following type(s) of funds (check all that apply):

_____ Social Security
_____ Social Security disability (SSD)
_____ Supplemental security income (SSI)
_____ Public assistance
_____ Wages while receiving SSI or public assistance
_____ Veterans benefits
_____ Unemployment insurance
_____ Payments from pensions and retirement accounts
_____ Income earned in last 60 days (90% of which is exempt)
_____ Child support
_____ Spousal support or maintenance (alimony)
_____ Workers' compensation benefits
_____ Railroad retirement or Black lung benefits
_____ Other (describe exemption)_____
I request that any correspondence to me my claim be sent to
The following address:_____

## (FILL IN YOUR COMPLETE ADDRESS)

I certify under penalty of perjury that the statement above is true to the best of my knowledge and belief.

DATE                    SIGNATURE OF JUDGMENT DEBTOR

(EXMPTNTC)



# NYC MARSHAL'S OFFICE
# MARSHAL STEPHEN W. BIEGEL
# 109 WEST 38TH STREET, SUITE 200
# NEW YORK, NY 10018

## FACSIMILE TRANSMITTAL SHEET

| TO: Court Orders and Levies | FROM: Jemma |
|---|---|
| COMPANY: Wells Fargo | DATE: 4/13/18 |
| FAX NUMBER SENT TO: 866.670.1561 | TOTAL NO. OF PAGES INCLUDING COVER: 6 |
| RE: MARSHAL'S LEVY Docket E- 27988 | SENDER'S PHONE NUMBER: (212) 627-7425 |

**NOTES/COMMENTS:**

### E-27988
### DDC GROUP INC.
### VYACHESLAV V. BORISOV
### EIN: 82-3121154 / 90-1076645   SSN: 535 23 5415

Please see attached **_amended_** levy and demand, execution, exemption notice and claim forms for above mentioned debtors. Kindly place hold on account and remit accordingly.

Thank you,
Jemma

↟ This is not a duplicate.
Please process accordingly.

# EXHIBIT C

FILED: ONTARIO COUNTY CLERK 03/01/2018 02:22 PM

NYSCEF DOC. Case 2:18-bk-17029-BB   Doc 11   Filed 06/22/18   Entered 06/22/18 20:03:56   Desc 03/01/2018

Main Document       Page 58 of 107

201803010152

INDEX NO. 117302-2018

Index # : 117302-2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ONTARIO

------------------------------------------------------------------x

YELLOWSTONE CAPITAL WEST, LLC,          Index No.

                      Plaintiff,          **AFFIDAVIT OF CONFESSION OF JUDGMENT**

     -against-

DDC GROUP, INC. d/b/a DDC GROUP, AND
VYACHESLAV V BORISOV,

                Defendants.

------------------------------------------------------------------x

STATE OF <u>CALIFORNIA</u>  )
                )   ss.:
COUNTY OF <u>LOS ANGELES</u>)

VYACHESLAV V BORISOV, being duly sworn, deposes and says:

1) I am a principal, owner, and an officer of DDC GROUP, INC. d/b/a DDC GROUP, a Corporation located at 350 S GRAND AVE, SUITE 1670, LOS ANGELES, CA 90071 in the County of LOS ANGELES, and as such, I have the authority to act on behalf of DDC GROUP, INC. d/b/a DDC GROUP, and have been authorized to execute this affidavit of confession of judgment. (DDC GROUP, INC. d/b/a DDC GROUP is referred to as "Merchant Defendant".)

2) I reside at 705 W 9TH STREET, SUITE 2004, LOS ANGELES, CA 90015, in the County of LOS ANGELES.

3) I, individually, and on behalf of Merchant Defendant consent to the jurisdiction of this Court.

4) Merchant Defendant hereby confesses judgment and authorizes entry of judgment in favor of Plaintiff and against Defendants in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of New York, County of Queens, Supreme Court of the State of New York, County of Erie, Supreme Court of the State of New York, County of Nassau, Supreme Court of the State of New York, County of Westchester, Supreme Court of the State of New York, County of Putnam, Supreme Court of the State of New York, County of Orange, Supreme Court of the State of New York, County of Ontario, Supreme Court of the State of New York, County of New York, and/or Supreme Court of the State of New York, County of Bronx, in the sum of $89,700.00 less any payments timely made pursuant to the secured Merchant Agreement dated February 14, 2018, plus legal fees to Plaintiff calculated at twenty-five percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 16% per annum from

FILED: ONTARIO COUNTY CLERK 03/01/2018 02:22 PM INDEX NO. 117302-2018

NYSCEF DOC. Case 2:18-bk-17029-BB   Doc 11   Filed 06/22/18   Entered 06/22/18 20:03:56   Desc 03/01/2018
Main Document   Page 59 of 107

February 14, 2018, or the highest amount allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment.

5) In addition, I hereby confess judgment, individually and personally, jointly and severally, and authorize entry of judgment in favor of Plaintiff and against myself in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of Richmond, Supreme Court of the State of New York, County of Queens, Supreme Court of the State of New York, County of Erie, Supreme Court of the State of New York, County of Nassau, Supreme Court of the State of New York, County of Westchester, Supreme Court of the State of New York, County of Putnam, Supreme Court of the State of New York, County of Orange, Supreme Court of the State of New York, County of Ontario, Supreme Court of the State of New York, County of New York, and/or Supreme Court of the State of New York, County of Bronx, against me personally in the sum of $89,700.00 less any payments timely made pursuant to the Merchant Agreement dated February 14, 2018, plus legal fees to Plaintiff calculated at twenty five percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 16% per annum from February 14, 2018, or the highest rate allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Confession of Judgment.

6) This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant Defendant's accounts-receivable, which were purchased by Plaintiff pursuant to the secured Merchant Agreement dated February 14, 2018, and for Defendants' breach of the secured Merchant Agreement, plus agreed-upon interest, attorneys' fees, costs and disbursements, as agreed-upon by Merchant Defendant and myself, under the secured Merchant Agreement, dated February 14, 2018, of which supporting documents include a Personal Guarantee and/or a UCC-1 financing statement(s).

7) Merchant Defendant and I hereby agree that this Affidavit of Confession of Judgment may be entered in the event of default under the Merchant Agreement dated February 14, 2018, without notice, and that the execution and delivery of this Affidavit of Confession of Judgment and any entry of judgment thereon shall be without prejudice to any and all rights of Plaintiff, which reserves all of its rights and remedies against Defendants.

**Remainder of page intentionally left blank**

2

8) If for any reason entry of judgment in the above specified amount or execution on the same is outside the jurisdiction of this Court, Merchant Defendant and I hereby consent to the personal jurisdiction, entry of judgment, and execution thereon in any State or Federal Court of the United States of America.

By: _____
VYACHESLAV V BORISOV, individually,
and on behalf of DDC GROUP, INC. d/b/a
DDC GROUP

On the ____ day of _____, in the year 2018, before me, the undersigned Notary Public in and for said state, personally appeared VYACHESLAV V BORISOV, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

PLEASE SEE ATTACHED,
Notary Public   NOTARY
            PUBLIC

3

FILED: ONTARIO COUNTY CLERK 03/01/2018 02:22 PM

NYSCEF DOC. Case 2:18-bk-17029-BB    Doc 11    Filed 06/22/18    Entered 06/22/18 20:03:56    Desc 03/01/2018
= Main Document      Page 61 of 107

Index #: 117302-2018

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              )
County of _Los Angeles_                          )

On _Feb. 15. 2020_              before me, _Lourdes Irene Castro, Notary Public_
.Date                                          Here Insert Name and Title of the Officer

personally appeared _Vyacheslav Borisov_
                          Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) (s)/are subscribed to the within instrument and acknowledged to me that (he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**LOURDES IRENE CASTRO**
Notary Public - California
Los Angeles County
Commission # 2159871
My Comm. Expires Jul 15, 2020

Signature _____
                    Signature of Notary Public

_Place Notary Seal Above_

———————— OPTIONAL ————————
Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

Description of Attached Document
Title or Type of Document: _Affidavit of confession of judgment._
Document Date: _02. 15. 2018_                    Number of Pages: _3_
Signer(s) Other Than Named Above: _____

Capacity(ies) Claimed by Signer(s)
Signer's Name: _____        Signer's Name: _____
☐ Corporate Officer — Title(s): _____        ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General           ☐ Partner — ☐ Limited  ☐ General
☐ Individual  ☐ Attorney in Fact            ☐ Individual  ☐ Attorney in Fact
☐ Trustee  ☐ Guardian or Conservator        ☐ Trustee  ☐ Guardian or Conservator
☐ Other: _____               ☐ Other: _____
Signer Is Representing: _____        Signer Is Representing: _____

©2015 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

Index No.                          Year    RJI No.              Hon.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ONTARIO

YELLOWSTONE CAPITAL WEST LLC,

                                                    Plaintiff,

-against-

DDC GROUP, INC. d/b/a DDC GROUP and VYACHESLAV V BORISOV,

                                                    Defendants.

## AFFIDAVIT OF CONFESSION OF JUDGMENT

### CHRISTOPHER CASTRO, ESQ.
*Attorney for Plaintiff*

*Office and Post Office Address, Telephone*
17 STATE STREET
SUITE 4000
NEW YORK, NEW YORK 10004
PHONE: (646) 774-3308
FAX:    (978) 313-6609

Service of a copy of the within           is hereby admitted.

Dated,

                                                    Attorney(s) for

Please take notice
☐ Notice of Entry
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within name court on
☐ Notice of settlement
that an order        of which the within is a true copy will be presented for
settlement to the HON.        one of the judges
of the within named court, at        on    at
Dated,                                              Yours, etc.

                                                    Attorney(s) for

FILED: ONTARIO COUNTY CLERK 03/01/2018 02:22 PM
NYSCEF DOC. NO. 2

INDEX NO. 117302-2018

RECEIVED NYSCEF: 03/01/2018

2018030101154

Index # : 117302-2018

# EXHIBIT A

# YELLOWSTONE CAPITAL WEST, LLC

30 Broad Street, 14th Floor, Suite 1462, New York, New York 10004

### SECURED MERCHANT AGREEMENT

CFL License Number
603-K236

This agreement, dated 2/14/2018, between YELLOWSTONE CAPITAL WEST, LLC ("YCW") and the merchant listed below (the "Merchant"):

Business Legal Name: DDC GROUP, INC.

D/B/A: DDC GROUP

Type of Entity: Corporation                    EIN #: ▓▓▓▓▓▓

Physical Address: 350 S GRAND AVE, SUITE 1670, LOS ANGELES, CA 90071

Mailing Address: 350 S GRAND AVE, SUITE 1670, LOS ANGELES, CA 90071

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to YCW (making YCW the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, the Specified Percentage (defined below) of Merchant's future accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts") defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business), for the payment of Merchant's sale of goods or services until the amount specified below (the "Purchased Amount") has been delivered by Merchant to YCW (the "Agreement" or "Merchant Agreement").

The Purchased Amount shall be paid to YCW by Merchant's irrevocably authorizing only ONE depositing account acceptable to YCW (the "Account") to remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each transaction, until such time as YCW receives payment in full of the Purchased Amount. Merchant hereby authorizes YCW to ACH Debit the specified remittances from the Merchant's bank account on a daily basis and will provide YCW with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by YCW remains in the account and will be held responsible for any fees incurred by YCW resulting from a rejected ACH attempt or an event of default. (See Appendix A). YCW is not responsible for any overdrafts or rejected transactions that may result from YCW's ACH debiting the specified amounts under the terms of this agreement. YCW may, upon Merchant's request, adjust the amount of any payment due under this Agreement at YCW's sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between YCW and Merchant, upon the violation of any provision contained the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this agreement is annexed hereto in Appendix A.

| PURCHASE PRICE: | SPECIFIED PERCENTAGE: | PURCHASED AMOUNT: |
|---|---|---|
| $60,000.00 | 15% | $89,700.00 |

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "SECURITY AGREEMENT AND GUARANTY" AND "ADMINISTRATIVE FORM" HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS AGREEMENT.

**FOR THE MERCHANT #1**

By: ⇨ _____

Name: VYACHESLAV V BORISOV

Title: OWNER

SSN: ▓▓▓▓▓▓

**OWNER/GUARANTOR #1**

By: ⇨ _____

Name: VYACHESLAV V BORISOV

SSN: ▓▓▓▓▓▓

**FOR THE MERCHANT #2**

By: _____

Name: N/A

Title: OWNER

SSN:

**OWNER/GUARANTOR #2**

By: _____

Name: N/A

SSN:

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Owner(s) represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to pay this obligation and that the information provided herein and in all of YCW documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and YCW, and YCW shall be entitled to all remedies available under law. YCW may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant via Processor and/or Operator to YCW. An investigative report may be made in connection with the Agreement. Merchant and each of the above-signed Owners authorizes YCW, its agents and representatives and any credit-reporting agency engaged by YCW, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull a credit report at any time now or for so long as Merchant and/or Owners(s) continue to have any obligation owed to YCW as a consequence of this Agreement or for YCW's ability to determine Merchant's eligibility to enter into any future agreement with Company.

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.**

1385064

FILED: ONTARIO COUNTY CLERK 03/01/2018 02:22 PM    INDEX NO. 117302-2018

NYSCEF DOC. Case 2:18-bk-17029-BB    Doc 11    Filed 06/22/18    Entered 06/22/18 20:03:56    Desc 03/01/2018
                                    Main Document    Page 65 of 107

**MERCHANT AGREEMENT TERMS AND CONDITIONS**

## I. TERMS OF ENROLLMENT IN PROGRAM

**1.1    Merchant Deposit Agreement.** Merchant shall execute an agreement (the "Merchant Deposit Agreement") acceptable to YCW, and appoint a Bank acceptable to YCW, to obtain electronic fund transfer services and/or "ACH" payments. Merchant shall provide YCW and/or its authorized agent with all of the information, authorizations and passwords necessary to verify Merchant's receivables, receipts and deposits into the account. Merchant shall authorize YCW and/or it's agent to deduct the amounts owed to YCW for the Receipts as specified herein from settlement account which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to YCW by permitting YCW to withdraw the specified percentages by ACH debiting of the account. The authorization shall be irrevocable absent YCW's written consent.

**1.2    Future Purchases.** YCW reserves the right to rescind the offer to make any purchase payments hereunder, in its sole discretion.

**1.3    Financial Condition.** Merchant and Guarantor(s) authorize YCW and its agents to investigate their financial responsibility and history, and will provide to YCW any bank or financial statements, tax returns, etc., as YCW deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. YCW is authorized to update such information and financial profiles from time to time as it deems appropriate.

**1.4    Transactional History.** Merchant authorizes their bank to provide YCW with Merchant's banking and/or credit-card processing history to determine qualification or continuation in this program.

**1.5    Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by YCW for monies owed to YCW from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by YCW.

**1.6    No Liability.** In no event will YCW be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or con sequential damages, each of which is waived by Merchant and Guarantor(s).

**1.7    Reliance on Terms.** Section 1.1, 1.9, 1.10 and 2.5 of this Agreement are agreed to for the benefit of Merchant, YCW and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

**1.8    Sale of Receipts.** Merchant and YCW agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from YCW to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement equals the fair market value of such Receipts. YCW has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to YCW in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers in the manner provided in Section 1.1. In no event shall the aggregate of all amounts be deemed as interest hereunder and charged or collected hereunder exceed the highest rate permissible at law. In the event that a court determines that YCW has charged or received interest hereunder in excess of the highest rate allowed by law, then the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and YCW shall promptly refund to Merchant any interest received by YCW in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that YCW not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law.

**1.9    Power of Attorney** Merchant irrevocably appoints YCW as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to YCW from Processor, or in the case of a violation by Merchant of Section 1.10 or the occurrence of an Event of Default under Section III hereof, from Merchant, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to YCW; and (v) to file any claims or take any action or institute any proceeding which YCW may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

**1.10    Protections against Default.** The following Protections 1 through 8 may be invoked by YCW, immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the YCW electronic check processor; (b) Merchant changes its arrangements with Processor in any way that is adverse to YCW; (c) Merchant changes the electronic check processor through which the Receipts are settled from Process or to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check transactions to another processor; (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of YCW, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to YCW; or (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to YCW at law, in equity or otherwise pursuant to this Agreement. **Protection 1:** The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately. **Protection 2.** YCW may enforce the provisions of the Personal

Rev. 9.6.17

Owner 1 Initials: _____

Owner 2 Initials: _____

Guarantee of Performance against the Guarantor(s). **Protection 3.** Merchant shall, upon execution of this Agreement, deliver to YCW an executed confession of judgment in favor of YCW in the amount of the Purchase Amount stated in the Agreement, plus attorneys' fees calculated at twenty-five percent (25%) of the balance due hereunder at the time of breach. Upon breach of any provision in this paragraph 1.10, YCW may enter that confession of judgment as a judgment with the Clerk of the Court, without notice, and execute thereon. **Protection 4.** YCW may enforce its security interest in the Collateral identified in the Security Agreement herein. **Protection 5.** YCW may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, in which YCW shall recover judgment against Merchant, Merchant shall be liable for all of YCW's costs of lawsuit, including but not limited to all reasonable attorneys' fees and court costs (in addition to any remedies pursuant to Protection 3 of this section 1.10). **Protection 6.** Merchant shall upon execution of this Agreement, delivery to YCW an executed assignment of lease of Merchant's premises in favor of YCW. Upon breach of any provision in this paragraph 1.10, YCW may exercise its rights under such assignment. **Protection 7.** YCW may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise, in an amount consistent with the Specified Percentage. **Protection 8.** YCW shall have the right, without waiving any of its rights and remedies and without notice to Merchant and/or Guarantor(s), to notify Merchant's credit card processor of the sale of Receipts hereunder and to direct such credit card processor to make payment to YCW of all or any portion of the amounts received by such credit card processor on behalf of Merchant. Merchant hereby grants to YCW an irrevocable power - of-attorney, which power-of-attorney shall be coupled with an interest, and hereby appoints YCW or any of YCW representatives as Merchant's attorney-in -fact, to take any and all action necessary to direct such new or additional credit card processor to make payment to YCW as contemplated by this Section.

**1.11 Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes YCW to disclose

information concerning Merchant's and each Owner's and/or Guarantor(s)'s credit standing and business conduct only, to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant, Guarantor(s) and Owner(s) hereby waives to the maximum extent permitted by law any claim for damages against YCW or any of its affiliates relating to any (i) investigation undertaken by or on behalf of YCW as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.12 Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by YCW, including this Agreement and any other YCW documentation s (collectively, "Confidential Information") are proprietary and confidential information of YCW. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of YCW to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Section 1.12.

**1.13 D/B/A's.** Merchant hereby acknowledges and agrees that YCW may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between YCW and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## II. REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents warrants and covenants that as of this date and during the term of this Agreement:

**2.1 Financial Condition and Financial Information.** Its bank and financial statements, copies of which have been furnished to YCW, and future statements which will be furnished hereafter at the discretion of YCW, fairly represent the financial condition of Merchant at such dates, and prior to execution of the Agreement, there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise YCW of any material adverse change in its financial condition, operation or ownership. YCW may request statements at any time during the performance

of this Agreement and the Merchant shall provide them to YCW within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

**2.2 Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

**2.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4 Insurance.** Merchant will maintain business-interruption insurance naming YCW as loss payee and additional insured in amounts and against risks as are satisfactory to YCW and shall provide YCW proof of such insurance upon request.

**2.5 Electronic Check Processing Agreement.** Merchant will not change its processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without YCW's prior written consent. Any such change shall be a material breach of this Agreement.

**2.6 Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and YCW or change any of its places of business.

**2.7 Estoppel Certificate.** Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from YCW to Merchant, execute, acknowledge and deliver to YCW and/or to any other person, person firm or corporation specified by YCW, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modification s) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**2.8 Working Capital Funding.** Merchant shall not further encumber the Receipts, without (i) written consent of YCW, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to YCW; or (iii) Merchant takes any action, fails to take any action, or offers any incentive— economic or otherwise—the

Rev. 9.6.17



Owner 1 Initials: _____

Owner 2 Initials: _____

FILED: ONTARIO COUNTY CLERK 03/01/2018 02:22 PM INDEX NO. 117302-2018

NYSCEF DOC. Case 2:18-bk-17029-BB    Doc 11    Filed 06/22/18    Entered 06/22/18 20:03:56    Desc NYSCEF: 03/01/2018
Main Document    Page 67 of 107

result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to YCW at law, in equity or otherwise pursuant to this Agreement. Protection 1: The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately. Protection 2. YCW may enforce the provisions of the Personal Guarantee of Performance against the Guarantor(s). Protection 3. Merchant shall, upon whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales, with any party other than YCW.

**2.9    Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of YCW.

**2.10 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.11 Defaults under Other Contracts.** Merchant's execution of and/or performance under this Agreement will not cause or create an event of default by Merchant under any contract with another person or entity.

## III. EVENTS OF DEFAULT AND REMEDIES

**3.1    Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) the sending of notice of termination by Guarantor(s) prior to the Purchased Amount being paid to YCW; (d) Except for: (i) as a result of an Act of God, (ii) filing for protection under applicable bankruptcy law, (iii) an assignment for the benefit of the creditors, and (iv) similar protection; (e)

Merchant shall transfer or sell all or substantially all of its assets; (f) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (g) Merchant shall use multiple depositor y accounts without the prior written consent of YCW; (h) Merchant shall change its depositing account without the prior written consent of YCW; (i) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; (j) Merchant shall default under any of the terms, covenants and conditions of any other agreement with YCW; or (k) Merchant shall fail to deposit its Receipts into the Account.

**3.2    Remedies.** In case any Event of Default occurs and is not waived pursuant to Section 4.4. hereof, YCW may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Personal Guarantee) or any other legal or equitable right or remedy. All rights, powers and remedies of YCW in connection with this Agreement may be exercised at any time by YCW after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.3    Costs.** Merchant shall pay to YCW all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of YCW's remedies set forth herein, including but not limited to court costs and attorneys' fees calculated at twenty-five percent (25%) of the balance at the time of default as provided for in section 1.10 herein.

**3.4    Required Notifications.** Merchant is required to give YCW written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give YCW seven (7) days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

## IV. MISCELLANEOUS

**4.1    Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by both parties.

**4.2    Assignment.** YCW may assign, transfer or sell its rights to receive the

Purchased Amount or delegate its duties hereunder, either in whole or in part without prior notice to the Merchant.

**4.3    Notices.** All notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective only upon receipt.

**4.4    Waiver Remedies.** No failure on the part of YCW to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.5    Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of YCW which consent may be withheld in YCW's sole discretion.

**4.6    Governing Law, Venue and Jurisdiction.** This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of New York, without regards to any applicable principles of conflicts of law. If there is any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, then such litigation shall only be instituted in any court sitting in New York State, (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to jurisdiction or venue. Should a proceeding be initiated in any other forum, the parties waive any right to oppose any motion or application made by either party to transfer such proceeding to an Acceptable Forum.

**4.7    Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.8    Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision



Owner 1 Initials: _____

Owner 2 Initials: _____

contained herein shall not in any way be affected or impaired.

**4.9    Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and Security Agreement hereto embody the entire agreement between Merchant and YCW and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.10    JURY TRIAL WAIVER. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.**

**4.11    CLASS ACTION WAIVER. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY, AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.**

**4.12    Facsimile Acceptance.** Facsimile signatures and/or via Portable Digital Format (PDF) shall be deemed acceptable for all purposes.

**4.13    Arbitration.** If YCW, Merchant or any Guarantor requests, the other parties agree to arbitrate all disputes and claims arising out of or relating to the Agreement. If YCW, Merchant or any Guarantor seeks to have a dispute settled by arbitration, that party must first send to the other party, by certified mail, a written Notice of Intent to Arbitrate. If YCW, Merchant or any Guarantor do not reach an agreement to resolve the claim within 30 days after the Notice is received, YCW, Merchant or any Guarantor may commence an arbitration proceeding with the American Arbitration Association ("AAA"), located in New York City. YCW will promptly reimburse Merchant or the Guarantor any arbitration filing fee; however, in the event that both Merchant and the Guarantor must pay filing fees, YCW will only reimburse Merchant's arbitration filing fee and, except as provided in the next sentence, YCW will pay all administration and arbitrator fees. If the arbitrator finds that either the substance of the claim raised by Merchant or the Guarantor or the relief sought by Merchant or the Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Civil Procedure 11(b), then YCW will pay these fees only if required by the AAA Rules. If the arbitrator grants relief to Merchant or the Guarantor that is equal to or greater than the value of what Merchant or the Guarantor has requested in the arbitration, YCW shall reimburse Merchant or the Guarantor for that person's reasonable attorneys' fees and expenses incurred for the arbitration. Merchant and the Guarantor agree that, by entering into this Agreement, they are waiving the right to trial by jury. PURCHASER, MERCHANT AND ANY GUARANTOR MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding. Further, YCW, Merchant and any Guarantor agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and that if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void. MERCHANT AND ANY GUARANTOR MAY OPT OUT OF THIS CLAUSE. To opt out of this Arbitration Clause, Merchant and/or Guarantor may send YCW a notice that the Merchant or Guarantor does not want this clause to apply to this Agreement. For any opt out to be effective, Merchant and/or Guarantor must send an opt out notice to the following address by registered mail, within 14 days after the date of this Agreement: 30 Broad Street, 14th Floor, Suite 1462, New York, New York 10004.

Rev. 9.6.17

Owner 1 Initials: _____

Owner 2 Initials: _____

### YELLOWSTONE CAPITAL WEST, LLC - SECURITY AGREEMENT AND GUARANTY

Business Legal Name: DDC GROUP, INC.
D/B/A: DDC GROUP
Type of Entity: Corporation                    EIN #: ██████████
Physical Address: 350 S GRAND AVE, SUITE 1670, LOS ANGELES, CA 90071
Mailing Address: 350 S GRAND AVE, SUITE 1670, LOS ANGELES, CA 90071

### I.    SECURITY AGREEMENT

**Security Interest**. To secure Merchant's payment and performance obligations to YCW under the Merchant Agreement, Merchant hereby grants to YCW a security interest in all assets now owned, or hereafter acquired, including without limitation: (a) all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant; and (b) all proceeds, as that term is defined by Article 9 of the UCC ("a" and "b" collectively, the "Collateral").

**Cross-Collateral**. To secure Guarantor's payment and performance obligations to YCW under this Security Agreement and Guaranty (the "Agreement"), Guarantor hereby grants YCW an additional security interest in

_____

the ("Additional Collateral"). Guarantor(s) understands that YCW will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement. Merchant and Guarantor each acknowledge and agree that any security interest granted to YCW under an agreement between Merchant or Guarantor and YCW (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement.

Merchant and Guarantor each agrees to execute any documents or take any action in connection with this Agreement as YCW deems necessary to perfect or maintain YCW's first priority security interest in the Collateral, the Additional Collateral and the Cross-Collateral, including the execution of any account control agreements. Merchant and Guarantor each hereby authorizes YCW to file any financing statements deemed necessary by YCW to perfect or maintain YCW's security interest, which financing statement may contain notification that Merchant and Guarantor have granted a negative pledge to YCW with respect to the Collateral, the Additional Collateral and the Cross- Collateral, and that any subsequent lienor may be tortiously interfering with YCW's rights. Merchant and Guarantor shall be liable for and YCW may charge and collect all costs and expenses, including but not limited to attorney's fees, which may be incurred by YCW in protecting, preserving and enforcing YCW's security interest and rights. Merchant further acknowledges that YCW may use another legal name and/or D/B/A when designating the Secured Party, when YCW files the above-referenced financing statement(s).

**Negative Pledge**. Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral, the Additional Collateral or the Cross-Collateral, as applicable.

**Consent to Enter Premises and Assign Lease**. YCW shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, YCW may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that YCW may enter into an agreement with Merchant's landlord giving YCW the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified Merchant capable of operating a business comparable to Merchant's at such premises.

**Remedies**. Upon any Event of Default, YCW may (i) pursue any remedy available at law (including those available under the provisions of the UCC), (ii) or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise, and (iii) exercise its rights under this Agreement.

### II.    GUARANTY

**Personal Guaranty of Performance**. The undersigned Guarantor(s) hereby guarantees to YCW, Merchant's performance of all of the representations, warranties, covenants made by Merchant in this Security Agreement and Guarantee, and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due (i) at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement, and (ii) if any representation, warranty or covenant made by Merchant in this Agreement, or the Merchant Agreement, are false and/or misleading, in YCW's sole and absolute discretion.

**Guarantor Waivers**. In the event that Merchant fails to deliver the receivables purchased hereunder or perform any obligation when due under the Merchant Agreement, YCW may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross-Collateral YCW may hold pursuant to this Agreement or any other guaranty.

Rev. 9.6.17

Owner 1 Initials: _____

Owner 2 Initials: _____

YCW does not have to notify Guarantor(s) of any of the following events and Guarantor(s) will not be released from its/their obligations under this Agreement if it is not notified of: (i) Merchant's failure to timely perform any obligation under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) YCW's acceptance of this Agreement ; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to YCW. In addition, YCW may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement : (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to YCW; (ii) release Merchant from its obligations to YCW; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Merchant Amount plus any accrued but unpaid interest and Merchant's other obligations to YCW under the Merchant Agreement and this Agreement are satisfied in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that YCW must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

## IN WITNESS WHEREOF, the parties have executed this
## Security Agreement and Guaranty as of the date first written above;

FOR THE MERCHANT #1
By:
➪ _____
Name: VYACHESLAV V BORISOV
Title: OWNER
SSN: ▮▮▮▮▮▮

OWNER/GUARANTOR #1
By:
➪ _____
Name: VYACHESLAV V BORISOV
SSN: ▮▮▮▮▮▮

FOR THE MERCHANT #2
By:
_____
Name: N/A
Title: OWNER
SSN:

OWNER/GUARANTOR #2
By:
_____
Name: N/A
SSN:

## AGREED AND ACCEPTED:

YELLOWSTONE CAPITAL WEST, LLC
By:
_____
Name:
Title:

# ADDENDUM TO SECURED MERCHANT AGREEMENT

This Addendum is entered into on 2/14/2018 by and between **YELLOWSTONE CAPITAL WEST, LLC** ("YCW") and DDC GROUP, INC. (the "Merchant").

    1.     Should any of the terms of this Addendum conflict with the terms of the agreement between YCW and the Merchant dated 2/14/2018 (the "Agreement"), then the terms of this Addendum shall govern and be controlling. Capitalized terms used herein but otherwise not defined, shall have the same definition as in the Agreement:

    a.    By signing below, the Merchant hereby requests and acknowledges that the Specified Percentage shall be revised to $1,196.00 per business Day (the "Daily Payment") which the parties agree is a good-faith approximation of the Specified Percentage, based on the Merchant's prior receipts due to YCW pursuant the Agreement.

    b.    The Daily Payment is to be drawn via ACH payment, from the following bank account:

 •Please verify and complete any missing information.

    i.  Account Number:
    ii.  Routing Number:
    iii.  Account Name:
    iv.  Bank Name:



    c.    At the Merchant's option, within five (5) business following the end of a calendar month, the Merchant may request a reconciliation to take place, whereby YCW shall ensure that the cumulative amount remitted for the subject month via the Daily Payment is equal to the amount of the Specified Percentage (the "Reconciliation"). However, in order to effectuate the Reconciliation, upon submitting the request for the Reconciliation to YCW – but in no event later than five (5) business days following the end of the calendar month – the Merchant must produce any and all evidence and documentation requested by YCW in its sole and absolute discretion, necessary to identify the appropriate amount of – and effectuate - the Specified Percentage. The foregoing includes without limitation, any and all bank statements, merchant statements or other documents necessary to ascertain the amount of the Specified Percentage, including login to the Merchant's bank account(s).

    d.    The Merchant specifically acknowledges that the Daily Payment in lieu of the Specified Percentage is being provided to the Merchant as a courtesy, and if the Merchant fails to furnish the requested documentation within five (5) business days following the end of a calendar month, then YCW shall not be obligated to effectuate the Reconciliation discussed in Section (c) herein. Additionally, as the Daily Payment is being provided to Merchant as a courtesy, the Merchant may elect, upon timely notice as outlined above to YCW , to remit receipts via Specified Percentage instead of the Daily Payment.

    IN WITNESS WHEREOF, the parties have executed this Addendum to the Agreement as of the date first set forth above.

FOR THE MERCHANT #1;
➪ Signature: _____
By: VYACHESLAV V BORISOV

FOR THE MERCHANT #2:
Signature: _____
By:

**YELLOWSTONE CAPITAL WEST, LLC**
Signature: _____
By: _____

** This authorization is to remain in full force and effect until YCW receives written notification from the Merchant of its termination in such time and in such manner to afford YCW a reasonable opportunity to act on it. Revocation of this authorization prior to remittance of the balance owed pursuant to the Agreement shall constitute a breach thereunder.
Rev. 9.6.17

# Ontario County Clerk Recording Page

## Return To

**Matthew J. Hoose, County Clerk**
Ontario County Clerk
20 Ontario Street
Canandaigua, New York  14424
(585) 396-4200

Document Type: **JUDGMENT**

Receipt Number: 345233

| Party 1 |
| --- |
| DDC GROUP INC |

| Party 2 |
| --- |
| YELLOWSTONE CAPITAL WEST LLC |

| Fees |
| --- |
| Total Fees Paid:                    $0.00 |

| Control #: | 201803010163 |
| --- | --- |
| Ref #: | JN 2018 000652 |
| Ref #: | J 2018 000979 |
| Index #: | 117302-2018 |

State of New York
County of Ontario

EFiling through NYSCEF with a total page count of **4**.

_____
**Ontario County Clerk**

*This sheet constitutes the Clerk's endorsement required by section 319 of the Real Property Law of the State of New York*

VAK

**Do Not Detach**

FILED: ONTARIO COUNTY CLERK 03/01/2018 03:37 PM
INDEX NO. 117302-2018

NYSCEF DOC. NO. 1    Case 2:18-bk-17029-BB    Doc 1    Filed 06/22/18    Entered 06/22/18 20:03:56    Desc
Main Document    Page 73 of 107
RECEIVED NYSCEF: 03/01/2018

201803010155

Index #: 117302-2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ONTARIO

YELLOWSTONE CAPITAL WEST LLC,

Plaintiff,

-against-

DDC GROUP, INC. d/b/a DDC GROUP and
VYACHESLAV V BORISOV,

Defendants.

Index No.

**Plaintiff's Address:**
30 Broad Street, 14th Floor
New York, New York 10004

**JUDGMENT BY CONFESSION**

| | |
|---|---|
| Amount Confessed: | $ 89,700.00 |
| Less Payments Received: | $ 0.00 |
| **Amount Due and Owing:** | **$ 89,700.00** |
| Interest (from February 21, 2018) at 16%: | $ 314.56 |
| Attorney's Fees confessed: | $ 22,425.00 |
| Costs by Statute (CPLR 3218[b]): | $ 15.00 |
| Filing Fee (CPLR 8018[a]): | $ 210.00 |
| Total Costs and Disbursements: | $ 225.00 |
| **Total:** | **$ 112,664.56** |

*Costs taxed @ $225.00 Matthew J. Hoosley Valerie M. Point acting dep clerk*

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

ATTORNEY'S AFFIRMATION

The undersigned, an attorney at law of the State of New York, affirms that he is the attorney of record for the plaintiff YELLOWSTONE CAPITAL WEST LLC herein, and states that the disbursements above specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: New York, New York
       March 1, 2018

Christopher Castro, Esq.
17 State Street, Suite 4000
New York, New York 10004
Tel: (646) 774-3308

FILED: ONTARIO COUNTY CLERK 03/01/2018 03:37 PM INDEX 2021 117302-2018
NYSCEF DOC. NO. 4 RECEIVED NYSCEF: 03/01/2018
201803010155

Case 2:18-bk-17029-BB Doc 11 Filed 06/22/18 Entered 06/22/18 20:02:56 Desc
Main Document Page 74 of 107
Index #: 117302-2018

**ON FILING** the foregoing Affidavit of Confession of Judgment made by Defendants herein, sworn to on February 15, 2018; and upon the Affidavit in Support of Entry of Judgment, sworn to on March 1, 2018, along with the exhibits thereto;

**NOW, ON MOTION OF** Christopher Castro, Esq., attorney for Plaintiff YELLOWSTONE CAPITAL WEST LLC, it is

**ADJUDGED**, that Plaintiff YELLOWSTONE CAPITAL WEST LLC having an address at 30 Broad Street, 14th Floor, New York, New York 10004, have judgment and do recover of Defendant DDC GROUP, INC. d/b/a DDC GROUP, having an address at 350 S Grand Ave, Suite 1670, Los Angeles, California 90071 and Defendant VYACHESLAV V BORISOV, having an address at 705 W 9th Street Suite 2004, Los Angeles, California 90015, jointly and severally, the sum of $89,700.00 plus interest at sixteen percent (16%) as calculated by the Clerk in the amount of $314.56, plus costs and disbursements as taxed by the Clerk in the amount of $225.00, plus attorneys' fees in the amount of $22,425.00 for a total sum of $112,664.56; and that

Plaintiff YELLOWSTONE CAPITAL WEST LLC shall have execution thereof.

_Matthew J. Hoose by_
_Valeria A. Kentaily dep Cerk_
CLERK

Judgment entered the _1st_ day of _March_, 2018.

Index No.  Year   RJI No.   Hon.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ONTARIO

YELLOWSTONE CAPITAL WEST LLC,

Plaintiff,

-against-

DDC GROUP, INC. d/b/a DDC GROUP and VYACHESLAV V BORISOV,

Defendants.

## JUDGMENT

### CHRISTOPHER CASTRO, ESQ.
*Attorney for Plaintiff*

*Office and Post Office Address, Telephone*
**17 STATE STREET**
**SUITE 4000**
**NEW YORK, NEW YORK 10004**
**PHONE: (646) 774-3308**
**FAX:   (978) 313-6609**

Service of a copy of the within         is hereby admitted.

Dated,

Attorney(s) for

Please take notice
☐ Notice of Entry
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within name court on
☐ Notice of settlement
that an order         of which the within is a true copy will be presented for
settlement to the HON.        one of the judges
of the within named court, at        on        at
Dated,

Yours, etc.

Attorney(s) for

FILED: ONTARIO COUNTY CLERK 03/01/2018 02:22 PM
NYSCEF DOC. Case 2:18-bk-17029-BB    Doc 11    Filed 06/22/18    Entered 06/22/18 20:03:56    Desc03/01/2018
Main Document    Page 76 of 107

201803010155

INDEX NO. 117302-2018

Index # : 117302-2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ONTARIO

YELLOWSTONE CAPITAL WEST LLC,

Index No.

Plaintiff,

Plaintiff's Address:
30 Broad Street, 14th Floor
New York, New York 10004

-against-

DDC GROUP, INC. d/b/a DDC GROUP and
VYACHESLAV V BORISOV,

**JUDGMENT BY CONFESSION**

Defendants.

| | |
|---|---|
| Amount Confessed: | $ 89,700.00 |
| Less Payments Received: | $ 0.00 |
| **Amount Due and Owing:** | **$ 89,700.00** |
| Interest (from February 21, 2018) at 16%: | $ 314.56 |
| Attorney's Fees confessed: | $ 22,425.00 |
| Costs by Statute (CPLR 3218[b]): | $ 15.00 |
| Filing Fee (CPLR 8018[a]): | $ 210.00 |
| Total Costs and Disbursements: | $ 225.00 |
| **Total:** | **$ 112,664.56** |

STATE OF NEW YORK    )
                     ) ss.:            ATTORNEY'S AFFIRMATION
COUNTY OF NEW YORK   )

The undersigned, an attorney at law of the State of New York, affirms that he is the attorney of record for the plaintiff YELLOWSTONE CAPITAL WEST LLC herein, and states that the disbursements above specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: New York, New York
       March 1, 2018

Christopher Castro, Esq.
17 State Street, Suite 4000
New York, New York 10004
Tel: (646) 774-3308

FILED: ONTARIO COUNTY CLERK 03/01/2018 02:22 PM
INDEX #: 117302-2018
NYSCEF DOC. NO. 1
RECEIVED NYSCEF 03/01/2018

Case 2:18-bk-17029-BB   Doc 11   Filed 06/22/18   Entered 06/22/18 20:03:56   Desc
Main Document      Page 77 of 107

**ON FILING** the foregoing Affidavit of Confession of Judgment made by Defendants herein, sworn to on February 15, 2018; and upon the Affidavit in Support of Entry of Judgment, sworn to on March 1, 2018, along with the exhibits thereto;

**NOW, ON MOTION OF** Christopher Castro, Esq., attorney for Plaintiff YELLOWSTONE CAPITAL WEST LLC, it is

**ADJUDGED**, that Plaintiff YELLOWSTONE CAPITAL WEST LLC having an address at 30 Broad Street, 14th Floor, New York, New York 10004, have judgment and do recover of Defendant DDC GROUP, INC. d/b/a DDC GROUP, having an address at 350 S Grand Ave, Suite 1670, Los Angeles, California 90071 and Defendant VYACHESLAV V BORISOV, having an address at 705 W 9th Street Suite 2004, Los Angeles, California 90015, jointly and severally, the sum of $89,700.00 plus interest at sixteen percent (16%) as calculated by the Clerk in the amount of $314.56, plus costs and disbursements as taxed by the Clerk in the amount of $225.00, plus attorneys' fees in the amount of $22,425.00 for a total sum of $112,664.56; and that

Plaintiff YELLOWSTONE CAPITAL WEST LLC shall have execution thereof.

_____
CLERK

Judgment entered the _____ day of _____, 2018.

FILED: ONTARIO COUNTY CLERK 03/01/2018 02:22 PM INDEX #: 117302-2018

NYSCEF DOC. Case 2:18-bk-17029-BB    Doc 11    Filed 06/22/18    Entered 06/22/18 20:03:56    Desc 03/01/2018
                    Main Document        Page 78 of 107

Index No.                Year    RJI No.          Hon.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ONTARIO

YELLOWSTONE CAPITAL WEST LLC,

                                 Plaintiff,

                -against-

DDC GROUP, INC. d/b/a DDC GROUP and VYACHESLAV V BORISOV,

                               Defendants.

### JUDGMENT

### CHRISTOPHER CASTRO, ESQ.
*Attorney for Plaintiff*

*Office and Post Office Address, Telephone*
**17 STATE STREET**
**SUITE 4000**
**NEW YORK, NEW YORK 10004**
**PHONE: (646) 774-3308**
**FAX:    (978) 313-6609**

Service of a copy of the within         is hereby admitted.

Dated,

                                      Attorney(s) for

Please take notice
☐ Notice of Entry
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within name court on
☐ Notice of settlement
that an order       of which the within is a true copy will be presented for
settlement to the HON.      one of the judges
of the within named court, at       on     at
Dated,                                  Yours, etc.

                                      Attorney(s) for

FILED: ONTARIO COUNTY CLERK 03/06/2018 04:40 PM
INDEX NO. 117302-2018
NYSCEF DOC. Case 2:18-bk-17029-BB   Doc 11   Filed 06/22/18   Entered 06/22/18 20:03:56   Desc 03/06/2018
Main Document      Page 79 of 107
201803060240
Index # : 117302-2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ONTARIO

YELLOWSTONE CAPITAL WEST LLC,

        Plaintiff/Judgment Creditor,

        -against-

DDC GROUP, INC. D/B/A DDC GROUP AND
VYACHESLAV V BORISOV,

        Defendants/Judgment Debtors.

Index No. 117302-2018

**NOTICE OF ENTRY
OF JUDGMENT**

**PLEASE TAKE NOTICE** that annexed is a true copy of a Judgment dated March 1,

2018 in the above-captioned action, and entered in the office of the County Clerk of ONTARIO

County on or about March 1, 2018.

Dated: New York, New York
      March 1, 2018

Christopher Castro, Esq.
17 State Street, Suite 4000
New York, New York 10004
Phone: (646) 774-3308

Defendants' Address(es):

Vyacheslav V Borisov
705 W 9th Street Suite 2004
Los Angeles, California 90015

DDC Group, Inc.
d/b/a DDC Group
350 S Grand Ave, Suite 1670
Los Angeles, California 90071

# Ontario County Clerk Recording Page

F201803010020

## Return To

**Matthew J. Hoose, County Clerk**
Ontario County Clerk
20 Ontario Street
Canandaigua, New York  14424
(585) 396-4200

Document Type: **JUDGMENT**

Receipt Number: 345233

| Party 1 |
| --- |
| DDC GROUP INC |

| Fees |
| --- |

| Total Fees Paid: | $0.00 |
| --- | --- |

| Party 2 |
| --- |
| YELLOWSTONE CAPITAL WEST LLC |

| Control #: | 201803010163 |
| --- | --- |
| Ref #: | JN 2018 000652 |
| Ref #: | J 2018 000979 |
| Index #: | 117302-2018 |

State of New York
County of Ontario

EFiling through NYSCEF with a total page count of 4.

*Matthew J Hoose*
_____
**Ontario County Clerk**

*This sheet constitutes the Clerk's endorsement required by section 319 of the Real Property Law of the State of New York*

VAK

**Do Not Detach**

FILED: ONTARIO COUNTY CLERK 03/06/2018 04:40 PM   INDEX #: 117302-2018
NYSCEF DOC. NO. [illegible]   RECEIVED NYSCEF: 03/01/2018

FILED: ONTARIO COUNTY CLERK 03/06/2018 04:40 PM   Index #: 117302-2018
NYSCEF: Printed in Ontario County, NY - County Clerk Mailed Document   Page 81 of 107   RECEIVED NYSCEF: 03/01/2018

201803010155                                        Index #: 117302-2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ONTARIO

YELLOWSTONE CAPITAL WEST LLC,                Index No.

                                    Plaintiff,    **Plaintiff's Address:**
                                                  30 Broad Street, 14th Floor
          -against-                               New York, New York 10004

DDC GROUP, INC. d/b/a DDC GROUP and           **JUDGMENT BY CONFESSION**
VYACHESLAV V BORISOV,

                                    Defendants.

| | |
|---|---|
| Amount Confessed: | $ 89,700.00 |
| Less Payments Received: | $ 0.00 |
| **Amount Due and Owing:** | **$ 89,700.00** |
| Interest (from February 21, 2018) at 16%: | $ 314.56 |
| Attorney's Fees confessed: | $ 22,425.00 |
| Costs by Statute (CPLR 3218[b]): | $ 15.00 |
| Filing Fee (CPLR 8018[a]): | $ 210.00 |
| Total Costs and Disbursements: | $ 225.00 |
| **Total:** | **$ 112,664.56** |

*[handwritten: Costs taxed @ $225.00 with ... Valerie A ... acting dep clerk]*

STATE OF NEW YORK    )
                     ) ss.:        **ATTORNEY'S AFFIRMATION**
COUNTY OF NEW YORK   )

        The undersigned, an attorney at law of the State of New York, affirms that he is the attorney of record for the plaintiff YELLOWSTONE CAPITAL WEST LLC herein, and states that the disbursements above specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: New York, New York
       March 1, 2018

                              _____
                              Christopher Castro, Esq.
                              17 State Street, Suite 4000
                              New York, New York 10004
                              Tel: (646) 774-3308

FILED: ONTARIO COUNTY CLERK 03/06/2018 04:40 PM
NYSCEF DOC. NO. 5

Copy Printed in Ontario County, NY - County Clerk
Main Document        Page 82 of 107

INDEX #: 117302-2018
RECEIVED NYSCEF: 03/01/2018

Index #: 117302-2018

ON FILING the foregoing Affidavit of Confession of Judgment made by Defendants herein, sworn to on February 15, 2018; and upon the Affidavit in Support of Entry of Judgment, sworn to on March 1, 2018, along with the exhibits thereto;

NOW, ON MOTION OF Christopher Castro, Esq., attorney for Plaintiff YELLOWSTONE CAPITAL WEST LLC, it is

ADJUDGED, that Plaintiff YELLOWSTONE CAPITAL WEST LLC having an address at 30 Broad Street, 14th Floor, New York, New York 10004, have judgment and do recover of Defendant DDC GROUP, INC. d/b/a DDC GROUP, having an address at 350 S Grand Ave, Suite 1670, Los Angeles, California 90071 and Defendant VYACHESLAV V BORISOV, having an address at 705 W 9th Street Suite 2004, Los Angeles, California 90015, jointly and severally, the sum of $89,700.00 plus interest at sixteen percent (16%) as calculated by the Clerk in the amount of $314.56, plus costs and disbursements as taxed by the Clerk in the amount of $225.00, plus attorneys' fees in the amount of $22,425.00 for a total sum of $112,664.56; and that

Plaintiff YELLOWSTONE CAPITAL WEST LLC shall have execution thereof.

_Matthew J. Hoose by_
_Valeria A. McStath dep Dell_
CLERK

Judgment entered the ___1st___ day of ___March___, 2018.

Copy Printed in Ontario County, NY - County Clerk Main Document    Page 83 of 107
201803010155

Index #: 117302-2018

| Index No. | | Year | RJI No. | | Hon. |
|---|---|---|---|---|---|

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ONTARIO

YELLOWSTONE CAPITAL WEST LLC,

                                                Plaintiff,

                        -against-

DDC GROUP, INC. d/b/a DDC GROUP and VYACHESLAV V BORISOV,

                                                Defendants.

## JUDGMENT

### CHRISTOPHER CASTRO, ESQ.
*Attorney for Plaintiff*

*Office and Post Office Address, Telephone*
**17 STATE STREET**
**SUITE 4000**
**NEW YORK, NEW YORK 10004**
**PHONE: (646) 774-3308**
**FAX:    (978) 313-6609**

Service of a copy of the within          is hereby admitted.

Dated,

                                                Attorney(s) for

Please take notice
☐ Notice of Entry
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within name court on
☐ Notice of settlement
that an order          of which the within is a true copy will be presented for
settlement to the HON.          one of the judges
of the within named court, at          on          at
Dated,

                                                Yours, etc.

                                                Attorney(s) for

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ONTARIO

YELLOWSTONE CAPITAL WEST LLC,

    Plaintiff/Judgment Creditor,

-against-

DDC GROUP, INC. D/B/A DDC GROUP AND
VYACHESLAV V BORISOV,

    Defendants/Judgment Debtors.

Index No.: 117302-2018

**AFFIRMATION OF SERVICE
OF JUDGMENT WITH
<u>NOTICE OF ENTRY</u>**

STATE OF NEW YORK   )
                   ) ss.:
COUNTY OF NEW YORK )

    CHRISTOPHER CASTRO, an attorney duly admitted to practice law before the Courts

of the State of New York, being duly sworn, affirms and says:

    I am over the age of 18 and not a party to this action.  On the date below, I served the

attached JUDGMENT WITH NOTICE OF ENTRY upon:

Vyacheslav V Borisov
705 W 9th Street Suite 2004
Los Angeles, California 90015

DDC Group, Inc.
d/b/a DDC Group
350 S Grand Ave, Suite 1670
Los Angeles, California 90071

 by depositing same in a postpaid sealed wrapper properly addressed, in an official depository

under the exclusive custody of the United States Postal Service within the State of New York.

Dated: New York, New York
      March 1, 2018

                                      _____
                                       CHRISTOPHER CASTRO

FILED: ONTARIO COUNTY CLERK 03/06/2018 04:40 PM
INDEX NO. 117302-2018

NYSCEF DOC. Case 2:18-bk-17029-BB   Doc 11   Filed 06/22/18   Entered 06/22/18 20:03:56   Desc 03/06/2018
Main Document      Page 85 of 107

Index No. 117302-2018        Year    RJI No.        Hon.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ONTARIO

YELLOWSTONE CAPITAL WEST LLC,

Plaintiff,

-against-

DDC GROUP, INC. D/B/A DDC GROUP AND VYACHESLAV V BORISOV,

Defendants.

## NOTICE OF ENTRY

### CHRISTOPHER CASTRO, ESQ.
*Attorney for Plaintiff*

*Office and Post Office Address, Telephone*
17 STATE STREET
SUITE 4000
NEW YORK, NEW YORK 10004
TEL:   (646) 774-3308
FAX:   (978) 313-6609

Service of a copy of the within        is hereby admitted.

Dated,

Attorney(s) for

Please take notice
☐ Notice of Entry
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within name court on
☐ Notice of settlement
that an order      of which the within is a true copy will be presented for
settlement to the HON.      one of the judges
of the within named court, at        on      at
Dated,                                          Yours, etc.

Attorney(s) for

# EXHIBIT D



KGS COUNTY CLERK 01/20/2017 04:10 PM

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

RDY HOLDINGS G LLC,

                         Plaintiff,

    -against-

DROP DEVELOPMENT GROUP INC.
DBA DDC AND SLAVA BORISOV,

                       Defendants.

| |
|---|
| Index No.: |
| Date Purchased: |
| **SUMMONS** |
| Plaintiff' address is 1797 Atlantic Avenue New York, NY 11233 |

TO THE ABOVE NAMED DEFENDANTS:

    **YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiff' attorney, at the address stated below, an answer to the attached complaint. If this summons was personally delivered upon you in the State of New York, the answer must be served within twenty days after such service of the summons, excluding the date of service. If the summons was not personally delivered to you within the State of New York, the answer must be served within thirty days after service of the summons is complete as provided by law.

    If you do not serve an answer to the attached complaint within the applicable time limitation stated above, a judgment may be entered against you, by default, for the relief demanded in the complaint, without further notice to you.

    The basis for venue is pursuant to the Contract entered into between the parties.

Dated: New York, New York
       January 20, 2017

                            ZACHTER PLLC

              BY:
                        Jeffrey Zachter
                        30 Wall Street, 8th Floor
                        New York, New York 10005
                        (646) 779-3294

                        **Mail To:**
                        2 University Plaza, Suite 205
                        Hackensack, New Jersey 07601
                        (201) 500-6576

Defendants to be served:

Drop Development Group Inc. dba DDC
705 West 9th Street
Los Angeles, CA 90015

Slava Borisov
705 West 9th Street
Los Angeles, CA 90015

2 of 7

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

RDY HOLDINGS G LLC,

Plaintiff,

-against-

DROP DEVELOPMENT GROUP INC.
DBA DDC AND SLAVA BORISOV,

Defendants.

Index No.

**COMPLAINT**

Plaintiff RDY Holdings G LLC ("Plaintiff"), by its attorneys, Zachter PLLC, for its complaint herein against Drop Development Group Inc dba DDC ("Company Defendant"), and Slava Borisov ("Guarantor") (Company Defendant and Guarantor collectively "Defendants"), alleges as follows:

### The Parties

1.     At all relevant times, Plaintiff was and is a Limited Liability Company organized and existing under the laws of the State of New York.

2.     Upon information and belief, at all relevant times, Company Defendant was and is a company organized and existing under the laws of the State of CA.

3.     Upon information and belief, at all relevant times, Guarantor was and is an individual residing in the State of CA.

### The Facts

4.     On or about October 19, 2016, Plaintiff and Defendants entered into an agreement (the "Agreement") whereby Plaintiff agreed to purchase all rights to Company Defendant's future receivables having an agreed upon value of $42,000.00.

5.     Pursuant to the Agreement, Company Defendant agreed to have one bank account approved by Plaintiff (the "Bank Account") from which Company Defendant

authorized Plaintiff to make daily ACH withdrawals until $42,000.00 was fully paid to Plaintiff.

6.    In addition, Guarantor agreed to guarantee any and all amounts owed to Plaintiff from Company Defendant upon a breach in performance by Company Defendant.

7.    Plaintiff remitted the purchase price for the future receivables to Company Defendant as agreed. Initially, Company Defendant met its obligations under the Agreement.

8.    Company Defendant stopped making its payments to Plaintiff and otherwise breached the Agreements by intentionally impeding and preventing Plaintiff from making the agreed upon ACH withdrawals from the Bank Account while conducting regular business operations.

9.    Company Defendant made payments totaling $8,400.00, leaving a balance of $33,600.00.

10.    Despite due demand, Company Defendant has failed to pay the amounts due and owing by Company Defendant to Plaintiff under the Agreement.

11.    Additionally, Guarantor is responsible for all amounts incurred as a result of any default of the Company Defendant.

12.    There remains a balance due and owing to Plaintiff on the Agreement in the amount of $33,600.00, plus interest, costs, disbursements and attorney's fees.

4 of 7

# EXHIBIT E

| Use of Cash | June 21- July 6 |
|---|---|
| Wages Payroll | $30,000.00 |
| Health Benefits COVERED CA | $5,900.00 |
| **Subtotal** | **$35,900.00** |
| **Office Expenses** | |
| Office lease  350 | $10,725.27 |
| Worker Compensation | $1,908.33 |
| RMO Agency | $1,018.00 |
| Professtional Services ACCT - UNCHAINED | $5,500.00 |
| Parking and Metro Cards | $360.00 |
| GL Insurance | $2,150.00 |
| Food | $654.00 |
| Gas | $200.00 |
| Car | $1,280.00 |
| Insurnace Car FARMERS | $547.00 |
| Electric | $370.00 |
| Telephone AT &T | $1,320.00 |
| Phones UNIVOIP | $1,920.00 |
| Benefits Mall Payroll Services | $150.00 |
| HCC BOND PAYMENTS | $540.00 |
| Marlin Printer | $115.00 |
| Internet access | $875.00 |
| Office supplies | $690.00 |
| GO DADDY EMAILS | $490.00 |
| Drop Box | $390.00 |
| Taxes (City, State, Payroll and Fed) | $12,540.00 |
| **Subtotal** | **$43,742.60** |
| **Marketing Costs** | |
| Web site hosting | $250.00 |
| Mcgraw CMD marketing | $450.00 |
| Web site updates | $100.00 |
| Collateral preparation | $650.00 |
| Collateral printing | $200.00 |
| **Subtotal** | **$1,650.00** |
| **Sales** | |
| Draws Sales for 1099 Contractors | $2,000.00 |
| Training-related travel costs | $450.00 |
| **Subtotal** | **$2,450.00** |
| **Monthly Actual Expenses** | **$83,742.60** |

# EXHIBIT F

**DDC** GROUP INC

| Average Contract | $ 265,480 | $ 321,631 | $ 321,631 | $ 321,631 | |
|---|---|---|---|---|---|
| **PROJECTS** | **3** | **3** | **3** | **9** | |

| Revenue Income | | | | | |
|---|---|---|---|---|---|
| **Revenue (Sales)** | **Jul** | **Aug** | **Sep** | **Total** | |
| Revenue | $ 796,440 | $ 964,893 | $ 964,893 | $2,726,226 | 100.00% |
| **Total Contract Earned** | **796,440** | **964,893** | **964,893** | **2,726,226** | |

| Cost of Revenues | | | | | |
|---|---|---|---|---|---|
| Materials Costs | 23,893 | 28,947 | 28,947 | 81,787 | 3.00% |
| Equipment Costs | 9,956 | 12,061 | 12,061 | 34,078 | 1.25% |
| Subcontract Costs | 597,330 | 723,670 | 723,670 | 2,044,670 | 75.00% |
| **Cost of Revenues** | **631,179** | **764,678** | **764,678** | **2,160,534** | **79.25%** |
| **Gross Profit** | **$165,261** | **$200,215** | **$200,215** | **$565,692** | **20.75%** |
| Opearting Expenses | | | | | |
| Wages | $48,000.00 | $48,000.00 | $48,000.00 | $144,000.00 | 5.28% |
| Benefits COVERED CA | $4,900.00 | $4,900.00 | $4,900.00 | $14,700.00 | 0.54% |
| Office lease  350 | $9,465.29 | $9,465.29 | $9,465.29 | $28,395.87 | 1.04% |
| Worker Compensation | $1,908.33 | $1,908.33 | $1,908.33 | $5,725.00 | 0.21% |
| Licensing Fees | $1,380.00 | $1,380.00 | $1,380.00 | $4,140.00 | 0.15% |
| Professtional Services accouting | $5,500.00 | $5,500.00 | $5,500.00 | $16,500.00 | 0.61% |
| Parking and Metro Cards | $360.00 | $360.00 | $360.00 | $1,080.00 | 0.04% |
| GL Insurance | $2,150.00 | $2,150.00 | $2,150.00 | $6,450.00 | 0.24% |
| Entertainment | $500.00 | $500.00 | $500.00 | $1,500.00 | 0.06% |
| Food | $654.00 | $654.00 | $654.00 | $1,962.00 | 0.07% |
| Gas | $400.00 | $400.00 | $400.00 | $1,200.00 | 0.04% |
| Car | $1,380.00 | $1,380.00 | $1,380.00 | $4,140.00 | 0.15% |
| Insurnace Vehicle | $647.00 | $547.00 | $547.00 | $1,741.00 | 0.06% |
| Electric | $370.00 | $370.00 | $370.00 | $1,110.00 | 0.04% |
| Water | $120.00 | $120.00 | $120.00 | $360.00 | 0.01% |
| Telephone AT &T | $1,120.00 | $1,120.00 | $1,120.00 | $3,360.00 | 0.12% |
| Phones | $1,920.00 | $1,920.00 | $1,920.00 | $5,760.00 | 0.21% |
| Payroll Services | $350.00 | $350.00 | $350.00 | $1,050.00 | 0.04% |
| Bond Payments | $540.00 | $540.00 | $540.00 | $1,620.00 | 0.06% |
| Office supplies Printer | $215.00 | $115.00 | $115.00 | $445.00 | 0.02% |
| Internet access | $875.00 | $875.00 | $875.00 | $2,625.00 | 0.10% |
| Office supplies | $690.00 | $690.00 | $690.00 | $2,070.00 | 0.08% |
| Email hosting | $490.00 | $490.00 | $490.00 | $1,470.00 | 0.05% |
| Drop Box | $390.00 | $390.00 | $390.00 | $1,170.00 | 0.04% |
| Taxes (City, State, Payroll and Fed) | $22,311.00 | $22,311.00 | $22,311.00 | $66,933.00 | 2.46% |
| Web site hosting | $250.00 | $250.00 | $250.00 | $750.00 | 0.03% |
| Sales | $450.00 | $450.00 | $450.00 | $1,350.00 | 0.05% |
| Web site updates | $100.00 | $100.00 | $100.00 | $300.00 | 0.01% |
| Collateral preparation | $650.00 | $650.00 | $650.00 | $1,950.00 | 0.07% |
| Collateral printing | $200.00 | $200.00 | $200.00 | $600.00 | 0.02% |
| Sales Commissions | $8,000.00 | $8,000.00 | $8,000.00 | $24,000.00 | 0.88% |
| Total Expenses | $116,285.62 | $116,085.62 | $116,085.62 | $348,456.87 | 12.78% |
| Net Profit | $48,975.68 | $84,129.67 | $84,129.67 | $217,235.03 | 8% |

# EXHIBIT G

DBL GROUP, INC
Aged Receivables

| Year | % Completed | Customer | Invoice/CM # | DUE NOW | 15 - 30 days | 30-60 days | Over 90 days | Contract Value | Bad Debit |
|---|---|---|---|---|---|---|---|---|---|
| 2017 | 100% | Las Vegas - Untuckit | | $ 38,494.00 | | | | $ 192,494.97 | $ 38,494.00 |
| 2017 | 100% | Palo Alto- Papyrus | | $ 16,777.09 | | | | $ 83,885.46 | $ 16,777.09 |
| 2017 | 100% | Woodland Hillsv- New Start Organics | | $ 25,000.00 | | | | $ 315,000.00 | |
| 2017 | 100% | Hanes NC- Charlys | | $ 53,848.00 | | | | $ 156,515.00 | $ 53,848.00 |
| 2017 | 100% | Santa Cruz - Habit Burger | | | | | | $ 406,402.76 | $ 162,560.28 |
| 2017 | 0% | Lodi- Jack n Box | | | | | | $ 265,000.00 | $ 265,000.00 |
| 2017 | 0% | Palmdale - Wendys | | | | | | $ 1,070,604.00 | $ 1,070,604.00 |
| 2017 | 100% | Concord - MOD | | $ 12,102.31 | | | | $ 402,723.65 | $ 12,102.31 |
| 2017 | 100% | Castro Valley- MOD | | $ 23,876.67 | | | | $ 400,723.66 | $ 23,876.67 |
| 2017 | 100% | Pittsburgh - MOD | | $ 23,582.27 | | | | $ 401,244.00 | $ 23,582.27 |
| 2017 | 100% | Sacramento - Bugerim | | $ 109,065.00 | | | | $ 197,565.00 | $ 109,065.00 |
| 2017 | 100% | Modesto - Jack n Box | LEGAL | $ 295,450.0 | | | | $ 295,450.00 | $ 295,450.00 |
| 2017 | 100% | Century City - Papyrus | LEGAL | $ 87,915.00 | | | | $237,955 | $ 87,915.00 |
| 2017 | 100% | Century City - Spice Affair | LEGAL | $118,967.70 | | | | $ 260,000.00 | $ 118,967.70 |
| 2017 | 100% | Santa Rosa Swarvoski | LEGAL | $ 16,000.00 | | | | $ 116,000.00 | $ 16,000.00 |
| 2017 | 100% | Santa Clara- Koja | LEGAL | $ 194,562.17 | | | | $ 400,000.00 | $ 194,562.17 |
| 2017 | 100% | Lake Forest - Arby's | Mechanics Lien | $ 58,442.15 | | | | $ 126,493.00 | $ 58,442.15 |
| 2017 | 40% | Santa Clara - Asian Box | | | | | | $ 286,564.29 | $ 133,382.18 |
| 2017 | 100% | Oak Harbor WA  - Arby's | Mechanics Lien | $ 73,947.90 | | | | $ 246,493.00 | $ 73,947.90 |
| 2017 | 80% | HUNINGTON BEACH - Arby's | Mechanics Lien | | $ 128,400.00 | | | $ 429,354.00 | $ 128,400.00 |
| 2017 | | Change Orders 1-10 | Mechanics Lien | $ 100,083.00 | | | | | $ 100,083.00 |
| 2017 | 100% | Kieser OR- Arby's | Mechanics Lien | $ 64,210.37 | $ 32,105.20 | | | $ 321,051.87 | $ 64,210.37 |
| 2017 | 100% | Stonestown/Hillsdale - Swarvoski | LEGAL | $ 102,885.00 | | | | $ 250,000.00 | $ 102,885.00 |
| 2018 | 50% | Milpitas - Popeyes | in progress | $ 75,000.00 | $ 75,000.00 | $ 25,000.00 | | $ 250,000.00 | |
| 2018 | 100% | Stonestown - Miniso | completed | | $ 96,783.80 | | | $ 403,044.00 | |
| 2018 | 70% | Palm Desert - Miniso | in progress | $ 70,588.21 | $ 37,367.20 | $ 37,367.20 | | $ 186,836.00 | |
| 2017 | 100% | Burger King- Fresno | Mechanics Lien | $ 19,500.00 | | | | $ 289,399.00 | $ 19,500.00 |
| 2018 | 50% | Carlsbad - Travel Traders | in progress | | $ 92,655.60 | $ 23,163.90 | | $ 231,639.01 | |
| 2018 | 100% | San Gabriel | | | | | | $ 65,755.00 | |
| 2018 | 50% | Jamaba Juice - Riverbank | In progress | $ 59,340.00 | $ 59,340.00 | $ 19,780.00 | | $ 197,800.00 | |
| 2018 | 100% | Menchies | | $ 33,466.33 | | | | $ 195,423.33 | |

Total

$ 1,673,103   $ 521,652   $ 105,311   $ -          $ 8,681,416.00   $ 1,393,745.47

$ 2,300,066   Total A/Rs

# EXHIBIT H

4:28 PM

**DDC Group Inc - updated**

06/19/18

**Balance Sheet**

Accrual Basis

As of December 31, 2017

|  | Dec 31, 17 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| **BOA CK#6432** | 100.00 |
| **BOA CK#8482** | -76.33 |
| **Chase CK#5938** | 62,238.45 |
| **Chase CK#6815** | 65,680.43 |
| **Chase SV#8761** | 45.42 |
| **Total Checking/Savings** | 127,987.97 |
| **Accounts Receivable** | |
| **Accounts Receivable** | |
| **Unassigned Deposits** | -810,684.17 |
| **Accounts Receivable - Other** | 1,773,740.26 |
| **Total Accounts Receivable** | 963,056.09 |
| **Total Accounts Receivable** | 963,056.09 |
| **Total Current Assets** | 1,091,044.06 |
| **Fixed Assets** | |
| **Furniture & Fixtures** | 10,000.00 |
| **Leasehold Improvements** | 5,000.00 |
| **Office Equipment** | 63,937.08 |
| **Total Fixed Assets** | 78,937.08 |
| **TOTAL ASSETS** | 1,169,981.14 |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| **Accounts Payable** | 934,137.22 |
| **Total Accounts Payable** | 934,137.22 |
| **Credit Cards** | |
| **BOA Corp Account - 3063** | |
| **BOA CC#4321** | 14,574.79 |
| **BOA CC#9703** | 4,570.08 |
| **BOA Corp Account - 3063 - Other** | -200.00 |
| **Total BOA Corp Account - 3063** | 18,944.87 |
| **Chase CC#5131** | 63,872.39 |
| **Total Credit Cards** | 82,817.26 |
| **Other Current Liabilities** | |
| **Accrued Expenses** | 22,000.00 |
| **Current Portion Long-Term Debt** | 8,041.32 |
| **EDD Payable** | 26,642.61 |
| **IRS Payable** | 63,345.58 |
| **Payroll Liabilities** | 68,105.91 |
| **Total Other Current Liabilities** | 188,135.42 |
| **Total Current Liabilities** | 1,205,089.90 |

4:28 PM
06/19/18
Accrual Basis

# DDC Group Inc - updated
## Balance Sheet
### As of December 31, 2017

|  | Dec 31, 17 |
|---|---|
| **Long Term Liabilities** | |
| Due to/from DTLA Way | -700.00 |
| Kabbage Inc | -2,624.22 |
| KNIGHT CAPITAL | 105,000.00 |
| Loan Payable - Mercedes-Benz | -5,479.83 |
| MB of Valencia - Car Note | 40,206.60 |
| Prepaid Interest on Car Note | -23,106.39 |
| Promissory Note - Shareholder | -68,005.10 |
| With BeHalf LLC | -54,525.13 |
| **Total Long Term Liabilities** | -9,234.07 |
| **Total Liabilities** | 1,195,855.83 |
| **Equity** | |
| Capital Stock | 15,000.00 |
| Opening Balance Equity | 26,700.00 |
| Retained Earnings | -107,141.53 |
| Shareholder Distributions | -67,736.54 |
| Net Income | 107,303.38 |
| **Total Equity** | -25,874.69 |
| **TOTAL LIABILITIES & EQUITY** | 1,169,981.14 |

4:25 PM

06/19/18

Accrual Basis

# DDC Group Inc - updated
## Profit & Loss
### January through December 2017

| | Jan - Dec 17 |
|---|---:|
| **Ordinary Income/Expense** | |
| **Income** | |
| Construction Income | 7,454,671.90 |
| **Total Income** | 7,454,671.90 |
| | |
| **Cost of Goods Sold** | |
| Bond Expense | 4,272.10 |
| Construction Materials Costs | 298,223.12 |
| Equipment Rental for Jobs | 2,499.58 |
| Other Construction Costs | 15,141.04 |
| Permits & Similar | 10,238.62 |
| Sales / Commissions | 63,900.31 |
| Subcontractors Expense | 2,409,707.87 |
| **Total COGS** | 2,803,982.64 |
| **Gross Profit** | 4,650,689.26 |
| | |
| **Expense** | |
| Advertising & Marketing | 19,957.60 |
| Auto Expense | 10,707.80 |
| Bank Service Charges | 5,136.15 |
| Charitable Contribution | 3,485.00 |
| Computer Expenses | 7,621.44 |
| Dues & Subscriptions | 12,508.64 |
| Freight & Delivery | 1,575.62 |
| Insurance Expense | 46,823.95 |
| Interest Expense | 4,539.77 |
| Lease Exp - Mercedes | 7,768.78 |
| Legal Expense | 19,778.98 |
| Meals & Entertainment | 20,409.04 |
| Office Expense | 18,498.31 |
| Payroll Expenses | 594,833.46 |
| Payroll Processing Fees | 3,047.82 |
| Payroll Tax Expense | 128,821.83 |
| Penalties | 36,999.90 |
| Professional Fees | 125,183.11 |
| Reimbursable Expenses | 63,187.71 |
| Rent Expense | 112,203.41 |
| Repairs and Maintenance | 2,180.32 |
| Security Expense | 4,742.09 |
| Taxes & Licenses | 8,072.62 |
| Telephone Expense | 16,948.25 |
| Tools and Small Equipment | 2,514.45 |
| Transportation Expense | 6,016.94 |
| Travel Expense | 82,501.32 |
| Uncollectible Receivables | 3,169,655.09 |
| Utilities | 7,866.48 |
| **Total Expense** | 4,543,585.88 |
| **Net Ordinary Income** | 107,103.38 |
| | |
| **Other Income/Expense** | |
| **Other Income** | |
| Promo Statement Credit | 200.00 |
| **Total Other Income** | 200.00 |
| | |
| **Other Expense** | |
| Ask My Accountant | 0.00 |
| **Total Other Expense** | 0.00 |
| **Net Other Income** | 200.00 |
| **Net Income** | 107,303.38 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **15233 Ventura Blvd., Suite 250, Sherman Oaks, CA 91403.**

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR AUTHORITY TO USE CASH COLLATERAL OF ALLEGED SECURED CREDITORS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SLAVA BORISOV IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

## I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING

**("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **6/22/2018** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- **Jagdeep Hansra**    jh@ej-law.com, hansralawecf@gmail.com
- **M Jonathan Hayes**    jhayes@srhlawfirm.com,
   roksana@srhlawfirm.com;matthew@srhlawfirm.com;rosarioz@srhlawfirm.com;jfisher@srhlawfirm.com;maria@srhlawfirm.com;jhayesecf@gmail.com
- **Brian D Huben**    hubenb@ballardspahr.com, carolod@ballardspahr.com
- **Kenneth G Lau**    kenneth.g.lau@usdoj.gov
- **Lovee D Sarenas**    lovee.sarenas@lewisbrisbois.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Larry D Webb**    Webblaw@gmail.com,
   larry@webblaw.onmicrosoft.com;r51666@notify.bestcase.com

## II. SERVED BY U.S. MAIL:

On **6/22/2018** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

### *SECURED CREDITOR SERVED VIA CERTIFIED MAIL:*

*RDY HOLDINGS LLC*

**Entity Address from Schedules:**

RDY Holdings LLC
1797 Atlantic Avenue
Brooklyn, NY 11233

**Entity Address from POC:**

None.

**Entity Main Address from California Secretary of State Website:**

None.

**Entity's Agent for Service of Process per California Secretary of State Website:**

None.

**Entity Main Address from its Website:**

None.

**Entity Officer Name and Address from its Website:**

None.

**Entity Main Address from FDIC Website:**

None.

**Entity's Attorney and Address:**

**Jeffrey Zachter**
*Attorney for RDY Holdings, LLC*
**2 University Plaza, Suite 205**
**Hackensack, New Jersey 07601**

*YES LENDER LLC*

**Entity Address from Schedules:**

Yes Lender
1150 First Ave., Suite 105
King of Prussia, PA 19406

**Entity Address from POC:**

None.

**Entity Main Address from California Secretary of State Website:**

None.

**Entity's Agent for Service of Process per California Secretary of State Website:**

None.

**Entity Main Address from its Website:**

Yes Lender
1150 1st Avenue
Suite 105
King of Prussia, PA 19406

**Entity Officer Name and Address from its Website:**

Bret Dunlap, CEO

Yes Lender
1150 1st Avenue
Suite 105
King of Prussia, PA 19406

**Entity Main Address from FDIC Website:**

None.

*YELLOWSTONE CAPITAL WEST LLC*

**Entity Address from Schedules:**

YellowStone Capital
17 State Street, Suite 4000
New York, NY 10004

**Entity Address from POC:**

None.

**Entity Main Address from California Secretary of State Website:**

None.

**Entity's Agent for Service of Process per California Secretary of State Website:**

None.

**Entity Main Address from its Website:**

YellowStone Capital
1 Evertrust Plaza
14th Floor Jersey City,
New Jersey, 07302

**Entity Officer Name and Address from its Website:**

*Isaac D. Stern, CEO*
YellowStone Capital
1 Evertrust Plaza
14th Floor Jersey City,
New Jersey, 07302

**Entity Main Address from FDIC Website:**

**None.**

**Entity Attorney and Address:**

**CHRISTOPHER CASTRO, ESQ.**
*Attorney for Yellowstone Capital West, LLC*
17 STATE STREET
SUITE 4000

NEW YORK, NEW YORK 10004

**Other Entity Address:**

**YELLOWSTONE CAPITAL WEST, LLC**
30 Broad Street, 14thFloor, Suite 1462
New York, New York 10004

*GTR SOURCE, LLC*

**Entity Address from Schedules:**

GTR
111 John Street
Suite 1210
New York, NY 10038

**Entity Address from POC:**

None.

**Entity Main Address from California Secretary of State Website:**

None.

**Entity's Agent for Service of Process per California Secretary of State Website:**

None.

**Entity Main Address from its Website:**

None.

**Entity Officer Name and Address from its Website:**

None.

**Entity Main Address from FDIC Website:**

None.

**Entity Attorney and Address:**

**Marcella G. Rabinovich, Esq.**
*Attorney for GTR Source, LLC*
111 John Street, Suite 1210
New York, New York 10038

**Other Entity Address:**

**GTR Source, LLC**
**Attn:  Tzvi Reich**
111 John Street, Suite 1210
New York, New York 10038

*RICHMOND CAPITAL GROUP, LLC*

**Entity Address from Schedules:**

Richmond Capital
125 Maiden Lane,  Ste. 501
New York, NY 10038

**Entity Address from POC:**

None.

**Entity Main Address from California Secretary of State Website:**

Richmond Capital Group, LLC
15750 ARROYO DR #188
MOORPARK CA 93021

**Entity's Agent for Service of Process per California Secretary of State Website:**

**John R. Ratkay**
*Agent for Service of Process*
Richmond Capital Group, LLC
15750 ARROYO DR #188
MOORPARK CA 93021

**Entity Main Address from its Website:**

Richmond Capital Group, LLC
125 Maiden Lane Ste.501
New York, NY 10038

**Entity Officer Name and Address from its Website:**

**John R. Ratkay, CEO**
Richmond Capital Group, LLC
15750 ARROYO DR #188
MOORPARK CA 93021

**Entity Main Address from FDIC Website:**

None.

**Entity Attorney and Address:**

**Marcella G. Rabinovich, Esq.**
*Attorney for Richmond Capital Group, Inc.*
111 John Street, Suite 1210
New York, New York 10038

**Other Entity Address:**

**John Braun**
**Senior Funding Manager**
**Richmond Capital Group, LLC**

125 Maiden Lane Ste. 501
New York, NY 10038

**Richmond Capital Group, LLC**
111 John Street, Suite 1210
New York, New York 10038

*TWENTY LARGEST UNSECURED CREDITORS/PARTIES
SERVED REGULAR FIRST CLASS MAIL:*

Hon. Sheri Bluebond
U.S. Bankruptcy Court
255 E. Temple Street, Suite 1534
Los Angeles, CA 90012

DDC Group, Inc.
350 South Grand Ave., Suite 1670
Los Angeles, CA 90071

ADP Altus Global Trade Solutions
6800 Broken Sound Parkway
Boca Raton, FL 33487

Associated Plumbing
90 Leavesley Road
Gilroy, CA 95020

Bracelin Company
2308 Bates Ave., Suite A
Concord, CA 94520

Chase Ink
Cardmember Services
P.O. Box 6294
Carol Stream, IL 60197-6294

Delerio Construction LLC
4957 E LANSING WAY
Fresno, CA 93727

EDD Assesment
10330 Poiner Blvd Suite 150
Santa Fe Springs, CA 94583

Farley Construction & Development
87 Adelfa Street
Rancho Mission Viejo, CA 92694

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

JMS Air Conditioning & Heating Serv
c/o Stanley Kimmel, Esq.

10727 White Oak Ave., Ste. 202
Granada Hills, CA 91344

Lynch Electric
1160 Industrial Road # 18
San Carlos, CA 94070

Matrix HG Inc.
2355 Whitman Road
Concord, CA 94518

PIRES ELECTRIC
24 MONTALBAN DR
FREMONT, CA 94536

Progress Glass Co., Inc.
25 Patterson St.
San Francisco, CA 94124

Promax
c/o Nick M. Campbell, Esq.
Builders Law Group, Inc.
9767 Via Roma
Burbank, CA 91504

Quality Production Services
c/o Armenak Kavcioglu, Esq.
16055 Ventura Blvd., Ste. 1200
Encino, CA 91436

Scholten Roofing, Inc
7157 Guide Merdian #1
Lynden, WA 98264

Schurman Fine Papers

| 1 | c/o Daniel Hershman, Esq. |
| | Fisher Broyles | Set in Stone Tile Co. |
| 2 | 2110 Artesia Blvd., Suite 606 | 4910 Wellington Park Drive |
| | Redondo Beach, CA 90278 | San Jose, CA 95136 |

**III. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served):
Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **6/22/2018** I served the following person(s) and/or entity(ies) by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **6/22/2018** | **Ja'Nita Fisher** | **/s/ Ja'Nita Fisher** |
| Date | Type Name | Signature |