M. Jonathan Hayes (Bar No. 90388)
Matthew D. Resnik (Bar No. 182562)
Roksana D. Moradi-Brovia (Bar No. 266572)
**RESNIK HAYES MORADI LLP**
17609 Ventura Blvd., Suite 314
**Telephone:** (818) 285-0100
**Facsimile:** (818) 855-7013
jhayes@RHMFirm.com
matthew@RHMFirm.com
roksana@RHMFirm.com

*Attorneys for Debtor*
DDC Group, Inc.

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>DDC GROUP, INC.,<br><br>Debtor. | Case No. 2:18-bk-17029-BB<br><br>Chapter 11<br><br>**DEBTOR'S STATUS REPORT; DECLARATION OF SLAVA BORISOV IN SUPPORT THEREOF**<br><br>Date: August 8, 2018<br>Time: 10:00 a.m.<br>Place: Courtroom 1539<br>     255 E. Temple Street,<br>     Los Angeles, CA 90012 |

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE; THE UNITED STATES TRUSTEE AND COUNSEL OF RECORD; AND ALL CREDITORS AND PARTIES IN INTEREST:**

DDC Group, Inc. (the "Debtor"), Debtor in the above-referenced Chapter 11 case, filed its chapter 11 petition on June 18, 2018. Debtor is operating its business and managing its financial affairs as a Debtor-in-Possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

**RESNIK HAYES MORADI LLP**

Per the Order of this Court (Docket No. 5), Debtor hereby submits its Preliminary Status Report, as follows:

**1.    A brief description of Debtor's business and the principal assets and liabilities of the estate; brief description of the events that led up to and caused the filing of this case:**

The Debtor is a California corporation which owns and operates a commercial construction business which focuses on remodeling of retail spaces and restaurants. The Debtor has a general contractor license in California, Oregon and Washington State.

DDC Group Inc. began in 2014 as Your Construction Experts.  The current owners of DDC Group, Inc. purchased Your Construction Experts in 2015 and the name changed to Drop Development Construction, Inc.  The name was shortened to DDC Group, Inc. in 2016.  The company grew from two employees (the owners) and the Responsible Managing Officer, to one with about 25 employees in early 2018.  The rapid growth proved to be both a blessing and a curse.  Currently, the Debtor has roughly 15 employees.

The corporation is owned 70% by Vyacheslav "Slava" Borisov, the Chief Executive Officer, and 30% by Daniil Borisov, the Chief Operations Officer.  The Responsible Managing Employee ("RME") is Martin Duffield.  The Debtor had a Chief Financial Officer, Brian Rhoden, until recently when he left the company. The Debtor has a Chief Legal Officer, hired in June 2017, who handles litigation in-house, and manages corporate legal issues and drafts contracts used in the construction projects.  Bringing legal in house has helped the Debtor to reduce legal costs, and allowed it to access legal advice more readily and on more issues than it could when legal assistance was via outside firms.

**The nature of the debtor's business.**

The Debtor's specialty is remodeling retail and restaurant locations for franchisees. Locations include stores in malls, free-standing stores and stores in hotels. For example, the Debtor has built-out or refurbished stores for Jamba Juice, Jack in the Box, Burger King, Menchies, Travel Traders, and Popeyes.  Prior to the filing date, most projects

**DEBTOR'S STATUS REPORT**

involved 2,000 to 3,000 square feet and are in the $150,000 to $350,000 range. Current projects are larger and the contract values are higher. Subcontractors and suppliers are used extensively to do the actual work and are overseen by one of the Debtor's project managers. In early 2018, DDC Group, Inc. had projects in Washington, Oregon and California, and ran multiple sites for multiple clients.

In July, the Debtor is scheduled to commence three projects. It is negotiating contract terms on other projects, and has bids submitted on several more projects.

**The major events or circumstances that led to the filing.**

While in many businesses, repeat business or multiple jobs from the same client would be ideal, in short term construction projects, such is not always the case. Because the jobs are completed in such a short time, when disputes arise between the franchisee and the Debtor, the franchisee often gets behind on the progress payments and then refuses to pay the balance owing which then requires the debtor to file a mechanic's lien and commence litigation. . If that same client has multiple projects at the same time, the client often refuses to pay for work on several projects because it is upset as to the progress of one project despite each being subject to their own contract, and often are held in the name of individual LLC's.

When there is a payment issue on one project, the Debtor cannot simply stop work on all projects for the same parent company as the rules regarding contractors does not permit such to occur. Further, by the time the parties realize the dispute cannot be easily resolved, the work is largely completed, in fact, often fully completed. . In those cases, the Debtor receives only the 20-30% deposit and must litigate to get the rest. In one recent instance where this situation occurred, the owner of the restaurant paid the down payment, has been open for business in the remodeled store since October 2017, and has refused to pay beyond the down payment on the project. The lawsuit pending in San Diego County Superior Court seeks over $250,000. This is but one example, but there are multiple

**RESNIK HAYES MORADI LLP**

**DEBTOR'S STATUS REPORT**

**3**

projects where such has occurred, or where the owner, at the end of the project, chose to take discounts and exhibited a "sue me for the rest" attitude.

The default rate was such that the Debtor began borrowing money from short-term "hard money" lenders, at least on five separate occasions in the past six to eight months. The lenders are all New York entities. The loan documentation purports to provide that the lender is "buying" some percentage of existing but unidentified accounts receivable at a huge and also unidentified interest rate. The documentation also provides for a blanket lien on all assets of the Debtor. Upon the most basic default of the loan terms, the lender in at least four cases immediately filed suit in New York and used a Confession of Judgment to obtain a New York judgment literally overnight, without review of the documents by a judge or notice to the Debtor that a judgment was being sought. The Debtor learned of the judgments when the bank accounts were frozen.

When copies of the paperwork used to obtain the judgments were obtained and reviewed, it was learned that the affidavits submitted in New York to obtain the judgments include false statements, and the judgments include huge attorney fee claims even though the forms were submitted to the clerk, no court appearances had been required, and the loans had funded only weeks prior to the judgments being obtained. The difference between the judgment and the amount actually lent is substantial, often double, or nearly double, the initial loan amount. Based on the judgment, at least three of the lenders began levying the Debtor's bank accounts by serving the levy on a local branch in New York. Those banks froze all accounts of the Debtor because each account did not have twice the amount of the judgment, but the combined amount of the accounts far exceeded the amounts of the judgment. After only two or three of these levies, the Debtor got behind on payment of suppliers and sub-contractors which caused its customers to withhold payments even more.

The Debtor responded by suing customers who refused to pay. Customers responded by suing the Debtor. Some subcontractors sued for payment. On the petition date, the Debtor was engaged in at least 12 superior court actions. The Debtor finally

**DEBTOR'S STATUS REPORT**

**RESNIK
HAYES
MORADI LLP**

**4**

decided it needed the breathing space provided by the Bankruptcy Code and filed the within chapter 11.

**What are the principal business, financial and legal disputes or problems to be resolved; when does the Debtor anticipate resolving them; what is the best method to resolve those disputes or problems expeditiously and cost-effectively.**

Debtor does not anticipate any major issues with this bankruptcy. Its goal, within the context of a Chapter 11 plan of reorganization is to create the breathing space needed to focus on obtaining new projects to create income to continue in business, and to create a realistic payment plan for creditors. Prior to filing the petition, the Debtor tried to create payment plans with subcontractors and most refused to cooperate. It was being inundated with calls, emails, and discovery in litigation. Quite simply, it was impossible to focus on obtaining new business with the above occurring on a daily basis.

Since filing the Chapter 11 petition, the Debtor has focused on larger projects, with most local to reduce travel costs. Overhead has been reduced by not replacing employees who have moved out of the area. Having the breathing room has allowed the Debtor the time to negotiate and execute three new contracts which total over $2 million in project value. About 80% of each progress payment pays for subcontractor and material costs. Another 15% is applied to site costs and overhead. On average, 5% of the project price is profit, if the project is completed on time and the client pays in full.

In addition to confirming a payment plan for the creditors in the unsecured creditor pool, the issue of whether the creditors claiming secured creditor status are actually secured creditors. The Debtor is analyzing the most effective method for resolving this issue.

Since the petition date, some owners sued for nonpayment have proposed settlements. The Debtor has sought approval of one settlement, with Travel Traders Hotel, which was approved on September 19, 2018. The Debtor expects to enter into other settlements as well. This resolves issues with some in the creditor pool as the owners are

paying subcontractors who recorded liens on the projects, and in some instances, the owner is paying money to the Debtor which provides further income available to cover payments when a plan is approved.

While there was over $1.6 million in aged receivables on the petition date which could be the subject of litigation, the Debtor is focusing on recovering receivables which are the subject of a current mechanic's lien, are the subject of pending litigation and where the project is completed and the client is open for business. These receivables where the Debtor is actively seeking to recover, using mechanic's liens and litigation as needed, total over $650,000.

### A. *Pending Contracts on the Petition Date.*

The Debtor had six construction contracts that it was in the process of completing on the petition date. Some of these contracts cannot be completed without incurring further losses to the Debtor. The Debtor has communicated with those customers and each has agreed to move forward with its project using a different general contractor. It is unlikely that those project owners will pay the Debtor any sum due on the project as of the date notice was given without judicial intervention. The Debtor is completing the remaining projects and they should be completed by the end of July at the latest. There is little overlap between prepetition and postpetition projects. .

### B. *Pending Litigation*

As is stated above, on the petition date the Debtor was a party to at least 12 pending lawsuits. Two have been resolved. The Debtor is the plaintiff or cross-complainant in several of those pending primarily in Los Angeles Superior Court. Where the Debtor is plaintiff, the case was filed in an attempt to collect what is owed from past projects and often an attempt to foreclose on related mechanics liens.

When the Debtor is the defendant, the Debtor is being sued for alleged breaches of past contracts. In some of those lawsuits, the Debtor has a cross-complaint seeking sums

**DEBTOR'S STATUS REPORT**

owed. These claims will be more in line of a set-off on the plaintiff's claim, then a positive receipt of income on the claim. These cases have been stayed. In some cases, the claims alleged have some true assertions and the Debtor will likely not object to the appropriate proofs of claims once filed. There are cross-overs on some of the claims of the owners, however, in that they are asserting they are having to pay subcontractors who performed work on their projects, and the subcontractors are also in the creditor pool. For some of the other plaintiffs, the Debtor may object to the proofs of claim.

### C. *Issues with Alleged Secured Creditors*

The Debtor has five creditors (the "Alleged Secured Creditor") who may or may not have blanket liens on the Debtor's property, or on the Debtor's cash collateral. As is stated above, these are short term "hard money-type" "agreements" made with entities in New York (one in Pennsylvania). The agreements are characterized by the lenders as "purchase agreements" wherein the lender "purchased" "daily deposits" that the Debtor expected to make in the future. The Debtor does not have all the paperwork for the loans other "Judgments" entered in New York (and one in Pennsylvania) apparently pursuant to Confessions of Judgment executed by the Debtor. A search of UCC-1 filings lead to the identification of the creditors even though they all apparently insist they are not creditors. Each of the judgments are for far more that the Debtor "borrowed" with no explanation of where the judgment amount came from.

The Debtor intends to file a Complaint to Determine the Nature, Extent and Validity of the purported five liens with objections to the amount of the claims as well. The Debtor is hopeful that it can reach a quick settlement with each of the lenders. The Debtor does not dispute that the amount actually borrowed with each lender is actually owed. Just the additional unknown amounts of the claims and whether there is an actual lien.

**DEBTOR'S STATUS REPORT**

**RESNIK HAYES MORADI LLP**

**7**

**2. Is Debtor in full compliance with 11 U.S.C. § 521, § 1107, Rule 1007 of the Federal Rules of Bankruptcy Procedure, and all applicable guidelines established by the United States Trustee.**

Debtor believes that it is in substantial compliance with its obligations as a Debtor-in-Possession ("DIP") at this time.

**3. Is Debtor using cash that any party claims as its cash collateral and, if so, on what date did Debtor obtain an order authorizing the use of such cash or the consent of such party.**

The Debtor filed a Motion to Use Cash Collateral on an emergency basis which was granted through July 17, 2018. The Court set a further hearing for September 17, 2018 to allow each lender to object. Only YesLender objected. No other lender has appeared or made any communications with the Debtor or counsel  The Court approved further use of cash collateral based in part on a stipulation the Debtor entered into with one of the alleged secured creditors, YesLender. A further hearing is set for September 11, 2018.

**4. Identification of all professionals retained by or intended to be retained by the estate, the dates on which applications for the employment of such professionals were filed or submitted to the United States Trustee, the date on which orders were entered in response to such applications, if any, and a general description of the types of services to be rendered by each or the purpose of the employment.**

On July 3, 2018, Debtor filed its application for authority to employ Resnik Hayes Moradi LLP as its general bankruptcy counsel (Docket No. 40).

The Debtor will shortly file its application for authority to employ Abbilene Overton, Chief Financial Officer of Unchained Financial Services as its CPA and tax advisor.

Most of the pending litigation is being handled by the Debtor's full time in house counsel whose employment does not need to be approved by the Court pursuant to section 327(b).

At this time, Debtor does not intend to hire any other professionals.

**5.** **Discuss any significant unexpired leases and executory contracts to which the debtor is a party and the Debtor's intentions with regard to these leases and contracts.**

The debtor has a lease for the office space it occupies. The Debtor has a car lease for a company car. The Debtor intends to continue with these contracts.

**6.** **Proposed deadlines for filing proofs of claim and proofs of interest.**

Debtor requests that the Court set a deadline for filing proofs of claim and proofs of interest so that it may get a better idea of what claims exist against it, and proposes November 1, 2018.

**7.** **Proposed deadlines for filing disclosure statement in support of Chapter 11 plan or reorganization and Chapter 11 plan or reorganization.**

Debtor proposes January 15, 2019 as the deadline to file its disclosure statement in support of Chapter 11 plan or reorganization and Chapter 11 plan or reorganization.

Dated: July 25, 2018                                              **RESNIK HAYES MORADI LLP**

                                                    **By:        /s/ M. Jonathan Hayes**
                                                              **M. Jonathan Hayes**
                                                              **Matthew D. Resnik**
                                                              **Roksana D. Moradi-Brovia**
                                                              *Proposed Attorneys for Debtor*
                                                              DDC Group, Inc.

**DEBTOR'S STATUS REPORT**

## **DECLARATION OF SLAVA BORISOV**

I, Slava Borisov, declare as follows:

1. I am the Chief Executive Officer and custodian of records of DDC Group, Inc., the Debtor (the "Debtor") in this Chapter 11 case. I am authorized to make decisions for the Debtor. I am over the age of eighteen (18). I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto. Where facts are alleged upon information and belief, I believe them to be true.

2. The Debtor is a California corporation which owns and operates a commercial construction business which focuses on remodeling of retail spaces and restaurants. The Debtor has a general contractor license in California, Oregon and Washington State.

3. DDC Group Inc. began in 2014 as Your Construction Experts. The current owners of DDC Group, Inc. purchased Your Construction Experts in 2015 and the name changed to Drop Development Construction, Inc. The name was shortened to DDC Group, Inc. in 2016. The company grew from two employees (the owners) and the Responsible Managing Officer, to one with about 25 employees in early 2018. The rapid growth proved to be both a blessing and a curse. Currently, the Debtor has roughly 15 employees.

4. The corporation is owned 70% by myself and 30% by Daniil Borisov, the Chief Operations Officer. The Responsible Managing Employee ("RME") is Martin Duffield. We had a Chief Financial Officer, Brian Rhoden, until recently when he left the company. We have a Chief Legal Officer, hired in June 2017, who handles litigation in-house, and manages corporate legal issues and drafts contracts used in the construction projects. Bringing legal in house has helped the Debtor to reduce legal costs, and allowed it to access legal advice more readily and on more issues than it could when legal assistance was via outside firms.

**DEBTOR'S STATUS REPORT**

RESNIK
HAYES
MORADI LLP

**10**

5.     The Debtor's specialty is remodeling retail and restaurant locations for franchisees. Locations include stores in malls, free-standing stores and stores in hotels. For example, the Debtor has built-out or refurbished stores for Jamba Juice, Jack in the Box, Burger King, Menchies, Travel Traders, and Popeyes.  Prior to the filing date, most projects involved 2,000 to 3,000 square feet and are in the $150,000 to $350,000 range.  Current projects are larger and the contract values are higher.  Subcontractors and suppliers are used extensively to do the actual work and are overseen by one of the Debtor's project managers.  In early 2018, DDC Group, Inc. had projects in Washington, Oregon and California, and ran multiple sites for multiple clients.

6.     In July, the Debtor is scheduled to commence three projects.  It is negotiating contract terms on other projects, and has bids submitted on several more projects.

7.     Because our jobs are completed in such a short time, when disputes arise between the franchisee (typically our customer) and the Debtor, the franchisee often gets behind on the progress payments and then refuses to pay the balance owing which then requires the debtor to file a mechanic's lien and commence litigation. If that same client has multiple projects at the same time, the client often refuses to pay for work on several projects because it is upset as to the progress of one project despite each being subject to their own contract, and often are held in the name of individual LLC's.

8.     When there is a payment issue on one project, the Debtor cannot simply stop work on all projects for the same parent company as the rules regarding contractors does not permit such to occur.  Further, by the time the parties realize the dispute cannot be easily resolved, the work is largely completed, in fact, often fully completed.  In those cases, the Debtor receives only the 20-30% deposit and must litigate to get the rest.  In one recent instance where this situation occurred, the owner of the restaurant paid the down payment, has been open for business in the remodeled store since October 2017, and has refused to pay beyond the down payment on the project.  The lawsuit pending in San Diego County Superior Court seeks over $250,000.  This is but one example, but there are

**DEBTOR'S STATUS REPORT**

multiple projects where such has occurred, or where the owner, at the end of the project, chose to take discounts and exhibited a "sue me for the rest" attitude.

9.  The default rate was such that we began borrowing money from short-term "hard money" lenders, at least on five separate occasions in the past six to eight months. The lenders are all New York entities. Upon the most basic default of the loan terms, the lender in at least four cases immediately filed suit in New York and apparently used a Confession of Judgment to obtain a New York judgment literally overnight. I learned of the judgments when the bank accounts were frozen.

10. Based on the judgment, at least three of the lenders began levying the Debtor's bank accounts by serving the levy on a local branch in New York. Those banks froze all accounts of the Debtor because each account did not have twice the amount of the judgment, but the combined amount of the accounts far exceeded the amounts of the judgment. After only two or three of these levies, the Debtor got behind on payment of suppliers and sub-contractors which caused its customers to withhold payments even more.

11. The Debtor responded by suing customers who refused to pay. Customers responded by suing the Debtor. Some subcontractors sued for payment. On the petition date, the Debtor was engaged in at least 12 superior court actions. I finally decided it needed the breathing space provided by the Bankruptcy Code and filed the within chapter 11.

12. Our goal, within the context of a Chapter 11 plan of reorganization is to create the breathing space needed to focus on obtaining new projects to create income to continue in business, and to create a realistic payment plan for creditors. Prior to filing the petition, the Debtor tried to create payment plans with subcontractors and most refused to cooperate. It was being inundated with calls, emails, and discovery in litigation. Quite simply, it was impossible to focus on obtaining new business with the above occurring on a daily basis. Since filing the Chapter 11 petition, we have focused on larger projects, with most local to reduce travel costs. Overhead has been reduced by not replacing employees who have moved out of the area. Having the breathing room has allowed the Debtor the

**DEBTOR'S STATUS REPORT**

time to negotiate and execute three new contracts. About 80% of each progress payment pays for subcontractor and material costs. Another 15% is applied to site costs and overhead. On average, 5% of the project price is profit, if the project is completed on time and the client pays in full.

13. Since the petition date, some owners sued for nonpayment have proposed settlements. We have sought approval of one settlement, with Travel Traders Hotel, which was approved on September 19, 2018. We expect to enter into other settlements as well. This resolves issues with some in the creditor pool as the owners are paying subcontractors who recorded liens on the projects, and in some instances, the owner is paying money to the Debtor which provides further income available to cover payments when a plan is approved.

14. While there was over $1.6 million in aged receivables on the petition date which could be the subject of litigation, we are focusing on recovering receivables which are the subject of a current mechanic's lien, are the subject of pending litigation and where the project is completed and the client is open for business. These receivables where the Debtor is actively seeking to recover, using mechanic's liens and litigation as needed, total over $650,000.

15. The Debtor had six construction contracts that it was in the process of completing on the petition date. Some of these contracts cannot be completed without incurring further losses to the Debtor. We have communicated with those customers and each has agreed to move forward with its project using a different general contractor. It is unlikely that those project owners will pay the Debtor any sum due on the project as of the date notice was given without judicial intervention. The Debtor is completing the remaining projects and they should be completed by the end of July at the latest. There is little overlap between prepetition and postpetition projects.

16. As is stated above, on the petition date the Debtor was a party to at least 12 pending lawsuits. Two have been resolved. The Debtor is the plaintiff or cross-complainant in several of those pending primarily in Los Angeles Superior Court. Where

**DEBTOR'S STATUS REPORT**

the Debtor is plaintiff, the case was filed in an attempt to collect what is owed from past projects and often an attempt to foreclose on related mechanics liens.

17. When the Debtor is the defendant, the Debtor is being sued for alleged breaches of past contracts. In some of those lawsuits, the Debtor has a cross-complaint seeking sums owed. These claims will be more in line of a set-off on the plaintiff's claim, then a positive receipt of income on the claim. In some cases, the claims alleged have some true assertions and the Debtor will likely not object to the appropriate proofs of claims once filed. There are cross-overs on some of the claims of the owners, however, in that they are asserting they are having to pay subcontractors who performed work on their projects, and the subcontractors are also in the creditor pool. For some of the other plaintiffs, the Debtor may object to the proofs of claim.

18. I understand and believe that we are in substantial compliance with our obligations as a Debtor-in-Possession ("DIP") at this time.

19. Most of the pending litigation is being handled by the Debtor's full time in house counsel whose employment does not need to be approved by the Court pursuant to section 327(b). At this time, Debtor does not intend to hire any other professionals.

20. The debtor has a lease for the office space it occupies. The Debtor has a car lease for a company car. The Debtor intends to continue with these contracts.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed July 25, 2018 at Los Angeles, California.

By: _____Next page_____
      **Slava Borisov**
      *Declarant*

**RESNIK HAYES MORADI LLP**

**DEBTOR'S STATUS REPORT**

the Debtor is plaintiff, the case was filed in an attempt to collect what is owed from past projects and often an attempt to foreclose on related mechanics liens.

17. When the Debtor is the defendant, the Debtor is being sued for alleged breaches of past contracts. In some of those lawsuits, the Debtor has a cross-complaint seeking sums owed. These claims will be more in line of a set-off on the plaintiff's claim, then a positive receipt of income on the claim. In some cases, the claims alleged have some true assertions and the Debtor will likely not object to the appropriate proofs of claims once filed. There are cross-overs on some of the claims of the owners, however, in that they are asserting they are having to pay subcontractors who performed work on their projects, and the subcontractors are also in the creditor pool. For some of the other plaintiffs, the Debtor may object to the proofs of claim.

18. I understand and believe that we are in substantial compliance with our obligations as a Debtor-in-Possession ("DIP") at this time.

19. Most of the pending litigation is being handled by the Debtor's full time in house counsel whose employment does not need to be approved by the Court pursuant to section 327(b). At this time, Debtor does not intend to hire any other professionals.

20. The debtor has a lease for the office space it occupies. The Debtor has a car lease for a company car. The Debtor intends to continue with these contracts.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed July 25, 2018 at Los Angeles, California.

By: _____
Slava Borisov
*Declarant*

**DEBTOR'S STATUS REPORT**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **15233 Ventura Blvd., Suite 250, Sherman Oaks, CA 91403.**

A true and correct copy of the foregoing document entitled **DEBTOR'S STATUS REPORT; DECLARATION OF SLAVA BORISOV IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **7/25/2018** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- **John T Bender**    john.bender@lewisbrisbois.com, silvia.webb@lewisbrisbois.com
- **Jagdeep Hansra**    jh@ej-law.com, hansralawecf@gmail.com
- **M. Jonathan Hayes**    jhayes@rhmfirm.com, 3039.3@notices.nextchapterbk.com;roksana@rhmfirm.com;rosario@rhmfirm.com;janita@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;ma
- **Brian D Huben**    hubenb@ballardspahr.com, carolod@ballardspahr.com
- **Monique D Jewett-Brewster**    mjb@hopkinscarley.com, vtorres@hopkinscarley.com
- **Kenneth G Lau**    kenneth.g.lau@usdoj.gov
- **Lovee D Sarenas**    lovee.sarenas@lewisbrisbois.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Larry D Webb**    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com;r51666@notify.bestcase.com

**II.  SERVED BY U.S. MAIL:** On **7/25/2018** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Sheri Bluebond
U.S. Bankruptcy Court
255 E. Temple Street, Suite 1534
Los Angeles, CA 90012

DDC Group, Inc.
350 South Grand Ave., Suite 1670
Los Angeles, CA 90071

*20 LARGEST CREDITORS AND THOSE WHO HAVE REQUESTED NOTICE/FILED CLAIMS:*

| | |
|---|---|
| AAA Restaurant Fire Protection Services<br>30113 Union City Blvd.<br>Union City, CA 94587 | Philadelphia, PA 19101-7346 |
| ABCO Mechanical Contractors, Inc.<br>475 Barneveld Ave.<br>San Francisco, CA 94124 | JMS Air Conditioning & Heating Serv<br>c/o Stanley Kimmel, Esq.<br>10727 White Oak Ave., Ste. 202<br>Granada Hills, CA 91344 |
| ADP Tax Services<br>400 West Covina Blvd.<br>San Dimas, CA 91773 | Lynch Electric<br>1160 Industrial Road # 18<br>San Carlos, CA 94070 |
| ADP  Altus Global Trade Solutions<br>6800 Broken Sound Parkway<br>Boca Raton, FL 33487 | Matrix HG Inc.<br>115 Mason Circle, Suite B<br>Concord, CA 94520 |
| Associated Plumbing<br>90 Leavesley Road<br>Gilroy, CA 95020 | Opening Technologies Inc.<br>110 2nd Ave. South #C5<br>Pacheco, CA 94553 |
| Bracelin Company<br>2308 Bates Ave., Suite A<br>Concord, CA 94520 | OT Epoxy Floors<br>3553 Ryder Street<br>Santa Ana, CA 95051 |
| Chase Ink<br>Cardmember Services<br>P.O. Box 6294<br>Carol Stream, IL 60197-6294 | PIRES ELECTRIC<br>24 MONTALBAN DR<br>FREMONT, CA 94536 |
| Delerio Construction LLC<br>4957 E LANSING WAY<br>Fresno, CA 93727 | Progress Glass Co., Inc.<br>25 Patterson St.<br>San Francisco, CA 94124 |
| EDD Assesment<br>10330 Poiner Blvd Suite 150<br>Santa Fe Springs, CA 94583 | Promax<br>c/o Nick M. Campbell, Esq.<br>Builders Law Group, Inc.<br>9767 Via Roma<br>Burbank, CA 91504 |
| Farley Construction & Development<br>87 Adelfa Street<br>Rancho Mission Viejo, CA 92694 | Pro-Tech Paintings, Inc.<br>818 Cristich Lane, #3<br>Campbell, CA 95008 |
| Frontier Communications<br>Bankruptcy Dept.<br>19 John St.<br>Middletown, NY 10940 | Richmond Capital Group LLC<br>111 John Street<br>New York, NY 10038 |
| GTR<br>111 John Street<br>Suite 1210<br>New York, NY 10038 | RDY Holdings LLC<br>1797 Atlantic Avenue<br>Brooklyn, NY 11233 |
| Internal Revenue Service<br>P.O. Box 7346 | Robert Farley Construction<br>c/o Robert Farley<br>2195 Elmer Ave.<br>Yuba City, CA 95993 |

| | |
|---|---|
| Quality Production Services<br>c/o Armenak Kavcioglu, Esq.<br>16055 Ventura Blvd., Ste. 1200<br>Encino, CA 91436 | State National Insurance Company<br>c/o Zoom Professional Service<br>3231-C Business Park Drive, #443<br>Vista, CA 92081 |
| Scholten Roofing, Inc<br>7157 Guide Merdian #1<br>Lynden, WA 98264 | UnitedHealthcare Insurance Company<br>ATTN: CDM-Bankruptcy<br>185 Asylum Street<br>03B<br>Hartford, CT 06103 |
| Schurman Fine Papers<br>c/o Daniel Hershman, Esq.<br>Fisher Broyles<br>2110 Artesia Blvd., Suite 606<br>Redondo Beach, CA 90278 | YellowStone Capital<br>17 State Street, Suite 4000<br>New York, NY 10004 |
| Set in Stone Tile Co.<br>4910 Wellington Park Drive<br>San Jose, CA 95136 | Yes Lender<br>1150 First Ave., Suite 105<br>King of Prussia, PA 19406. |

**III. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served):
Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **7/25/2018** I served the following person(s) and/or entity(ies) by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **7/25/2018** | **Ja'Nita Fisher** | **/s/ Ja'Nita Fisher** |
|---|---|---|
| *Date* | *Type Name* | *Signature* |