M. Jonathan Hayes (Bar No. 90388)
Matthew D. Resnik (Bar No. 182562)
Roksana D. Moradi-Brovia (Bar No. 266572)
**RESNIK HAYES MORADI LLP**
17609 Ventura Blvd., Suite 314
Encino, CA 91316
**Telephone:** (818) 285-0100
**Facsimile:** (818) 855-7013
jhayes@rhmfirm.com
matt@rhmfirm.com
roksana@rhmfirm.com

*Attorneys for Debtor*
DDC Group, Inc.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:18-bk-17029-BB |
| DDC GROUP, INC., | Chapter 11 |
| Debtor. | **DEBTOR'S SUPPLEMENT TO MOTION FOR AUTHORITY TO USE CASH COLLATERAL OF ALLEGED SECURED CREDITORS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SLAVA BORISOV AND M. JONATHAN HAYES IN SUPPORT THEREOF** |
| | Date: September 11, 2018<br>Time: 11:00 a.m.<br>Place: Courtroom 1539<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE; SECURED CREDITORS RDY HOLDINGS LLC, YES LENDER LLC, YELLOWSTONE CAPITAL WEST LLC, GTR SOURCE, RICHMOND CAPITAL GROUP, AND COUNSEL OF RECORD; AND ALL CREDITORS AND PARTIES IN INTEREST:**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

On June 18, 2018 (the "Petition Date"), DDC Group, Inc., the Debtor and Debtor-in-Possession herein (hereinafter "Debtor" or "DIP"), filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

The Debtor continues to operate and manage its affairs as a Debtor-in-Possession pursuant to §1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in this Chapter 11 case.

This Supplement to Motion for Authority to Use Cash Collateral seeks further use of use of cash collateral to pay the expenses of the estate for at least three months set forth in the budget attached hereto as **Exhibit "A"** plus amounts paid to subcontractors.  See below.

The court approved use of cash collateral through September 11, 2018. [Docket No. 69]  Prior to that hearing, the Debtor entered into a Stipulation with alleged secured creditor YES LENDER LLC.  Debtor has had no communications with the other alleged secured creditors, RDY Holdings LLC, Yellowstone Capital West LLC, GTR Source, and Richmond Capital Group (the "Alleged Secured Creditors").  Debtor will communicate with YesLender prior to the hearing and try to reach another stipulation re use of cash collateral.

## II.    STATEMENT OF FACTS

*A. Overview of the Debtor*

An overview of the Debtor was set forth at length in the original motion [Docket No. 11] which will not be repeated here.

The cash collateral assets can be described as follows:

|  | Petition Date | July 31, 2018 (MOR) |
|---|---|---|
| Cash on Hand | $38,598 | $82,123 |
| Accounts Receivable – pre-petition | $543,738 | $394,779 |
| Accounts Receivable – in litigation | $620,427* | $400,000 (est) |
| Contracts – new post-petition |  | $333,000** |
|  | $1,202,763 | $1,209,902 |

*The Debtor has mechanic's lien on four projects which have been completed but the customer has refused to pay the balance owed. Three of these projects are in litigation in California Superior Court. One client has multiple projects and the Debtor is still trying to work through the issues, but may file litigation prior to the 90 day period required for foreclosure of mechanic's liens cases.

** The Debtor has signed new contracts post-petition which, during the course or performing the work, will pay $1,666,539. The Debtor estimates the profit in these contracts to be about 20% of the gross amount or $333,000.

The Debtor has also signed two more contracts in August, 2018 totaling approximately $500,000.

*B. The Secured Creditors and the Obligations.*

A review of a UCC Search Report has identified the following secured creditors.

| Creditor | Date of UCC-1 | Alleged debt | comments |
|---|---|---|---|
| RDY Holdings LLC | 1/11/2017 | $35,000 | Amount of money lent 10/19/2016: $42,000<br>Amount of payments made: $8,400.00<br>Date of Judgment: unknown<br>Amount of Judgment: |

| | | | |
|---|---|---|---|
| | | | unknown |
| YES LENDER LLC | 2/22/2018 | $64,000 | Amount of money lent 2/2/2018: $38,800<br>Amount of payments made: $2416.64<br>Date of Judgment: 4/2/2018<br>Amount of Judgment: $63,483.35 |
| Yellowstone Capital West LLC<br><br>Note: Security Agreement unsigned by Yellowstone | 3/1/2018 | $112,000 | amount of money actually lent on 2/21/2018: $54,000<br>Amount of payments made: $1196<br>Date of Judgment: 2/29/2018<br>Judgment Amount : $112,664.56<br>UCC-1 recorded concurrent with judgment |
| GTR Source, LLC | 4/20/2018 | $40,000 | amount of money actually lent on 2/20/2018: $20,002<br>Amount of payments made: $1198<br>Date of Judgment: 2/27/2018<br>Judgment Amount : $39,989.38<br>UCC recorded post-judgment |
| Richmond Capital Group | unknown | $40,000 | amount of money actually lent on 2/20/2018: $20,002<br>Amount of payments made: $1797<br>Date of Judgment: 2/27/2018<br>Judgment Amount: $39,989.38<br>NOTE: This is not a duplicate of the GTR Source loan |
| | | $291,000* | |

\*The Debtor does not concede that the above creditors are secured and in fact asserts that the most it owes to these alleged secured creditors is the amount loaned, or approximately $168,000.

Notes:

GTR Source, LLC. There is apparently no security agreement describing the collateral as to GTR Source, LLC. In any event, the UCC-1 was recorded post judgment. No notice was filed with the California Secretary of State and therefore it appears this debt is not secured.

Richmond Capital Group, LLC. This is a separate loan but the lender is apparently the same operation as GTR Source, LLC. There is apparently no security agreement describing the collateral as to Richmond. In any event, the UCC-1 was recorded post judgment. No notice was filed with the California Secretary of State and therefore it appears this debt is not secured.

As stated above, creditor YesLender LLC filed an opposition to the requested use of cash collateral to which the Debtor replied. No other creditor filed an Opposition and no other creditor has made any contact with the Debtor or its counsel since the petition date. No alleged secured creditor has filed a Proof of Claim to date. No creditor has filed a proof of claim alleging to be secured to date.

### *C. Proposed Use of Cash Collateral.*

The Debtor believes that the above creditors will take the position that the cash it has on hand and the accounts receivable (hereinafter the "Property") constitute cash collateral within the meaning of §363(a) of the Bankruptcy Code. *Debtor is not aware of any other entity asserting an interest in the Property.*

Continuation of the business of the Debtor depends upon the use of cash collateral as proposed herein. The Debtor will need to pay subcontractors who work on the projects, will need to purchase materials and machinery, and will need to cover the overhead of the Debtor.

Debtor proposes that it use the cash collateral owned on the Petition Date to pay the allowed expenses pursuant to the budget attached hereto. The Debtor believes that the expenses described in **Exhibit "A"** (the "Budget") represent those expenses that it must pay for the next three (3) months in order to maintain its business operations. Note:

**RESNIK HAYES MORADI LLP**

**CASH COLLATERAL MOTION**

**Exhibit "A"** does not include payments to subcontractors.  When Debtor receives a payment from its customer for work completed to date or as a final payment of the project, it immediately pays its subcontractors who have been working on the particular project.  The payment to subcontractors ranges from 60 to 90% of the amount paid to the Debtor.

Although the Budget represents the Debtor's best estimate of the necessary expenses associated with the business, the needs of the business may fluctuate.  Therefore, the Debtor requests court authority to deviate from the total expenses contained in the budget by no more than 10% and to deviate by category (provided the Debtor does not pay any expenses outside any of the approved categories) without the need for further Court order.

In order to continue the operation of the business, the Debtor must be authorized to use cash collateral to pay the ordinary and necessary operating expenses.  If the Debtor's ability to use cash collateral is interrupted, the Debtor will be unable to pay its employees, finish the projects it has, take on new projects and will have to shut down soon.  The Debtor's business, and the Debtor's prospects for a successful reorganization, will end.

### III.  ADEQUATE PROTECTION

The Debtor believes that the alleged secured creditors are adequately protected by the Debtor's assets.  As part of the Stipulation with YesLender, the Debtor agreed to pay YesLender $3,000 in August and $3,000 in September.  The payment for August has been made.  The payment for September will be made early in September.

The Debtor proposes to continue to pay YesLender $3,000 per month for the next three months as adequate protection for its use of cash collateral.  The Debtor will give the alleged secured creditors including YesLender a replacement lien on the accounts receivable generated post-petition to the extent that the creditors' cash collateral is actually used.

### IV.  DISCUSSION

*A. The Court Should Authorize The Debtor's Use of the Cash Collateral.*

As a general matter, a debtor-in-possession is permitted to use property of the estate in the ordinary course of business without the need for notice or a hearing. 11 U.S.C. Section 363(c)(1).  However, a debtor's use of cash collateral is an exception to this general rule. Section 363(c)(2) provides in pertinent part:

> "The [debtor in possession] may not use, sell, or lease cash
>
> collateral ... unless
>
> -
>
> (A)    each entity that has an interest in
>
> such    cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use,
>
> sale or lease in accordance with the provisions of this section."

11 U.S.C. Section 363(c)(2).

Courts have consistently held that it is appropriate for a Chapter 11 debtor to use a secured creditor's cash collateral for a reasonable period of time for the purpose of maintaining and operating its property. See *MBank Dallas, N.A. v. O'Connor) (In re O'Connor)*, 808 F.2d 1393, 1397 (10th Cir. 1987).  In addition, where, as here, the debtor is operating a business, it is extremely important that use of cash collateral be allowed in order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business." *In re Dynaco Corporation*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993).

As set forth above, if the Debtor's access to the cash collateral is interrupted for even a brief period of time, the consequences would be disastrous for the unsecured creditors of the estate.  The Debtor would be unable to operate and preserve the business. The employees would leave and the business would shut down making its value as a going concern zero.  As such, the Debtor has determined that it would be in the overwhelming best interests of the estate and its creditors to use the cash collateral to continue to operate and maintain its business.

**RESNIK HAYES MORADI LLP**

**7**

**CASH COLLATERAL MOTION**

### B. *The Alleged Secured Creditor's Interests are Adequately Protected by the Continued Operations of the Business and Receiving a Secured Interest in the Litigation to Recover Accounts Receivable.*

Pursuant to Section 363(c)(2), the Court may authorize the debtor to use a secured creditor's cash collateral if the Court determines that the secured creditor is adequately protected. *Pistole v. Mellor (In re Mellor),* 734 F.2d 1396, 1400 (9th Cir. 1984). See also *O'Connor*, supra, 808 F.2d at 1398; *McCombs Properties VI, Ltd. v. First Texas Savings Association (In re McCombs Properties VI, Ltd.)*, 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988).

In ordinary circumstances, a secured creditor is to be protected against a decrease in value which directly affects the secured creditor's interest in its collateral. See *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 630, (1988); Section 506(a) of the Bankruptcy Code "limit(s) the secured status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." *McCombs*, supra, 88 B.R. at 266.

As a general rule, a debtor may use cash collateral where such use would enhance or preserve the value of the collateral. The Debtor intends to use the cash collateral to operate and preserve the business pursuant to the budget set forth in **Exhibit "A."** The use of cash collateral is essential to continue the ordinary maintenance and operations of the business. Without the use of the cash collateral, the Debtor will be unable to pay the payroll, rent, insurance, taxes and other necessary expenses. As such, unless the Debtor is permitted to use the cash collateral, the value of the business will rapidly diminish.

### C. *In Determining Adequate Protection, The Court Should Promote Reorganization.*

In determining adequate protection, Courts have stressed the importance of promoting a debtor's reorganization. In *In re O'Connor*, supra, the Tenth Circuit stated:

"In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration."

808 F.2d at 1937.

In order to promote Debtor's reorganization, the Court should grant the relief requested herein. The Debtor has demonstrated herein that the use of the cash collateral as proposed by the Debtor will preserve the business for the benefit of this estate and the creditors, specifically including the alleged secured creditors. Indeed, a successful reorganization depends upon the use of cash collateral as proposed herein.

If at any time the Debtor violates any provision of the order approving this Motion, the alleged secured creditors may give written notice of such the default to Debtor's counsel. If the Debtor fails to cure the default with fourteen (14) days of said notice, the alleged secured creditors shall be entitled to a hearing requesting relief from the automatic stay pursuant to 11 U.S.C. §362 on an expedited basis.

RESNIK HAYES
MORADI LLP

**9**

CASH
COLLATERAL
MOTION

## V. <u>CONCLUSION</u>

WHEREFORE, Debtor respectfully requests that the Court enter its Order authorizing it to use cash collateral on the terms and conditions described herein and the exhibits thereto, and granting such other and further relief as is just and proper under the circumstances.

Dated: August 27, 2018

**RESNIK HAYES MORADI LLP**

By: /s/ M. Jonathan Hayes
**M. Jonathan Hayes
Matthew D. Resnik
Roksana D. Moradi-Brovia**
*Attorneys for Debtor*
DDC Group, Inc.

## **DECLARATION OF SLAVA BORISOV**

I, Slava Borisov, declare as follows:

1. I am the Chief Executive Officer and custodian of records of DDC Group, Inc., the Debtor (the "Debtor") in this Chapter 11 case. I am authorized to make decisions for the Debtor. I am over the age of eighteen (18). I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto. Where facts are alleged upon information and belief, I believe them to be true.

2. On June 18, 2018, DDC Group, Inc., the Debtor and Debtor-in-Possession herein (hereinafter "Debtor" or "DIP"), filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3. The cash collateral assets can be described as follows:

|  | Petition Date | July 31, 2018 (MOR) |
|---|---|---|
| Cash on Hand | $38,598 | $82,123 |
| Accounts Receivable – pre-petition | $543,738 | $394,779 |
| Accounts Receivable – in litigation | $620,427* | $400,000 (est) |
| Contracts – new post-petition |  | $333,000** |
|  | $1,202,763 | $1,209,902 |

4. *The Debtor has mechanic's lien on four projects which have been completed but the customer has refused to pay the balance owed. Three of these projects are in litigation in California Superior Court. One client has multiple projects and the

Debtor is still trying to work through the issues, but may file litigation prior to the 90 day period required for foreclosure of mechanic's liens cases.

5. ** We have signed new contracts post-petition which, during the course or performing the work, will pay $1,666,539. I estimate the profit in these contracts to be about 20% of the gross amount or $333,000. We have also signed two more contracts in August, 2018 totaling approximately $500,000.

6. Continuation of the business of the Debtor depends upon the use of cash collateral as proposed herein. We need to pay subcontractors who work on the projects, purchase materials and machinery, and cover the overhead of the Debtor.

7. I believe that the expenses described in **Exhibit "A"** (the "Budget") represent those expenses that we must pay for the next three (3) months in order to maintain its business operations. Note: **Exhibit "A"** does not include payments to subcontractors. When Debtor receives a payment from its customer for work completed to date or as a final payment of the project, it immediately pays its subcontractors who have been working on the particular project. The payment to subcontractors ranges from 60 to 90% of the amount paid to the Debtor.

8. In order to continue the operation of the business, the Debtor must be authorized to use cash collateral to pay the ordinary and necessary operating expenses. If the Debtor's ability to use cash collateral is interrupted, the Debtor will be unable to pay its employees, finish the projects it has, take on new projects and will have to shut down soon. The Debtor's business, and the Debtor's prospects for a successful reorganization, will end.

9. As part of the Stipulation with YesLender, the Debtor agreed to pay YesLender $3,000 in August and $3,000 in September. The payment for August has been made. The payment for September will be made early in September.

10. The use of the cash collateral as proposed by the Debtor will preserve the business for the benefit of this estate and the creditors, specifically including the alleged secured creditors. Indeed, a successful reorganization depends upon the use of cash

collateral as proposed herein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed August 27, 2018, at Los Angeles, California.

By: __**SEE NEXT PAGE**_____
    **Slava Borisov**
    *Declarant*

collateral as proposed herein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed August 27, 2018, at Los Angeles, California.

By: _____
**Slava Borisov**
*Declarant*

RESNIK
HAYES
MORADI LLP

13

CASH
COLLATERAL
MOTION

## **DECLARATION OF M. JONATHAN HAYES**

I, M. Jonathan Hayes, declare as follows:

1. I am an attorney authorized to practice before this court. I am over the age of eighteen (18). I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto. Where facts are alleged upon information and belief, I believe them to be true.

2. I have had no communications with the other alleged secured creditors, RDY Holdings LLC, Yellowstone Capital West LLC, GTR Source, and Richmond Capital Group (the "Alleged Secured Creditors"). I will communicate with YesLender prior to the hearing and try to reach another stipulation re use of cash collateral. No Alleged Secured Creditor has filed a Proof of Claim to date. No creditor has filed a proof of claim alleging to be secured to date.

By: **/s/ M. Jonathan Hayes**
**M. Jonathan Hayes**
*Declarant*

**RESNIK HAYES MORADI LLP**

**CASH COLLATERAL MOTION**

2

# EXHIBIT A

| **Projected Expenses** | September | October | November |
|---|---|---|---|
| Wages Payroll | $72,000.00 | $72,000.00 | $72,000.00 |
| Benefits COVERED CA | $4,900.00 | $4,900.00 | $4,900.00 |
| **Subtotal** | **$76,900.00** | **$76,900.00** | **$76,900.00** |

|  | September | October | November |
|---|---|---|---|
| Office lease 350 | $9,465.29 | $9,465.29 | $9,465.29 |
| Worker Compensation | $1,908.33 | $1,908.33 | $1,908.33 |
| RMO Agency | $1,090.00 | $1,090.00 | $1,090.00 |
| Professional Services ACCT - UNCHAINED | $5,500.00 | $5,500.00 | $5,500.00 |
| Parking Company Lease | $374.00 | $374.00 | $374.00 |
| General Liability and Umbrella Insurance | $2,350.00 | $2,150.00 | $2,150.00 |
| Entertainment Client Meetings | $495.00 | $495.00 | $495.00 |
| Food Office and Client Meetings | $654.00 | $654.00 | $654.00 |
| Gas | $400.00 | $400.00 | $400.00 |
| Company Car | $1,380.00 | $1,280.00 | $1,280.00 |
| Insurance Car FARMERS | $647.00 | $547.00 | $547.00 |
| Water | $120.00 | $120.00 | $120.00 |
| Telephone AT &T iPad and Cellphones | $1,120.00 | $1,120.00 | $1,120.00 |
| Phones in office UNIVOIP | $1,920.00 | $1,920.00 | $1,920.00 |
| Benefits Mall | $350.00 | $350.00 | $350.00 |
| HCC BOND PAYMENTS | $540.00 | $540.00 | $540.00 |
| Marlin Printer | $215.00 | $115.00 | $115.00 |
| Internet access | $875.00 | $875.00 | $875.00 |
| Office supplies | $690.00 | $690.00 | $690.00 |
| Go Daddy Emails | $490.00 | $490.00 | $490.00 |
| Drop Box | $390.00 | $390.00 | $390.00 |
| Per Diem - in the field - Lodging | $3,150.00 | $3,150.00 | $3,150.00 |
| Project Manager in the field - Lodging | $12,750.00 | $12,750.00 | $12,750.00 |
| Travel Costs Air Faire | $6,750.00 | $6,750.00 | $6,750.00 |
| Travel Mileage | $1,695.00 | $1,695.00 | $1,695.00 |
| Taxes (City, State, Payroll and Fed) | $22,311.00 | $21,822.00 | $21,325.00 |
| **Subtotal** | **$77,629.62** | **$76,640.62** | **$76,143.62** |

|  | Jul | Aug | Sep |
|---|---|---|---|
| Web site hosting | $250.00 | $250.00 | $250.00 |
| McGraw CMD marketing | $450.00 | $450.00 | $450.00 |
| Web site updates | $100.00 | $100.00 | $100.00 |
| Collateral preparation | $650.00 | $650.00 | $650.00 |
| Collateral printing | $400.00 | $400.00 | $400.00 |
| Marketing Ads | $1,750.00 | $1,750.00 | $1,750.00 |
| Miscellaneous expenses | $0.00 | $0.00 | $0.00 |
| **Subtotal** | **$3,600.00** | **$3,600.00** | **$3,600.00** |
|  | Jul | Aug | Sep |
| Draws Sales REVENUE GENERATING | $8,000.00 | $8,000.00 | $8,000.00 |
| Contract traveling costs clients | $1,750.00 | $1,750.00 | $1,750.00 |
| **Subtotal** | **$9,750.00** | **$9,750.00** | **$9,750.00** |

| **Monthly Actual Expenses** | $167,879.62 | $166,890.62 | $166,393.62 |
|---|---|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **17609 Ventura Blvd., Suite 314, Encino, CA 91316.**

A true and correct copy of the foregoing document entitled **DEBTOR'S SUPPLEMENT TO MOTION FOR AUTHORITY TO USE CASH COLLATERAL OF ALLEGED SECURED CREDITORS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SLAVA BORISOV AND M. JONATHAN HAYES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **8/27/2018** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- **David M Gilmore**   dgilmore@gmlegal.net
- **Jagdeep Hansra**   jh@ej-law.com, hansralawecf@gmail.com
- **M. Jonathan Hayes**   jhayes@rhmfirm.com, roksana@rhmfirm.com;rosario@rhmfirm.com;janita@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com
- **Brian D Huben**   hubenb@ballardspahr.com, carolod@ballardspahr.com
- **Monique D Jewett-Brewster**   mjb@hopkinscarley.com, vtorres@hopkinscarley.com
- **Douglas H Kraft**   dkraft@kraftopich.com, canquoe@kraftopich.com
- **Kenneth G Lau**   kenneth.g.lau@usdoj.gov
- **Lovee D Sarenas**   lovee.sarenas@lewisbrisbois.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Larry D Webb**   Webblaw@gmail.com, larry@webblaw.onmicrosoft.com;r51666@notify.bestcase.com

**II. SERVED BY U.S. MAIL:** On **8/27/2018** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Hon. Sheri Bluebond
U.S. Bankruptcy Court
255 E. Temple Street, Suite 1534
Los Angeles, CA 90012

DDC Group, Inc.
350 South Grand Ave., Suite 1670
Los Angeles, CA 90071

20 LARGEST CREDITORS AND THOSE WHO HAVE REQUESTED NOTICE/FILED CLAIMS:

AAA Restaurant Fire Protection Services    Union City, CA 94587
30113 Union City Blvd.

| | | |
|---|---|---|
| 1 | ABCO Mechanical Contractors, Inc.<br>475 Barneveld Ave.<br>San Francisco, CA 94124 | c/o Stanley Kimmel, Esq.<br>10727 White Oak Ave., Ste. 202<br>Granada Hills, CA 91344 |
| 3 | ADP Tax Services<br>400 West Covina Blvd.<br>San Dimas, CA 91773 | Lynch Electric<br>1160 Industrial Road # 18<br>San Carlos, CA 94070 |
| 5 | ADP  Altus Global Trade Solutions<br>6800 Broken Sound Parkway<br>Boca Raton, FL 33487 | Matrix HG Inc.<br>115 Mason Circle, Suite B<br>Concord, CA 94520 |
| 7 | Anderson's Door Services, Inc.<br>12890 Western Ave.<br>GArden Grove, CA 92841 | Opening Technologies Inc.<br>110 2nd Ave. South #C5<br>Pacheco, CA 94553 |
| 9 | Associated Plumbing<br>90 Leavesley Road<br>Gilroy, CA 95020 | OT Epoxy Floors<br>3553 Ryder Street<br>Santa Ana, CA 95051 |
| 11 | Bracelin Company<br>2308 Bates Ave., Suite A<br>Concord, CA 94520 | PIRES ELECTRIC<br>24 MONTALBAN DR<br>FREMONT, CA 94536 |
| 13 | Chase Ink<br>Cardmember Services<br>P.O. Box 6294<br>Carol Stream, IL 60197-6294 | Progress Glass Co., Inc.<br>25 Patterson St.<br>San Francisco, CA 94124 |
| 15 | Delerio Construction LLC<br>4957 E LANSING WAY<br>Fresno, CA 93727 | Promax<br>c/o Nick M. Campbell, Esq.<br>Builders Law Group, Inc.<br>9767 Via Roma<br>Burbank, CA 91504 |
| 17 | EDD Assesment<br>10330 Poiner Blvd Suite 150<br>Santa Fe Springs, CA 94583 | Pro-Tech Paintings, Inc.<br>818 Cristich Lane, #3<br>Campbell, CA 95008 |
| 19 | Farley Construction & Development<br>87 Adelfa Street<br>Rancho Mission Viejo, CA 92694 | Nick Murgia Flooring<br>1647 Taylor Blvd<br>Lafayette, CA 94549 |
| 21 | Frontier Communications<br>Bankruptcy Dept.<br>19 John St.<br>Middletown, NY 10940 | Richmond Capital Group LLC<br>111 John Street<br>New York, NY 10038 |
| 24 | GTR<br>111 John Street<br>Suite 1210<br>New York, NY 10038 | RDY Holdings LLC<br>1797 Atlantic Avenue<br>Brooklyn, NY 11233 |
| 26 | Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 | Robert Farley Construction<br>c/o Robert Farley<br>2195 Elmer Ave.<br>Yuba City, CA 95993 |
| 28 | JMS Air Conditioning & Heating Serv | Quality Production Services |

c/o Armenak Kavcioglu, Esq.
16055 Ventura Blvd., Ste. 1200
Encino, CA 91436

Scholten Roofing, Inc
7157 Guide Merdian #1
Lynden, WA 98264

Schurman Fine Papers
c/o Daniel Hershman, Esq.
Fisher Broyles
2110 Artesia Blvd., Suite 606
Redondo Beach, CA 90278

Set in Stone Tile Co.
4910 Wellington Park Drive
San Jose, CA 95136

Shade Tree Homes
9663 Jackson Hill Road SE
Salem, OR 97306

California Air Conditioning Systems

Right column:

c/o Min N. Thai, Esq.
Splinter & Thai, LLP
25124 Narbonne Ave., Suite 106
Lomita, CA 90717

State National Insurance Company
c/o Zoom Professional Service
3231-C Business Park Drive, #443
Vista, CA 92081

UnitedHealthcare Insurance Company
ATTN: CDM-Bankruptcy
185 Asylum Street
03B
Hartford, CT 06103

YellowStone Capital
17 State Street, Suite 4000
New York, NY 10004

Yes Lender
1150 First Ave., Suite 105
King of Prussia, PA 19406

REMOVED CREDITORS/RETURNED MAIL:

Richmond Capital
125 Maiden Lane, Ste. 501
New York, NY 10038

Richmond Capital
10800 Midlothian Turnpike, Suite 217
Richmond, Virginia 23235

(NEW ADDRESS ABOVE)
Matrix HG Inc.
2355 Whitman Road
Concord, CA 94518

**III. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served):
Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **8/27/2018** I served the following person(s) and/or entity(ies) by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| Date | Type Name | Signature |
|---|---|---|
| 8/27/2018 | Ja'Nita Fisher | /s/ Ja'Nita Fisher |